# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Specialty National Insurance Company, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07 CV 0507 |
| | ) | |
| English Brothers Funeral Home, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF SPECIALTY NATIONAL INSURANCE COMPANY'S
MOTION FOR SUMMARY JUDGMENT AND
<u>MEMORANDUM OF LAW IN SUPPORT THEREOF</u>**

## TABLE OF CONTENTS

Page

SUMMARY OF ARGUMENT...................................................................................1

FACTS ..........................................................................................................................2

A.  THE UNDERLYING LAWSUIT ..........................................................................2

1.  Enright v. English Brothers Funeral Home ...............................................3

2.  Bruno v. English Brothers Funeral Home, et al. .......................................3

3.  Kogut v. English Brothers Funeral Home, et al. ........................................4

4.  Jackson v. Biomedical Tissue Services, et al. .............................................4

5.  Zeltins v. Biomedical Tissue Services, et al. ..............................................5

6.  Lokenvitz v. Biomedical Tissue Services, et al. .........................................5

7.  Collins v. Biomedical Tissue Services, et al. ..............................................6

8.  Ricklefs v. Biomedical Tissue Services, et al. ............................................6

9.  Wood v. Biomedical Tissue Services, et al. ................................................7

10.  Frerichs v. Biomedical Tissue Services, et al. ...........................................7

11.  Oberender-Doolittle v. Biomedical Tissue Services, et al. .......................8

12.  Eyberg v. Biomedical Tissue Services, et al. ..............................................8

13.  Pierce v. Biomedical Tissue Services, et al. ...............................................9

14.  Landtiser v. Biomedical Tissue Services, et al. ..........................................9

15.  Kane v. Biomedical Tissue Services, et al. ...............................................10

16.  Andreasen v. Biomedical Tissue Services, et al. ......................................10

17.  Aberbach v. Biomedical Tissue Services, et al. ........................................11

B.  THE SPECIALTY NATIONAL POLICY ........................................................11

ARGUMENT ....................................................................................................13

A.    STANDARD OF REVIEW............................................................................13

B.    NO COVERAGE IS AFFORDED UNDER THE
      BUSINESS OWNERS LIABILITY COVERAGE
      PART BECAUSE NO "OCCURRENCE" OR
      "BODILY INJURY" ARE ALLEGED, AND
      THE EXPECTED/INTENDED EXCLUSION
      PRECLUDES COVERAGE FOR THE
      ALLEGATIONS AGAINST ENGLISH BROTHERS ...................................13

1.    No "Occurrence" Is Alleged By The Underlying Suits ....................................13

2.    Even If An "Occurrence" Were Alleged,
      Which Plaintiff Disputes, No "Bodily Injury"
      Is Alleged Under The Business Owners Liability Coverage Part ....................17

3.    Even If "Bodily Injury" Were Alleged,
      Which It Is Not, No Bodily Injury Took
      Place During the Policy Period........................................................................18

4.    Assuming Arguendo That "Bodily Injury"
      Is Alleged By The Underlying Suits, Which
      Specialty National Disputes, An Expected/Intended
      Exclusion Would Preclude Coverage Under The
      Business Owners Liability Coverage Form .....................................................19

C.    NO COVERAGE IS AFFORDED UNDER
      THE DEATH CARE SERVICES COVERAGE
      PART BECAUSE NO "PROFESSIONAL INCIDENT"
      IS ALLEGED, AND, EVEN IF IT WERE, THE
      PROFESSIONAL SERVICES EXCLUSION
      PRECLUDES COVERAGE FOR THE ALLEGATIONS
      AGAINST ENGLISH BROTHERS.................................................................20

1.    No "Professional Incident" Is Alleged ............................................................20

2.    Even If A "Professional Incident" Were Alleged,
      Which It Is Not, The Professional Services Exclusion
      Precludes Coverage Under the Death Care Services Coverage Form.............21

D.    THE POLICY PROVIDES NO COVERAGE
      FOR PUNITIVE DAMAGES.........................................................................22

E.  NO DUTY TO DEFEND IS TRIGGERED
    BY THE UNDERLYING SUITS ..................................................................23

F.  ENGLISH BROTHERS' COUNTERCLAIMS
    SEEKING DAMAGES AGAINST SPECIALTY
    SHOULD BE DISMISSED ........................................................................23

CONCLUSION ...............................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page**

*Acorn Ponds, Inc. v. Hartford Ins. Co.,*
105 A.D.2d 723, 724, 481 N.Y.S.2d 392, 393-94 (2d Dept. 1984)...............................20

*Allstate Ins. Co. v. Mugavero,*
79 N.Y.2d 153, 162, 589 N.E.2d 365, 370 (N.Y. Ct. App. 1992)................................16

*Atlantic Mut. Ins. Co. v. Terk Tecverohnologies Corp.,*
309 A.D.2d 22, 32, 763 N.Y.S.2d 56, 64 (1st Dept. 2003).....................................16, 24

*Bingham v. Atlantic Mut. Ins. Co.,*
215 A.D.2d 315, 316, 626 N.Y.S.2d 807, 808 (1st Dept. 1995)..............................14, 17

*Burroughs Wellcome Co. v. Commercial Union Ins. Co.,*
713 F. Supp. 694, 696 (S.D.N.Y. 1989) ...........................................................13

*Commercial Union Assurance Co., PLC v. Oak Park Marina, Inc.,*
198 F.3d 55, 60 (2d Cir. 1999) ...............................................................14, 19

*Contracting Plumbers' Cooperative Restoration Corp. v.
Hartford Accident and Indemnity Co.,*
59 A.D.2d 921, 399 N.Y.S.2d 255 (2d Dept. 1977).................................................17

*County of Columbia v. Continental Ins. Co.,*
189 A.D.2d 391, 394, 595 N.Y.S.2d 988, 990 (3d Dept. 1993)..............................15, 16

*First Investors Corp. v. Liberty Mut. Ins. Co.,*
152 F.3d 162, 166 (2d Cir. 1998) .......................................................15, 18, 20

*Gibbs v. CNA Ins. Cos.,*
263 A.D.2d 836, 693 N.Y.S.2d 720 (3d Dept. 1999)..............................................16

*Hatfield v. 96-100 Prince Street, Inc.,*
1997 U.S. Dist. LEXIS 3804, *4 (S.D.N.Y. 1997)................................................23

*HPF, L.L.C. v. General Star Indem. Co.,*
338 Ill. App. 3d 912, 918 (Ill. App. Ct. 2003) ..................................................19

*Hugo Boss Fashions, Inc. v. Federal Ins. Co.,*
252 F.3d 608, 621 (2d Cir. 2001) ...............................................................24

*Insurance Co. of North America v. Milberg Weiss Bershad Specthrie & Lerach,*
1996 U.S. Dist. LEXIS 13388, * (S.D.N.Y. 1996).................................................22

*Miccio v. National Surety Corp.*,
180 A.D.2d 937, 566 N.Y.S.2d 760, 762 (3d Dept. 1991) ........................................20

*Might Midgets v. Centennial Insurance Company*,
47 N.Y.2d 12, 389 N.E.2d 1080, 416 N.Y.S.2d 559 (1979) .....................................25

*Miller v. O'Bryan*,
498 F. Supp. 2d 548 (D.N.Y. 2007) ........................................................................13

*New York Cas. Ins. Co v. Ward*,
139 A.D.2d 922, 527 N.Y.S.2d 913 (1988).............................................................17

*Pavia v. State Farm Mut. Auto. Ins. Co.*,
82 N.Y.2d 445 (N.Y. 1993) ....................................................................................24

*Progressive Cas. Ins. Co. v. Yodice*,
276 A.D.2d 540, 714 N.Y.S.2d 715, 716 (2d Dep't 2000) ......................................24

*Swan v. Travelers Property Cas. Co.*,
360 F. Supp. 2d 582, 589 (S.D.N.Y. 2005) ....................................15, 18, 20, 21, 23

*United Nat'l Ins. Co. v. Waterfront New York Realty Corp.*,
994 F.2d 105, 107 (2d Cir.1993) ............................................................................24

*United States Fidelity and Guaranty Company v. Copfer*,
48 N.Y.2d 871, 424 N.Y.S.2d 356, 400 N.E.2d 298 ...............................................24

*Village of Sylvan Beach v. Travelers Indem. Co.*,
55 F.3d 114, 115-116 (2d Cir. 1995)................................................................22, 23

65634

Plaintiff, Specialty National Insurance Company ("Specialty National" or "Specialty"), by and through its undersigned counsel, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, respectfully moves this Honorable Court for an Order declaring that Specialty National has no duty to defend or indemnify English Brothers Funeral Home ("English Brothers") with regard to numerous lawsuits alleging intentional and fraudulent acts arising from the illegal harvesting of body parts from corpses, and in support states as follows:

## SUMMARY OF ARGUMENT

This case involves a macabre scandal involving a funeral home which allegedly allowed the illegal harvesting of body parts for financial gain. The complaint in this cause seeks a declaration regarding whether Specialty National owes a duty to defend or indemnify its insured, English Brothers Funeral Home, concerning numerous lawsuits alleging that body parts and tissue were illegally harvested from corpses handled by English Brothers without the consent of the decedent's family members and then, with regard to many of the lawsuits, implanted in others during surgical procedures. Some of the illegally harvested body parts allegedly came from corpses who potentially suffered from chronic infectious diseases such as syphilis, HIV, or hepatitis, and/or who died from these diseases. The crux of plaintiffs' complaints is that English Brothers' misconduct was intentional and willful, and that it committed fraud against the innocent unsuspecting victims of its alleged deeds.

English Brothers has sought insurance coverage from Specialty National to cover its potential liability for the lawsuits. However, the purpose and intent of the general liability policy issued to English Brothers is to protect English Brothers from liability for <u>accidental</u> injury to persons or property of another. The clear intent of such coverage is not to provide coverage for the kinds of intentional and fraudulent acts alleged against English Brothers. For the reasons set

forth herein, the general liability policy issued to English Brothers provides no coverage for the lawsuits brought against English Brothers, and therefore Specialty National has no duty to defend or indemnify English Brothers in said lawsuits.

## FACTS

### A.    THE UNDERLYING LAWSUITS

English Brothers is a funeral home located in Brooklyn, New York, and is accused of illegally providing corpses to third parties for the harvesting of body parts without the consent of the decedents' family members.    The plaintiffs in the underlying lawsuits are either the decedents' family members, or persons who received illegally harvested body parts or tissue. The lawsuits share many identical facts. Generally, it is alleged that Michael Mastomarino ("Mastromarino"), a former dentist and oral surgeon, and Joseph Nicelli ("Nicelli"), referred to as a "master embalmer," formed Biomedical Tissue Services, Ltd. ("BTS") for the purpose of harvesting human tissue, bone, and organs from human corpses for resale to commercial tissue, bone and organ processors and resellers. Shortly after forming BTS, Mastromarino and Nicelli began harvesting tissue and bones from human bodies which they obtained from various funeral homes, including the English Brothers Funeral Home. English Brothers, Mastromarino and/or Nicelli are alleged to have altered medical records, death certificates, and the identity of the corpses in order to facilitate the illegal harvesting. A summary of the lawsuits follows.[1]

---

[1] In 2006, Mastromarino, Nicellli, Lee Crucetta ("Crucetta") were indicted for their involvement with the improper harvesting of human tissue and organs, and the reselling of same to organ processors and resellers. A copy of the Indictment is attached hereto as Exhibit A. On January 22, 2008, Mastromarino pled guilty to all counts of the Indictment and faces up to 54 years in prison. Copies of articles confirming this information are attached hereto as Exhibit B. As part of his plea, Mastromarino agreed to cooperate with an inquiry by federal and state investigators into the possible misconduct by the tissue processors that bought the stolen body parts. *Id.* On January 30, 2008, Crucetta, who was associated with BTS as the lead "cutter" of body parts, admitted that he cut body parts from 244 corpses and helped forge paperwork so the parts, some of them diseased, could be used in unsuspecting patients. A copy of an article confirming this information is attached hereto as Exhibit C. Crucetta pled guilty to conspiracy, taking part in a corrupt organization, abuse of a corpse, and 244 counts of theft and forgery, and is scheduled to

### 1.    Enright v. English Brothers Funeral Home

A complaint was filed in the Supreme Court of the State of New York, County of Kings, in an action styled *Enright v. English Brothers Funeral Home, Inc., et al.* (the "Enright Complaint"), a copy of which is annexed as Exhibit C. [Statement of Material Facts ("SOMF") No. 6]. The Enright Complaint alleges that plaintiff's wife died on July 30, 2003 and that he contracted with English Brothers to provide funeral services for her. Ex. C, ¶ 13.  Plaintiff alleges that English Brothers did not have plaintiff's consent to harvest his wife's organs. Ex. C, ¶¶ 34-36, 44.  On October 16, 2005, the plaintiff was notified that his wife's body had been illegally harvested by English Brothers.  Ex. C, ¶ 42.  The Complaint alleges that English Brothers' actions were intentional, malicious, tortuous and fraudulent.  The plaintiff seeks damages for intentional infliction of emotional distress, breach of contract, conversion, unjust enrichment and fraud.

### 2.    Bruno v. English Brothers Funeral Home, et al.

A complaint was filed in the Supreme Court of the State of New York, County of Kings, in an action style *Bruno, as administrator of the Estate of Michael Bruno, et al. v. English Brothers Funeral Home, et al*, Index No. 31715/2005 (the "Bruno Complaint"), a copy of which is attached hereto as Exhibit D. (SOMF No. 8).   The Bruno Complaint alleges that on May 22, 2003, BTS performed illegal harvesting procedures on the decedent, Michael Bruno, at the English Brothers funeral home without authorization from the decedent's family. Ex. D, ¶¶ 43-47. (SOMF No. 8). English Brothers allegedly forged documents in order to allow BTS to harvest the corpse.  Ex. D, ¶¶ 48-50. (SOMF No. 9). English Brothers allegedly caused emotional trauma to the decedent's family, and its actions were malicious, willful and grossly

---

serve concurrent sentences of 6½ to 20 years. *Id.*  English Brothers has not been indicted nor charged with any crime associated with the conduct alleged in the Underlying Suits.

negligent, entitling plaintiff to an award of punitive damages.    Specialty is providing a defense to English Brothers in the Bruno suit pursuant to a reservation of rights.

### 3.    Kogut v. English Brothers Funeral Home, et al.

A complaint was filed in the Supreme Court of the State of New York, County of Kings, in an action styled *Kogut, as Administratrix of the Estate of Danette Kogut, et al. v. English Brothers Funeral Home, et al.*, Index No. 33691/2005 (the "Kogut Complaint"), a copy of which is attached hereto as Exhibit E. (SOMF No. 10).    The Kogut Complaint alleges that on February 21, 2003, BTS allegedly performed harvesting procedures on the decedent, Danette Kogut, at the English Brothers funeral home without authorization from the decedent's family.  Ex. E, ¶¶ 43-47. (SOMF No. 11).  English Brothers forged documents allowing BTS to harvest the corpse.  Ex. E, ¶¶ 48-50.   (SOMF No. 11).   The Kogut Complaint seeks, in part, damages for alleged breach of contract against English Brothers by not performing the burial services as contracted for the decedent, and alleges that English Brothers' actions were malicious, willful and grossly negligent, entitling plaintiffs to an award of punitive damages.    Specialty is providing a defense to English Brothers in the Kogut suit pursuant to a reservation of rights.

### 4.    Jackson v. Biomedical Tissue Services, et al.

A complaint was filed in the United States District Court for the District of New Jersey in an action styled *Jackson v. Biomedical Tissue Services, et al.*, Civil Action No. 06-1323 (the "Jackson Complaint"), a copy of which is attached hereto as Exhibit F. (SOMF No. 13).   The Jackson Complaint alleges that plaintiff underwent a spinal fusion by Dr. Michael Longly, and in late 2005, Dr. Longly advised plaintiff that the tissue used in the fusion had been processed by Medtronic Sofamor Danek ("Medtronic"), which distributed tissue and organs that it acquired from BTS. Ex. F, ¶¶ 30, 31. (SOMF No. 14).   Medtronic issued a recall for the lot of tissue used

in plaintiff's fusion. *Id.* In December 2005, plaintiff's blood tests showed evidence of exposure to Hepatitis B and C. Ex. F, ¶ 32. The Jackson Complaint seeks damages for breach of express warranty, infliction of emotional distress and medical monitoring, as well as punitive damages due to the willful misconduct, malice and fraud committed by English Brothers. Ex. F, ¶ 98. (SOMF No. 15).

### 5. Zeltins v. Biomedical Tissue Services, et al.

A class action complaint was filed in the Supreme Court of the State of New York, County of Kings, in an action styled *Zeltins v. Biomedical Tissue Services, Ltd., et al.* (the "Zeltins Complaint"), a copy of which is attached hereto as Exhibit G. (SOMF No. 16). The Zeltins Complaint was brought on behalf of plaintiffs and similarly situated individuals against English Brothers for a scheme in which illegally obtained human body parts were obtained from corpses of plaintiffs' loved ones. Ex. G, ¶ 1. (SOMF No. 17). The Complaint seeks damages for intentional infliction of emotional distress, intentional misrepresentation, and violations of the New York Consumer Protection Statute. Ex. G, Counts II, IV, and VI. (SOMF No. 18) The Complaint also seeks punitive damages based on the willful misconduct, malice and fraud committed by English Brothers. Ex. G, Count VIII.

### 6. Lokenvitz v. Biomedical Tissue Services, et al.

A complaint was filed in the United States District Court for the Northern District of Iowa, Eastern Division, in an action styled *Lokenvitz v. Biomedical Tissue Services, Ltd., et al.* (the "Lokenvitz Complaint"), a copy of which is attached hereto as Exhibit H. (SOMF No. 19). The Lokenvitz Complaint alleges that in February 2005, plaintiff underwent back surgery, and in November 2005, was informed that the tissue used in his surgery was obtained through BTS, and that a recall was issued for some of the bone and tissue products distributed by BTS. Ex. H, ¶¶

30-31. Plaintiff alleges that the tissue used in his surgery came from corpses that BTS obtained from English Brothers and other funeral homes. Ex. H, ¶ 15. (SOMF No. 20). The Complaint seeks damages for intentional misrepresentation, breach of express warranties and medical monitoring. Ex. H, Counts 4-5, 10. (SOMF No. 21) The Complaint also seeks punitive damages based on the willful misconduct, malice and fraud committed by English Brothers. Ex. H, Count 6, ¶ 90. (SOMF No. 21).

### 7.    Collins v. Biomedical Tissue Services, et al.

A complaint was filed in the United States District Court for the Northern District of Iowa, Central Division, in an action styled *Collins v. Biomedical Tissue Services, Ltd., et al.* (the "Collins Complaint"), a copy of which is attached hereto as Exhibit I. (SOMF No. 22). The Collins Complaint alleges that on September 4, 2005 plaintiff underwent back surgery, and in November 2005, was informed that the tissue used in his surgery was obtained through BTS. Ex. I, ¶¶ 30, 31. Plaintiff alleges that the tissue used in his surgery may have come from corpses in the care of English Brothers. Ex. I, ¶¶ 14-15, 26. (SOMF No. 23). The Complaint seeks damages for intentional misrepresentation, breach of express warranties and medical monitoring. Ex. I, Counts 4-5, 10. (SOMF No. 24). Plaintiff also seeks punitive damages because of the reckless and willful misconduct, malice and fraud committed by English Brothers. Ex. I, Count 6, ¶ 90. (SOMF No. 24).

### 8.    Ricklefs v. Biomedical Tissue Services, et al.

A complaint was filed in the United States District Court for the Northern District of Iowa, Central Division, in an action styled *Ricklefs v. Biomedical Tissue Services, Ltds., et al.* (the "Ricklefs Complaint"), a copy of which is attached hereto as Exhibit J. (SOMF No. 25). The Ricklefs Complaint alleges that in November 2004, plaintiff underwent neck surgery, was

6

informed in March 2006 that the tissue used in her surgery was obtained through Medtronic, and that a recall was issued for tissue products that had been distributed by Medtronic. Ex. J, ¶¶ 30-31. (SOMF No. 26). Plaintiff alleges that the tissue sold by Medtronic was improperly harvested from various funeral homes, including English Brothers, without authorization from family members. Ex. J, ¶¶ 14-15. (SOMF No. 26). The Complaint seeks damages for intentional misrepresentation, breach of express warranties and medical monitoring. Ex. J, Counts 4-5, 10. (SOMF No. 27)  Plaintiff also seeks punitive damages because of the reckless and willful misconduct, malice and fraud committed by English Brothers. Ex. J, ¶ 90. (SOMF No. 27).

### 9. Wood v. Biomedical Tissue Services, et al.

A complaint was filed in the United States District Court for the Northern District of Iowa, Central Division, in an action styled *Wood v. Biomedical Tissue Services Ltd., et al.* (the "Wood Complaint"), a copy of which is attached hereto as Exhibit K. (SOMF No. 28).  The Wood Complaint alleges that on July 31, 2003, plaintiff underwent back surgery, and in April 2006, was informed that the tissue used in his surgery was obtained through BTS. Ex. K, ¶ 31. (SOMF No. 29).  Plaintiff alleges that the tissue obtained from BTS was harvested from bodies improperly obtained from various funeral homes, including English Brothers. Ex. K, ¶¶ 14-15. (SOMF No. 29).  The Complaint seeks damages for intentional misrepresentation, breach of express warranties and medical monitoring.  Ex. K, Counts 4-5, 10. (SOMF No. 30)  Plaintiff also seeks punitive damages because of the reckless and willful misconduct, malice and fraud committed by English Brothers.  Ex. L, ¶ 90. (SOMF No. 30).

### 10. Frerichs v. Biomedical Tissue Services, et al.

A complaint was filed in the United States District Court for the Northern District of Iowa, Central Division, in an action styled *Frerichs v. Biomedical Tissue Service Ltd., et al.* (the

"Frerichs Complaint"), a copy of which is attached hereto as Exhibit L. (SOMF No. 31). The Frerichs Complaint alleges that in the fall of 2005, plaintiff underwent spinal surgery, and in February 2006, was informed that the tissue used in his surgery was obtained through Medtronic. Ex. M, ¶¶ 30-31. (SOMF No. 32). Plaintiff alleges that the tissue obtained from Medtronic was harvested from bodies improperly obtained from various funeral homes, including English Brothers. Ex. M, ¶¶ 14-15. (SOMF No. 32). The Complaint seeks damages for intentional misrepresentation, breach of express warranties and medical monitoring. (SOMF No. 33). Plaintiff also seeks punitive damages because of the reckless and willful misconduct, malice and fraud committed by English Brothers. (SOMF No. 33).

### 11.    Oberender-Doolittle v. Biomedical Tissue Services, et al.

A complaint was filed in the United States District Court for the Northern District of Iowa, Central Division, in an action styled *Oberender-Doolittle v. Biomedical Tissue Services Ltd., et al.* (the "Doolittle Complaint"), a copy of which is attached hereto as Exhibit M. (SOMF No. 34). The Doolittle Complaint alleges that in August 2005, plaintiff had oral surgery, and was informed later that the tissue used in her surgery was being recalled. Ex. M, ¶¶ 30-31. (SOMF No. 35). Plaintiff alleges that the tissue obtained from BTS was harvested from bodies improperly obtained from various funeral homes, including English Brothers. Ex. M, ¶¶ 14-15. (SOMF No. 35). The Complaint seeks damages for intentional misrepresentation, breach of express warranties and medical monitoring. Ex. M, Counts 4-5, 10. (SOMF No. 36). Plaintiff also seeks punitive damages because of the reckless and willful misconduct, malice and fraud committed by English Brothers. Ex. N, ¶ 90. (SOMF No. 36).

### 12.    Eyberg v. Biomedical Tissue Services, et al.

A complaint was filed in the United States District Court for the Northern District of Iowa, Eastern Division, in an action styled *Eyberg v. Biomedial Tissue Services Ltd., et al.* (the "Eyberg Complaint"), a copy of which is attached hereto as Exhibit N. (SOMF No. 37). The Eyberg Complaint alleges that in June 2005, plaintiff had spinal surgery, and in March 2006, was informed that the tissue used in his surgery was obtained through Medtronic. Ex. N, ¶¶ 30-31. (SOMF No. 38). The Complaint seeks damages for intentional misrepresentation, breach of express warranties and medical monitoring. Ex. N, Counts 4-5, 10. (SOMF No. 39). Plaintiff also seeks punitive damages because of the reckless and willful misconduct, malice and fraud committed by English Brothers. Ex. M, ¶ 90. (SOMF No. 39).

### 13.    Pierce v. Biomedical Tissue Services, et al.

A complaint was filed in the United States District Court for the Northern District of Iowa, Eastern Division, in an action styled *Stephen Pierce v. Biomedical Tissue Services Ltd., et al.* (the "Pierce Complaint"), a copy of which is attached hereto as Exhibit O. (SOMF No. 40) The Pierce Complaint alleges that in the fall of 2005, plaintiff underwent abdominal surgery, and in November 2005, was informed that the tissue used in his surgery was obtained through BTS. Ex. O, ¶¶ 30-31. (SOMF No. 41). The Complaint seeks damages for intentional misrepresentation, breach of express warranties and medical monitoring. Ex. O, Counts 4-5, 10. (SOMF No. 42). Plaintiff also seeks punitive damages because of the reckless and demonstrated willful misconduct, malice, fraud and wantonness shown by English Brothers. Ex. N, ¶ 90. (SOMF No. 42).

14.     **Landtiser v. Biomedical Tissue Services, et al.**

A complaint was filed in the United States District Court for the Northern District of Iowa, Davenport Division, in an action styled *Landtiser v. Biomedical Tissue Services Ltd., et al.* (the "Landtiser Complaint"), a copy of which is attached hereto as Exhibit P. (SOMF No. 43). The Landtiser Complaint alleges that in October 2005, plaintiff had spinal surgery, and later learned that the tissue used in his surgery was obtained through a company called Regeneration. A recall was issued for tissue products that had been distributed by Regeneration. Ex. P, ¶¶ 30-31. (SOMF No. 44). Plaintiff alleges that the tissue obtained from Regeneration was harvested from bodies improperly obtained from various funeral homes, including English Brothers. Ex. P, ¶¶ 14-15. (SOMF No. 44).    The Complaint seeks damages recovery for intentional misrepresentation, breach of express warranties and medical monitoring.  Ex. P, Counts 4-5, 10. (SOMF No. 45)   Plaintiff also seeks punitive damages because of the reckless and willful misconduct, malice and fraud committed by English Brothers.  Ex. P, ¶ 90. (SOMF No. 45)

15.     **Kane v. Biomedical Tissue Services, et al.**

A complaint was filed in the United States District Court for the Northern District of Iowa, Central Division, in an action styled *Kane v. Biomedical Tissue Services Ltd., et al.* (the "Kane Complaint"), a copy of which is attached hereto as Exhibit Q. (SOMF No. 46).  The plaintiff alleges that she underwent back surgery in March 2005, and later learned that the tissue used in her surgery was obtained through Spinal Graft.  Ex. Q, ¶¶ 30-31. (SOMF No. 47) Plaintiff alleges that the tissue obtained from Spinal Graft was harvested from bodies improperly obtained from various funeral homes, including English Brothers. Ex. Q, ¶¶ 14-15. (SOMF No. 47).    The Complaint seeks damages for intentional misrepresentation, breach of express

10

warranties and medical monitoring.  Ex. Q, Counts 4-5, 10. (SOMF No. 48).  Plaintiff also seeks

punitive damages because of the reckless and willful misconduct, malice, fraud and wantonness

committed by English Brothers.  Ex. Q, ¶ 90. (SOMF No. 48).

### 16.    Andreasen v. Biomedical Tissue Services, et al.

A complaint was filed in the United States District Court for the Northern District of

Iowa, Central Division, in an action styled *Andreasen v. Biomedical Tissue Services, Ltd., et al.*

(the "Andreasen Complaint"), a copy of which is attached hereto as Exhibit R. (SOMF No. 49).

The Andreasen Complaint alleges that in January 2005, plaintiff underwent spinal surgery, and

later learned that the tissue used in her surgery was obtained through Medtronic.  A recall was

issued for bone and tissue products that had been distributed by Medtronic. Ex. R, ¶¶ 30-31. The

Complaint seeks damages for intentional misrepresentation, breach of express warranties and

medical monitoring.  Ex. R, Counts 4-5, 10. (SOMF No. 51).  Plaintiff also seeks punitive

damages because of English Brothers' willful misconduct, malice and fraud.  Ex. R, ¶ 90.

(SOMF No. 51).

### 17.    Aberbach v. Biomedical Tissue Services, et al.

A complaint was filed in the Supreme Court of the State of New York, County of Kings,

in an action styled *Aberbach v. Biomedical Tissue Services Ltd., et al.* (the "Aberbach

Complaint"), a copy of which is attached hereto as Exhibit S.  (SOMF No. 52).  The Aberbach

Complaint alleges that in May 2005, plaintiff underwent neck and spine surgery, and later

learned that he had received potentially contaminated tissue during the procedure. Ex. S, ¶¶ 64-

66. (SOMF No. 53). Plaintiff alleges that several funeral homes, including English Brothers,

improperly removed the potentially contaminated human tissue used in his surgery.  Ex. S, ¶¶ 3,

36. (SOMF No. 53). The Complaint seeks damages for battery, infliction of emotional distress, and punitive damages. Ex. S, Counts 1, 6, and 15. (SOMF No. 54)

## B.    THE SPECIALTY NATIONAL POLICY

Specialty National issued Policy No. 3XZ17069401 to English Brothers effective August 1, 2002 to August 1, 2003 with separate coverages for Business Liability and Death Care Services Professional Liability (the "Policy"). A copy of the Policy is attached hereto and incorporated by reference herein as Exhibit T. (SOMF No. 55). The Business Owners Liability Coverage form of the Policy provides, in relevant part, as follows:

> a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", "personal injury" and "or advertising injury to which this insurance applies. ...
>
> b.    This insurance applies:
> (1)    To "bodily injury" and "property damage" only if:
> (a)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
> (b)    The "bodily injury" or "property damage" occurs during the policy period. <u>See</u> Exhibit T.

The Business Owners Liability Coverage form of the Policy also provides no coverage for the following:

> "Bodily injury", "property damage", "personal injury", "advertising injury" due to rendering or failure to render any professional service.
>
> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property. <u>See</u> Exhibit T.

The Insuring Agreement found in the Death Care Services coverage part provides, in relevant part, as follows:

> a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of a "professional incident" to which this insurance applies ... This insurance applies to a "professional incident" only if it takes place:

(1)    In the "coverage territory"; and
(2)    During the policy period. . . .

b.    Damages because of a "professional incident" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "professional incident." See Exhibit T.

The Death Care Services coverage part excludes coverage for the following:

a.    Any claim in connection with which an insured has knowingly:
(1)    Violated any law or ordinance; or
(2)    Committed any criminal act.
This exclusion does not apply to an act:
(1)    Done in good faith; or
(2)    When requested by a public official who appears to have authority to require such an act.    See Exhibit T.

Per endorsement, the Policy provides that the insurance "should not apply to a claim of, or indemnification for, punitive or exemplary damages, or any damages awarded pursuant to statute in the form of double, treble, or other multiple damages in excess of compensatory damages." See Exhibit T. (SOMF No. 60).

## ARGUMENT

### A.    STANDARD OF REVIEW

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Miller v. O'Bryan*, 498 F. Supp. 2d 548 (S.D.N.Y. 2007); *Burroughs Wellcome Co. v. Commercial Union Ins. Co.*, 713 F. Supp. 694, 696 (S.D.N.Y. 1989), *citing* Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is particularly appropriate in resolving insurance coverage disputes because the interpretation of an insurance policy presents a question of law. *Id.*, *citing 670 Apartments Corp. v. Agricultural Inc.*, 1996 U.S. Dist. LEXIS 14435, *4-5 (S.D.N.Y. 1996).

Summary judgment is proper in this case because the record shows that there is no genuine issue as to any material fact concerning Specialty National's duty to defend or indemnify English Brothers with regard to the allegations of intentional and reckless conduct, fraud and malice brought against English Brothers.

**B.    NO COVERAGE IS AFFORDED UNDER THE BUSINESS OWNERS LIABILITY COVERAGE PART BECAUSE NO "OCCURRENCE" OR "BODILY INJURY" ARE ALLEGED, AND THE EXPECTED/INTENDED EXCLUSION PRECLUDES COVERAGE FOR THE ALLEGATIONS AGAINST ENGLISH BROTHERS**

**1.    No "Occurrence" Is Alleged By The Underlying Suits**

The Business Owners Liability Coverage form of the Policy only provides coverage for those sums that an insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" caused by an "occurrence" during the policy period. See Exhibit S. The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* The allegations brought against English Brothers clearly do not constitute an "accident" because they are based on intentional and reckless conduct, fraud and malice – indeed, there is nothing accidental about a funeral home allowing the illegal harvesting of body parts from corpses that it was handling, and then selling those body parts to third parties.

Courts applying New York law have interpreted "occurrence" in general liability policies (like the Specialty National policy) to mean "unintended events, including ones occurring unexpectedly or by chance . . . and as a sudden and instant happening . . . assignable to something catastrophic or extraordinary." *First Investors Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 166 (2d Cir. 1998). Injuries which flow directly and immediately from an intended act are not considered accidental. *Swan v. Travelers Property Cas. Co.*, 360 F. Supp. 2d 582, 589

(S.D.N.Y. 2005).   As one court noted, "an intended accident is, of course, an oxymoron." *Bingham v. Atlantic Mut. Ins. Co.*, 215 A.D.2d 315, 316, 626 N.Y.S.2d 807, 808 (1st Dept. 1995).

In this case, no "Occurrence" is alleged by the plaintiffs because the gravamen of the allegations against English Brothers is intentional and willful conduct.  The complaints against English Brothers allege the <u>intentional</u> harvesting of body parts from corpses without the decedent family's consent; the <u>intentional</u> forgery of documents; the <u>intentional</u> altering of medical records and death certificates; and the <u>intentional</u> desecration of decedent's remains. The fact that certain counts found in the underlying lawsuits allege negligence does not take away from the fact that the crux of the cases against English Brothers is <u>intentional and willful</u> conduct. New York law provides that, in determining an insurer's coverage obligations, courts must look at the factual allegations in the underlying complaints and not to accept at face value the plaintiffs' legal characterization of the causes of action.  *County of Columbia v. Continental Ins. Co.*, 189 A.D.2d 391, 394, 595 N.Y.S.2d 988, 990 (3d Dept. 1993).  As the court noted in *County of Columbia*:

> As arbiters of the law, it is [the court's] privilege to determine the nature of the claim alleged in the compliant, based upon the facts alleged and not the conclusions which the pleader draws therefrom. . . . Notably, we need give no consideration to the fact that, after stating the essential factual underlying factual allegations, the complaint is divided into separate causes of action . . . the issue is not whether a nuisance or trespass claim may possibly fit within the policies' personal injury coverage, but whether the facts alleged in HKS' complaint do.

*Id., see also Allstate Ins. Co. v. Mugavero*, 79 N.Y.2d 153, 162, 589 N.E.2d 365, 581 N.Y.S.2d 142 (1992).

New York courts have often found that no coverage exists for claims sounding in negligence when the clear import of the claims is intentional conduct. *See Atlantic Mut. Ins. Co. v. Terk Technologies Corp.*, 309 A.D.2d 22, 32, 763 N.Y.S.2d 56, 64 (1st Dept. 2003)

("notwithstanding the fact that a violation of the Lanham Act can be unintentional, and that the complaint in the federal action asserts that Terk acted with 'reckless disregard,' we can discern no justification from the factual allegations set forth in the complaint to impose a duty to defend Terk upon Atlantic . . . since all of the factual allegations of the complaint are premised on intentional, 'knowing' conduct . . ."); *Allstate Ins. Co. v. Mugavero*, 79 N.Y.2d 153, 163, 589 N.E.2d 365, 371 (N.Y. Ct. App. 1992) (summary judgment granted to insurer in sexual molestation case even though negligence and intentional acts alleged because no "explanation of how the intrinsically intentionally acts of assault, sodomy and sexual abuse could be negligently performed"); *Gibbs v. CNA Ins. Cos.*, 263 A.D.2d 836, 693 N.Y.S.2d 720 (3d Dept. 1999) (summary judgment granted to insurer in sexual molestation case despite fact that the sole allegations left in underlying trial were premised upon acts constituting negligence, because the harm was inherent in the nature of the insured's acts and whatever injuries resulted were as a matter of law intentionally caused); *Bingham v. Atlantic Mut. Ins. Co.*, 215 A.D.2d 315, 316, 626 N.Y.S2d 807, 808 (1st Dept. 1995) (summary judgment granted to insurer on duty to defend because the fact "[t]hat allegations of mental suffering can be based on both intentional and unintentional causes of action is not dispositive; what is material to the duty to defend is that the acts alleged in the counterclaims are all intentional"); *New York Cas. Ins. Co v. Ward*, 139 A.D.2d 922, 527 N.Y.S.2d 913 (1988) (summary judgment grated to insurer where the insured committed assault notwithstanding conclusory assertions of negligence); *Home Ins. Co. v. Lapi*, 192 A.D.2d 927, 596 N.Y.S.2d 885 (3d Dept. 1993) (no duty to defend despite allegations of carelessness and recklessness in complaint where insured, allegedly under the influence of alcohol, committed an assault); *Contracting Plumbers' Cooperative Restoration Corp. v. Hartford Accident and Indemnity Co.*, 59 A.D.2d 921, 399 N.Y.S.2d 255, (2d Dept. 1977)

16

(insurer had no duty to defend despite "shotgun allegations of negligence" in underlying complaint).

In this case, as in the cases described above, the allegations of intentionally harvesting (or allowing the harvesting of) body parts from a corpse in the basement of one's funeral home cannot be characterized as "negligent"; the forgery of documents to cover up the lack of consent from family members cannot be characterized as "negligent"; nor can altering medical records be characterized as "negligent."  In other words, because all of the factual allegations against English Brothers are premised on intentional and knowing conduct, renaming those allegations as negligent cannot change the fact that intentional conduct is at the core of those allegations. Because no "accident" is alleged by the plaintiffs in the underlying suits, no "Occurrence" is alleged under the Business Owners Liability Coverage form as a matter of law. *First Investors Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 166 (2d Cir. 1998); *Swan v. Travelers Property Cas. Co.*, 360 F. Supp. 2d 582, 589 (S.D.N.Y. 2005).

### 2.    Even If An "Occurrence" Were Alleged, Which Plaintiff Disputes, No "Bodily Injury" Is Alleged Under The Business Owners Liability Coverage Part

The Business Owners Liability Coverage form defines "Bodily Injury" as "bodily injury, sickness or disease sustained by any person, including death resulting from any of these at any time." See Exhibit S.  In the lawsuits where the plaintiff family member has allegedly suffered damages due to body parts being harvested from their loved one (such as the Bruno, Kogut, Enright and Zeltins suits), no Bodily Injury is alleged because the plaintiffs have suffered no "bodily injury, sickness or disease." Moreover, the basis for the damages sought in these suits are economic in nature, *i.e.*, the damages arise from English Brothers' alleged breach of contract in allowing their relatives' bodies to be harvested without their consent.  Because no actual physical

injury is at issue in these suits, no "Bodily Injury" is alleged. Moreover, any claims for emotional distress alleged by these plaintiffs would also not constitute Bodily Injury given that emotional harm arising out of economic losses does not constitute "bodily injury" under New York law. *First Investors Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162 (2d Cir. 1998).

Moreover, there is no "Bodily Injury" alleged in the lawsuits brought by plaintiffs who received allegedly contaminated body parts during surgical procedures[2] because there is no allegation in those cases that the plaintiffs have suffered any actual physical injury. Rather, these plaintiffs seek damages for medical monitoring to determine if they are will ever be injured by the allegedly contaminated organs. Accordingly, these cases also fail to allege "Bodily Injury" under the Policy. *HPF, L.L.C. v. General Star Indem. Co.*, 338 Ill. App. 3d 912, 918 (Ill. App. Ct. 2003) (establishment of medical monitoring fund does not constitute "Bodily Injury" as there is no allegation of any actual bodily injury being sustained).

### 3.    Even If "Bodily Injury" Were Alleged, Which It Is Not, No Bodily Injury Took Place During the Policy Period

The Business Owners Liability Coverage form provides coverage for "Bodily Injury" only if it is occurs during the policy period of August 1, 2002 to August 1, 2003. As discussed above, the Underlying Lawsuits do not allege "Bodily Injury." However, even if this Court were to find there that Bodily Injury is alleged, the lawsuits would not allege Bodily Injury during the policy period. In the lawsuits brought by plaintiffs who received allegedly contaminated body parts during surgery, the surgeries did not take place during the policy period, and therefore it is impossible that any Bodily Injury could have taken place during the policy period. By way of example, the surgery at issue in the Lokenvitz suit took place in February 2005, long after the policy expired. The surgery at issue in the Collins case took place in September 2005, long after

---

[2] These lawsuits include the Jackson, Lokenvitz, Collins, Ricklefs, Wood, Frerichs, Doolittle, Eyberg, Pierce, Landtiser, Kane, Andreasen and Aberbach matters.

the policy expired. The surgery at issue in the Ricklefs suit occurred in November 2004, long after the policy expired.  And the surgery at issue in the Oberender-Doolittle suit took place in August 2005, long after the policy expired.  Because these surgeries took place after the policy period ended, it is impossible that any Bodily Injury could have taken place during the policy period.

Moreover, the claims brought by plaintiffs who received allegedly contaminated body parts or tissue during surgery did not ripen until those plaintiffs were informed of the illegal harvesting or recall of tissue, all of which occurred subsequent to the expiration of the policy period.  Thus, no "Bodily Injury" could have occurred during the policy period. *See Commercial Union Assurance Co., PLC v. Oak Park Marina, Inc.*, 198 F.3d 55, 60 (2d Cir. 1999) (holding that under New York law, there was no coverage for a claim alleging emotional distress because claim did not ripen until after the policy period when plaintiff became aware of the wrongful act); *Miccio v. National Surety Corp.*, 180 A.D.2d 937, 566 N.Y.S.2d 760, 762 (3d Dept. 1991) (affirming that there was no coverage for bodily injury which occurred after the policy period); and *Acorn Ponds, Inc. v. Hartford Ins. Co.*, 105 A.D.2d 723, 724, 481 N.Y.S.2d 392, 393-94 (2d Dept. 1984) (same).

    **4.    Assuming *Arguendo* That "Bodily Injury" Is Alleged By The Underlying Suits, Which Specialty National Disputes, An Expected/Intended Exclusion Would Preclude Coverage Under The Business Owners Liability Coverage Form**

The Business Owners Liability Coverage form provides no coverage for:

> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

Although it is clear that Bodily Injury is not alleged in the underlying suits, even if it were, the above exclusion would preclude coverage for those claims.  For the same reasons that

19

there is no "Occurrence" under the Policy, the expected/intended exclusion bars coverage. *Swan v. Travelers Property Cas. Co.*, 360 F. Supp. 2d 582, 590 (S.D.N.Y. 2005) (expected/intended exclusion bars coverage where underlying complaint alleges only intentional acts). As discussed above, the allegations against English Brothers are clearly based on intentional and reckless conduct, fraud and malice. Courts applying New York law have interpreted "occurrence" in general liability policies (like the Specialty National policy) to mean "unintended events, including one[s] occurring unexpectedly or by chance . . . and as a sudden and instant happening . . . assignable to something catastrophic or extraordinary." *First Investors Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 166 (2d Cir. 1998). The underlying complaints against English Brothers allege the intentional forgery of documents; the intentional altering of medical records and death certificates; the intentional allowance of the harvesting of body parts from corpses without the decedent's family's consent; and the intentional desecration of decedent's remains. Because the claims against English Brothers are based on intentional conduct, the Policy's expected/intended exclusion would bar coverage for same as a matter of law. *Swan v. Travelers Property Cas. Co.*, 360 F. Supp. 2d 582, 590 (S.D.N.Y. 2005).

**C.    NO COVERAGE IS AFFORDED UNDER THE DEATH CARE SERVICES COVERAGE PART BECAUSE NO "PROFESSIONAL INCIDENT" IS ALLEGED, AND, EVEN IF IT WERE, THE PROFESSIONAL SERVICES EXCLUSION PRECLUDES COVERAGE FOR THE ALLEGATIONS AGAINST ENGLISH BROTHERS**

**1.    No "Professional Incident" Is Alleged**

The Insuring Agreement found in the Death Care Services coverage part provides, in relevant part, as follows:

> a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of a "professional incident" to which this insurance applies ... This insurance applies to a "professional incident" only if it takes place:

(3)    In the "coverage territory"; and

(4)    During the policy period. . . . See Exhibit T.

The Death Care Service Services Coverage form only provides coverage for those sums "that the insured becomes legally obligated to pay as damages because of a 'professional incident.'" Id. "Professional incident" is defined in pertinent part as any "professional malpractice, error or mistake which causes [b]odily injury, sickness, disease, death or mental anguish, including resulting loss of services . . ." Id.

The Underlying Lawsuits do not allege any "professional malpractice, errors or mistakes." Instead, the lawsuits allege only intentional and willful conduct, as well as malice and fraud. Such conduct does not constitute an error, mistake or malpractice. Pursuant to the plain language of the Policy, there can be no coverage for the Underlying Lawsuits under the Death Care Services Liability Coverage form because a "Professional Incident" is not alleged. Village of Sylvan Beach v. Travelers Indem. Co., 55 F.3d 114, 115-116 (2d Cir. 1995) (plain and unambiguous policy language will be enforced as written).

### 2.    Even If A "Professional Incident" Were Alleged, Which It Is Not, The Professional Services Exclusion Precludes Coverage Under the Death Care Services Coverage Form

The Business Owners Coverage Form provides no coverage for the following: "'Bodily Injury', 'property damage', 'personal injury', 'advertising injury' due to rendering or failure to render any professional service." See Exhibit T. While the term "professional service" is not defined in the Policy, courts have interpreted the term in the insurance policy context as follows:

> Courts have stated that in determining whether an act is of a professional nature, a court must look not to the title of the person performing it, but to the act itself. Something more than an act flowing from mere employment or vocation is essential. The act or service must be such as exacts the use or application of special learning or attainments of some kind.

21

*Insurance Co. of North America v. Milberg Weiss Bershad Specthrie & Lerach*, 1996 U.S. Dist. LEXIS 13388, (S.D.N.Y. 1996) (interpreting New York law) (internal citations omitted).

In this case, the Underlying Lawsuits allege the rendering of professional services. In each of the lawsuits, English Brothers is to have acted in its capacity as a funeral home in preparing bodies for burial. For example, in the Enright, Bruno and Kogut Complaints, the plaintiffs allege, in part, breach of contract against English Brothers for its actions in harvesting the decedent's organs, tissue and bone without consent while preparing the body for burial. In the complaints involving the implantation of the illegally harvested organs, tissue, and bone, the plaintiffs allege, in part, breach of express warranties as to the fitness of the material that English Brothers harvested or allowed to be harvested from the bodies entrusted to its care for burial. Clearly, the allegations against English Brothers are for its rendering or failure to render a professional service. Accordingly, the Professional Services exclusion applies and there is no coverage for these claims. *Village of Sylvan Beach v. Travelers Indem. Co.*, 55 F.3d 114, 115-116 (2d Cir. 1995) (plain and unambiguous policy language will be enforced as written).

**D.    THE POLICY PROVIDES NO COVERAGE FOR PUNITIVE DAMAGES**

The Underlying Lawsuits seek punitive damages against English Brothers, which are clearly not covered by the Specialty National Policy. The Policy provides that the insurance "should not apply to a claim of, or indemnification for punitive or exemplary damages, or any damages awarded pursuant to statute in the form of double, treble, or other multiple damages in excess of compensatory damages." See Exhibit T. As is clear from this language, punitive damages are not covered. Furthermore, "[i]t is well settled that New York public policy precludes insurance indemnification for punitive damages awards." *Hatfield v. 96-100 Prince Street, Inc.*, 1997 U.S. Dist. LEXIS 3804, *4 (S.D.N.Y. 1997). For these reasons, no coverage is

provided for the claims of punitive damages sought in the Underlying Lawsuits as a matter of law. *Village of Sylvan Beach v. Travelers Indem. Co.*, 55 F.3d 114, 115-116 (2d Cir. 1995) (plain and unambiguous policy language will be enforced as written).

**E.     NO DUTY TO DEFEND IS TRIGGERED BY THE UNDERLYING SUITS**

As set forth above, no "Occurrence" or "Bodily Injury" is alleged under the Business Owners Liability coverage form.  Even if an Occurrence or Bodily Injury were alleged, the Policy's expected/intended exclusion would bar coverage for the plaintiffs' claims as a matter of law. *Swan v. Travelers Property Cas. Co.*, 360 F. Supp. 2d 582, 590 (S.D.N.Y. 2005). Moreover, no "Professional Incident" is alleged under the Death Care Services Liability coverage part, and even if it were, the Professional Services exclusion would preclude coverage under the same.  Given that the Policy provides no coverage for the underlying claims, no duty to defend is triggered for these claims as a matter of law. *Atlantic Mutual Ins. Co. v. Terk Techs. Corp.*, 309 A.D.2d 22, 763 N.Y.S.2d 56 (1st Dep't 2003).

**F.     ENGLISH BROTHERS' COUNTERCLAIMS SEEKING DAMAGES AGAINST SPECIALTY SHOULD BE DISMISSED**

English Brothers two purported counterclaims are factually and legally insufficient as a matter of law and thus should be dismissed.

The first counterclaim purports to assert some form of "bad faith" claim whereby Specialty should be held obligated, irrespective of the insurmountable good faith coverage defenses set forth in this motion, to pay for English Brother's defense costs in the underlying action and indemnify it for any liability imposed against it "without regard to the limits of the policy". Since Specialty already is providing English Brothers with a defense in a number of underlying actions subject to a reservation of rights, the only alleged act of "bad faith' English Brothers can assert in the counterclaim is that Specialty brought this declaratory judgment action.

Specialty, however, is doing exactly what it can and should do under the law: provide a defense under a reservation of rights and seek a judicial determination that the policy does not provide coverage so as to preclude the duty to defend. *Hugo Boss Fashions, Inc. v. Federal Ins. Co.*, 252 F.3d 608, 621 (2d Cir. 2001). To date, Specialty has been paying for English Brothers defense in a number of lawsuits subject to a reservation of rights – this fact cannot be disputed. Further, Specialty has not sought to unearth "facts and allegations antithetical to English Brothers interests in pending litigation" as alleged in the First Counterclaim. The present summary judgment motion seeks a declaration that the claims asserted against English Brothers in the underlying actions are not covered by the Specialty Policy as a matter of law, something Specialty has the right to do under New York law. *Hugo Boss Fashions, Inc., supra.*

Under New York law, bad faith will only be found where there is a clear showing that the insurer exhibited a "gross disregard" for its policy obligations or the insured's interests. *Hugo Boss Fashions, Inc., supra*; *Pavia v. State Farm Mut. Auto. Ins. Co.*, 82 N.Y.2d 445 (N.Y. 1993). An insurer is not liable in excess of the policy limits for breach of an insurance contract absent bad faith. *United States Fidelity and Guaranty Co. v. Copfer*, 48 N.Y.2d 871, 424 N.Y.S.2d 356, 400 N.E.2d 298 (N.Y. 1979). There has been no showing that Specialty exhibited a "gross disregard" for its policy obligations or the interests of English Brothers with regard to any of the underlying suits. To the contrary, the record establishes that Specialty has acted in utmost good faith by providing a defense to English Brothers and then seeking a declaratory judgment concerning the numerous coverage issues raised by the lawsuits brought against English Brothers. As a matter of law, Specialty has committed no bad faith and therefore cannot be held liable for any amounts in excess of the policy limits. Accordingly, Specialty National is entitled

to summary judgment as a matter of law on English Brothers' First Counterclaim, and the First Counterclaim should be therefore dismissed.

English Brothers' Second Counterclaim seeking payment of its attorneys' fees in this action should similarly be dismissed if Specialty prevails. It is well established that an insured may only recover attorney's fees in a declaratory judgment action under the very limited circumstances that it prevails in an action brought by an insurer seeking a declaratory judgment that it has no duty to defend or indemnify the insured. *Might Midgets v. Centennial Insurance Company*, 47 N.Y.2d 12, 389 N.E.2d 1080, 416 N.Y.S.2d 559 (1979).

For the above reasons, the counterclaims asserted by English Brothers should be dismissed in their entirety.

## CONCLUSION

WHEREFORE, Plaintiff, Specialty National Insurance Company, respectfully requests, for the reasons set forth herein, that this Honorable Court issue an Order declaring that Specialty National has no duty to defend or indemnify English Brothers Funeral Home with regard to the lawsuits described herein, dismissing the counterclaims of English Brothers with prejudice, and for any other and further relief that this Court deems just.

Respectfully submitted,

By: _____

Eleftherios Kravaris, Esq. (EK 4579)
John H. Somoza, Esq. (JS 1801)
MELITO & ADOLFSEN P.C.
Attorneys for Plaintiff
Specialty National Insurance
Company
233 Broadway, 28th Floor
New York, NY 10279
(212) 238-8900

Robert Brunner, Esq.
BOLLINGER, RUBERRY
& GARVEY
Attorneys for Plaintiff
Specialty National Insurance
Company
500 West Madison Street
Suite 2300
Chicago, Illinois 6066
(312) 466-8000

25