# Exhibit G

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

---

Dainis Zeltins and Josephine Olivo,
On Behalf of Themselves and All Others
Similarly Situated,

                    Plaintiffs,

            versus

Biomedical Tissue Services, Ltd.;
Michael Mastromarino; Joseph Nicelli;
Lee Cruceta; LMC Tissue Recovery
Services; Christopher Aldorasi;
MCM Tissue Recovery Services, Inc.;
Chris Aldorasi Funeral Service; Daniel
George & Son Funeral Home, Inc.;
Daniel George & Son Funeral Home of
Brooklyn LLC; Daniel George, Jr.;
English Brothers Funeral Home; James
Weeks; Frank Restivo; Frank Restivo
Funeral Home; New York Mortuary
Services, Inc.; Timothy O'Brien; John Doe
Corporations 1-10 and John Doe
Individuals 1-10,

                    Defendants.

---

**CLASS ACTION COMPLAINT**
**JURY TRIAL DEMANDED**

Index No.: _____

---

COME NOW Plaintiffs, on behalf of themselves and all others similarly situated, by and

through their undersigned attorneys, and for their Class Action Complaint state:

## INTRODUCTION

1.      Plaintiffs Dainis Zeltins and Josephine Olivo bring this Class Action Complaint

on behalf of themselves and on the behalf of all other similarly situated individuals, against these

Defendants, who, upon information and belief, were involved in a scheme in which they

participated in illegally obtaining human body parts, such as bone, skin, tendons, and other

tissues, from the corpses of Plaintiffs' next-of-kin or loved ones while the corpses were under the

care of either the individual Defendants or the various funeral home Defendants and other

unknown individuals or business entities. Defendants participated in this scheme of harvesting

body parts from the corpses without the consent of the decedents (while alive) or of the

decedents' next-of-kin or loved ones allowing the harvesting of body parts by Defendants for

ultimate use as transplantation materials (allografts) into living human beings.

2.      Plaintiff Dainis Zeltins's brother, Richard Zeltins, died April 19, 2003.

Decedent's body was entrusted to the care of David George & Son Funeral Home, Inc. in

Brooklyn. The body was to be cremated. Neither Richard Zeltins nor any member of his family

consented orally or in writing to the harvesting of tissue from Richard Zeltins's corpse for use as

allograft transplantation material by any Defendant. In or about late September or early October

2005, a New York City detective came to Dainis Zeltins's home with a purported release

allowing for the harvesting of tissue from the corpse of Richard Zeltins. Dainis Zeltins informed

the detective that he had not signed any release, and that no one else had. The release contained

a completely incorrect address for Dainis Zeltins, who has lived at the same address in Brooklyn

for approximately 49 years.

3.      Plaintiff Josephine Olivo's husband, Anthony Olivo, died April 10, 2003.

Decedent's body was entrusted to the care of English Brothers Funeral Home in Brooklyn. The

body was to be cremated. Neither Anthony Olivo nor any member of his family consented orally

or in writing to the harvesting of tissue from Anthony Olivo's corpse for use as allograft

transplantation material by any Defendant. In or about September 2005, two New York City

detectives came to Mrs. Olivo's home in Staten Island with a purported release allowing for the

harvesting of tissue from the corpse of Anthony Olivo. Mrs. Olivo informed the detectives that she had not signed any release, and that no one else had. Someone had forged her signature on the release.

4.     The members of the Class are similarly situated in that they allege that Defendants also were involved in a scheme to, and did in fact, harvest tissue from the corpses of their next-of-kin or loved ones without consent.

5.     Plaintiffs allege that beginning in or around 2000, former New Jersey dentist and oral surgeon, Michael Mastromarino, entered into a partnership with Joseph Nicelli, a master embalmer, to open Biomedical Tissue Services, Ltd. for the purpose of harvesting human tissue, bone, and organs from human corpses for resale to commercial human tissue, bone, and organ processors and resellers. When human tissue, such as ligaments, tendons, heart valves, skin, or bone, are removed from one human for preparation and transplantation into another, the tissue, bone, or organ is known as an allograft.

6.     Plaintiffs allege that shortly after opening their business, Mastromarino and Nicelli began harvesting tissue and bones from human bodies, including bodies of Plaintiffs' next-of-kin, family members, and loved ones, improperly obtained from various funeral homes, and perhaps from local city morgues in cases in which the bodies were unclaimed or unidentified.

7.     Plaintiffs allege that Mastromarino and Nicelli were aided in this enterprise by, among others, Lee Cruceta and Christopher Aldorasi.

8.     Plaintiffs allege that Lee Cruceta was head of LMC Tissue Recovery Services.

9.     Plaintiffs allege that Christopher Aldorasi was head of MCM Tissue Recovery Services Inc. and also of Chris Aldorasi Funeral Service.

3

10.    Plaintiffs allege that the deceased individuals obtained by Biomedical Tissue Services from funeral homes and dissected by Mastomarino, Nicelli, Cruceta, and Aldorasi, among others, never intended to be tissue donors, or if they did they did not give their consent to have their tissues or bones removed with the correct authorization, and their families never authorized the use of their bodies for human tissue harvesting for later transplantation.

11.    Plaintiffs allege that to circumvent obtaining releases from the families of the dissected corpses, Biomedical Tissue Services, Mastromarino, Nicelli, Cruceta, Aldorasi, and/or their agents or employees, with the aid, knowledge, agreement, or common understanding of Defendant funeral homes and funeral home officers, secretly dissected the bodies without the knowledge of family members and prepared them for burial or cremation. Such dissections included replacement of harvested bone and tissue with foreign objects, such as PVC piping and other objects, so that bodies would still appear normal for their pending visitations, funerals, or post mortem proceedings.

12.    Plaintiffs allege that BTS, Mastomarino, Nicelli, Cruceta, Aldorasi, and/or their agents or employees, with the aid, knowledge, agreement, or common understanding of Defendant funeral homes and their officers, also altered the medical records, death certificates, and even identities of the corpses to conceal the lifestyle and medical or disease histories of the corpses.

13.    Plaintiffs allege that certain funeral homes, including Daniel George & Son Funeral Home, Inc., Daniel George & Son Funeral Home of Brooklyn LLC, English Brothers Funeral Home, and New York Mortuary Services, Inc., among others, allowed Mastromarino, Nicelli, Cruceta, Aldorasi, or their agents or employees to harvest body parts from corpses under the funeral home's care and with the aid, knowledge, agreement, or common understanding of

4

the funeral home and its officers, even though neither the decedents (while alive) nor decedents' families or next-of-kin gave permission for such harvesting of body parts ultimately to be used for transplantation as allografts into living human bodies.

14.    On October 13, 2005, the FDA advised the public of a voluntary recall of human allografts distributed by BTS.

15.    On February 22, 2006 the Grand Jury for the County of Kings, New York, handed down a one hundred and twenty-two count indictment of Mastromarino, Nicelli, Cruceta, and Aldorasi.

## THE PARTIES

16.    Plaintiff Dainis Zeltins is a resident of Kings County, New York, residing at 120 Bay 29th Street, Apartment 2, Brooklyn, New York.

17.    Plaintiff Josephine Olivo is a resident of Richmond County, New York, residing at 3761 Hylan Blvd., Staten Island, New York.

18.    Defendant Biomedical Tissue Services, Ltd. ("BTS") is a business entity organized and existing under and by virtue of the law of the State of New Jersey with its principal place of business located at 1273 77th Street, Brooklyn, New York 11228. BTS may be served on its registered agent Michael Mastromarino, 260 Columbia Avenue, Suite #1, Fort Lee, New Jersey 07024.

19.    Defendant Michael Mastromarino ("Mastromarino") is an individual located at 2125 Center Avenue, Fort Lee, New Jersey 07024. Mastromarino may be served at 260 Columbia Avenue, Suite #1, Fort Lee, New Jersey 07024.

20.    Defendant Joseph Nicelli ("Nicelli") is an individual located at 29 Clifton Avenue, Staten Island, New York 10305-4911 and may be served at that address.

21.    Defendant Lee Cruceta ("Cruceta") is an individual located at 206 Oakland Avenue, Monroe, New York 10950 and may be served at that address.

22.    Defendant LMC Tissue Recovery Services ("LCM") is a business entity organized and existing under and by virtue of the law of the State of New Jersey with its principal place of business at 2125 Center Avenue, Ft. Lee, New Jersey. It may be served on its registered agent Lee Cruceta located at 206 Oakland Avenue, Monroe, New York 10950.

23.    Defendant Christopher Aldorasi ("Aldorasi") is an individual located at 1 Rumson Road, Staten Island, New York 10314 and may be served at that address.

24.    Defendant MCM Tissue Recovery Services Inc. ("MCM") is a business entity organized and existing under and by virtue of the law of the State of New York with its principal place of business at 1 Rumson Road, Staten Island, New York 10313. It may be served on its registered agent Christopher Aldorasi located at 1 Rumson Road, Staten Island, New York 10314.

25.    Defendant Chris Aldorasi Funeral Service ("Aldorasi Funeral Service") is a business entity organized and existing under and by virtue of the law of the State of New York located at 1 Rumson Road, Staten Island, New York 10314. It may be served on its registered agent Christopher Aldorasi located at 1 Rumson Road, Staten Island, New York 10314.

26.    Defendant Daniel George & Son Funeral Home, Inc. ("Daniel George & Son") is a business entity organized and existing under and by virtue of the law of the State of New York located at 1852 Bath Avenue, Brooklyn, New York 11214 and may be served at that address.

27.    Defendant Daniel George & Son Funeral Home of Brooklyn LLC ("Daniel George & Son of Brooklyn") is a business entity organized and existing under and by virtue of

the law of the State of New York located at 1852 Bath Avenue, Brooklyn, New York 11214 and may be served at that address.

28.    Defendant Daniel George, Jr. is an individual and Chairman of Daniel George & Son and Daniel George & Son of Brooklyn.  He may be served at 1852 Bath Avenue, Brooklyn, New York 11214.

29.    Defendant English Brothers Funeral Home ("English Brothers") is a business entity organized and existing under and by virtue of the law of the State of New York located at 2203 Avenue Z, Brooklyn, New York 11235 and may be served at that address.

30.    Defendant James Weeks is an individual located in Florida and Principal Executive Officer of English Brothers.  He may be served at 1403 Saffron Way, New Port Richie, Florida 34665.

31.    Defendant Frank Restivo is an individual located in New York and Owner of English Brothers.  He may be served at 530 Valleyview Place, Staten Island, New York 10514.

32.    Defendant Frank Restivo Funeral Home is a business entity organized and existing under and by virtue of the law of the State of New York located at 2203 Avenue Z, Brooklyn, New York 11235 and may be served at that address.

33.    Defendant New York Mortuary Services, Inc. ("New York Mortuary") is a business entity organized and existing under and by virtue of the law of the State of New York located at 2242 1st Avenue, New York, New York 10029 and may be served at that address.

34.    Defendant Timothy O'Brien is an individual and Chief Executive Officer of New York Mortuary Services, Inc. and may be served at 2242 1st Avenue, New York, New York 10029.

7

35.    Defendants John Doe Corporations 1-10 are as yet unknown business entities located in and around the State of New York and contiguous states that were involved in the conduct complained of by Plaintiffs.

36.    Defendants John Doe Individuals 1-10 are as yet unknown individuals located in and around the State of New York and contiguous states that were involved in the conduct complained of by Plaintiffs.

## VENUE/JURISDICTION

37.    This Court has jurisdiction over Defendants as these individuals and companies routinely conduct business in the State of New York, including this County, and perform services and distribute products into and throughout New York from which they derive substantial financial benefits from individuals and consumers located throughout New York. Moreover, all or most of the events giving rise to this Class Action Complaint occurred in Kings County, New York.

38.    Plaintiffs and the Class assert no federal question.

39.    Plaintiffs allege, upon information and belief, that at least two-thirds of all class members are citizens of New York, and that the primary Defendants are residents of New York and that at least one Defendant from whom significant relief is sought and whose conduct is a significant basis for the claims asserted is a resident of New York.

## CLASS ALLEGATIONS

40.    Plaintiffs bring this action as a class action pursuant to New York Civil Practice Law and Rules (CPLR) section 901 on behalf of a Class defined as follows:

> All individuals whose next-of-kin's or loved one's corpse had body parts removed by Defendants for ultimate use as allografts or had body parts removed for ultimate use as allografts while the decedent's corpse was under the care of any Defendant, and neither the decedent (while alive) nor the decedent's next-of-kin or loved one had given consent or permission to any Defendant for the removal of such body parts for ultimate use as allografts.

41.    The Class consists of hundreds of persons located primarily in New York, and specifically the New York City area; thus, the Class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable.

42.    There are questions of law or fact common to the Class which predominate over any questions affecting only individual members, including the following:

a.    Whether Defendants removed body parts from Plaintiffs' next-of-kin's or loved one's corpse without proper consent or authorization;

b.    Whether Defendants engaged in deceptive acts and practices, including, but not limited to, hiding from Plaintiffs the fact that body parts had been harvested from their next-of-kin or loved ones;

c.    Whether Defendants represented that they would honor the wishes and directives of, and agreements with, decedents or their next-of-kin and loved ones;

d.    Whether Defendants intentionally or negligently misrepresented to decedents or their next-of-kin and loved ones that they would honor the

9

wishes and directives of, and agreements with, decedents or their next-of-kin and loved ones;

e.    Whether Defendants committed consumer fraud in hiding the fact that they were involved in harvesting human body parts from corpses for monetary gain when the proper consent or authorization had not been secured from the decedents' next-of-kin or loved ones;

f.    Whether Defendants, as caretakers of decedents' corpses, had a duty to the Class members to treat the corpses with dignity and respect, and whether the breach of this duty was the proximate cause of severe emotional distress caused to the Class members;

g.    Whether Defendants knew or should have known that harvesting Class members' decedents' corpses for body parts without proper consent or authorization from decedents or Class members would cause Class members severe emotional distress; and

h.    Whether Defendants' conduct was extreme and outrageous as to extend beyond all possible bounds of decency.

43.    Each of these enumerated questions of law and fact is common to each member of the Class.

44.    The claims of the representative Plaintiffs are typical of the claims of the members of the Class; the representative Plaintiffs and all Class members entrusted their next-of-kin or loved one's corpse to Defendant funeral homes or services or other unknown entities. While in the care of these funeral homes or services or other unknown entities, the corpses were

harvested of various body parts, without consent of decedents (while alive) or next-of-kin or loved ones, by various Defendants for sale as allografts and for monetary gain.

45.     The representative Plaintiffs will fairly and adequately protect the interests of the Class, having obtained qualified and competent legal counsel to represent themselves and those similarly situated.

46.     The prosecution of separate actions by individual Class members would create a risk of inconsistent adjudications and would cause needless expenditure of judicial resources.

47.     Plaintiffs are typical of the Class because their claims arise from the same legal theories.

48.     A Class action is superior to other available methods for the fair and efficient adjudication of the controversy.

49.     Plaintiffs will request that this Class be certified as an opt-out Class.

### JURIDICAL LINK

50.     Plaintiffs allege that Defendants are related by juridical link, a relationship that links all Defendants in a way such that single resolution of the dispute is preferred to multiplicity of similar actions.  With respect to the conduct at issue in this litigation, Defendants are bound together by their agreement, common practices, and concert and collusion in their fraudulent activities.

51.     Plaintiffs allege that individual Defendants Mastromarino, Nicelli, Cruceta, and Aldorasi, among others, had relationships that were similar or identical with the business entity Defendants whereby the business entity Defendants provided the corpses for nonconsensual harvesting of tissue by Mastromarino, Nicelli, Cruceta, and Aldorasi, among others.

11

## COUNT I – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

52. Plaintiffs incorporate the previous paragraphs by reference as though fully set forth herein.

53. Defendants' acts and omissions demonstrated conduct that was negligent, and this negligence caused Plaintiffs severe emotional distress, given the nature of the harm caused as described in this Complaint.

54. Plaintiffs allege that all Defendants had an agreement, engaged in a common undertaking, and acted in concert to bring about Plaintiffs' harm caused by the negligent infliction of emotional distress.

55. As a direct result of Defendants' acts and omissions, as described herein, Plaintiffs were caused, or shall in the future be caused, to suffer severe pain and suffering, severe emotional distress and harm, financial or economic loss, including, but not limited to, present and future lost wages, and other damages.

56. Wherefore, Plaintiffs demand judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the court deems proper.

## COUNT II – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

57. Plaintiffs incorporate the previous paragraphs by reference as though fully set forth herein.

58. Defendants' acts and omissions demonstrated conduct that can be deemed extreme, outrageous, and unnecessarily reckless, in a deliberate intent to cause Plaintiffs significant emotional distress, or that can be deemed to be a willful and wanton disregard of the fact that such emotional distress could and should be expected.

59.   Plaintiffs allege that all Defendants had an agreement, engaged in a common undertaking, and acted in concert to bring about Plaintiffs' harm caused by the intentional infliction of emotional distress.

60.   As a direct result of Defendants' acts and omissions, as described herein, Plaintiffs were caused, or shall in the future be caused, to suffer severe pain and suffering, severe emotional distress and harm, financial or economic loss, including, but not limited to, present and future lost wages, and other damages.

61.   Wherefore, Plaintiffs demand judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the court deems proper.

## COUNT III – NEGLIGENCE

62.   Plaintiffs incorporate all previous paragraphs by reference as if fully set forth herein.

63.   At all times relevant, Defendants were engaged in some manner in the business of caring for or preparing corpses for burial, interment, or cremation, or procuring, harvesting, testing, evaluating, preserving, selling, marketing, labeling, advertising or supplying products from human tissue and bone for implantation in the human body.

64.   At all times relevant, Defendants negligently and carelessly cared for the corpses of Plaintiffs' decedents or negligently or unlawfully procured, harvested, tested, researched, evaluated, preserved, supplied, marketed, labeled, advertised, supplied, or sold the body parts of the corpses of Plaintiffs' decedents.

65.    Plaintiffs allege that all Defendants had an agreement, engaged in a common undertaking, and acted in concert to bring about Plaintiffs' harm caused by the negligence of Defendants.

66.    As a direct and proximate result of the conduct of Defendants as stated above, Plaintiffs were caused, or shall in the future be caused, to suffer severe pain and suffering, severe emotional distress and harm, financial or economic loss, including, but not limited to, present and future lost wages, and other damages.

67.    Wherefore, Plaintiffs demand judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all other relief as the court deems proper.

## COUNT IV – INTENTIONAL MISREPRESENTATION

68.    Plaintiffs incorporate the previous paragraphs by reference as though fully set forth herein.

69.    Defendants, all or certain of them, made numerous false, misleading, and fraudulent representations to the Plaintiffs and Plaintiffs' decedents (while alive) leading them to believe, among other things, that Defendants would treat with care and respect the corpses of the Plaintiffs' decedents, not falsify records and information concerning Plaintiffs' decedents, follow acceptable and ethical funeral home and tissue/bone procurement standards of conduct, and secure authorized consent from decedents or decedents' next-of-kin before removing any body parts from decedents for ultimate use as allografts for transplantation into another living human body.

70.    These representations by Defendants, all or certain of them, were false. Defendants did not treat with care and respect the corpses of the Plaintiffs' decedents, falsified

14

records and information concerning Plaintiffs' decedents, did not follow acceptable and ethical

funeral home and tissue/bone procurement standards of conduct, and did not secure authorized

consent from decedents or decedents' families before removing any body parts from decedents

for ultimate use as allografts for transplantation into another living human body.

71.     These representations by Defendants were material, in that if decedents (while

alive) and decedents' Plaintiffs had known the truth, decedents or decedents' Plaintiffs would not

have allowed Defendants to have cared for or had any contact with the corpses.

72.     The fact that the treatment of the corpses as described in this Complaint was not

what Defendants represented it would be was susceptible of knowledge.

73.     Defendants, all or certain of them, made these representations knowing them to be

false and misleading, and with the intent to defraud, mislead, and deceive decedents (while alive)

or decedents' Plaintiff, and with the intent to induce decedents or decedents' Plaintiffs to use

Defendants' services and products.

74.     Plaintiffs, Plaintiffs' decedents, and the general public used Defendants' services

and products. If decedents (while alive) and decedents' Plaintiffs had known the truth about the

way the corpses were in fact going to be treated, they would not have used Defendants' services

and products.

75.     Decedents (while alive) and decedents' Plaintiffs acted in reliance on Defendants'

misrepresentations.

76.     In performing the described acts or omissions, Defendants, all or certain of them,

acted fraudulently, maliciously, or oppressively toward Plaintiffs and others by compromising

integrity and dignity for the benefit of profit. Defendants, all or certain of them, had actual

knowledge, or should have had actual knowledge, of the serious potential emotional dangers posed to Plaintiffs and others from their treatment of the corpses.

77.     Plaintiffs allege that all Defendants had an agreement, engaged in a common undertaking, and acted in concert to bring about Plaintiffs' harm caused by the intentional misrepresentations.

78.     As a direct and proximate result of the misrepresentations of Defendants as stated above, Plaintiffs were caused, or shall in the future be caused, to suffer severe pain and suffering, severe emotional distress and harm, financial or economic loss, including, but not limited to, present and future lost wages, and other damages.

79.     Wherefore, Plaintiffs demand judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the court deems proper.

## COUNT V – NEGLIGENT MISREPRESENTATION

80.     Plaintiffs incorporate the previous paragraphs by reference as though fully set forth herein.

81.     Defendants made the alleged misrepresentations described above that they would treat with care and respect the corpses of the Plaintiffs' decedents, not falsify records and information concerning Plaintiffs' decedents, follow acceptable and ethical funeral home and tissue/bone procurement standards of conduct, and secure authorized consent from decedents or decedents' families before removing any body parts from decedents for ultimate use as allografts to be transplanted into living human bodies without any reasonable grounds for believing the representations to be true.

16

82.    At all times relevant, Defendants' representations were made with the intent to induce decedents (while alive) or decedents' Plaintiffs to rely on them.

83.    At all times relevant, decedents (while alive) and decedents' Plaintiffs were unaware of the falsity or misleading nature of Defendants' representations, acted in reliance on the truth of the representations, and were justified in doing so.

84.    Plaintiffs allege that all Defendants had an agreement, engaged in a common undertaking, and acted in concert to bring about Plaintiffs' harm caused by the negligent misrepresentations.

85.    As a direct and proximate result of the misrepresentations of Defendants as stated above, Plaintiffs were caused, or shall in the future be caused, to suffer severe pain and suffering, severe emotional distress and harm, financial or economic loss, including, but not limited to, present and future lost wages, and other damages.

86.    Wherefore, Plaintiffs demand judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the court deems proper.

## COUNT VI – VIOLATION OF THE NEW YORK CONSUMER PROTECTION STATUTE, N.Y. GEN. BUS. LAW § 349 ET SEQ.

87.    Plaintiffs incorporate the previous paragraphs by reference as though fully set forth herein.

88.    Defendants' conduct falls within the purview of the New York Consumer Protection Statute, N.Y. Gen. Bus. Law § 349 et seq.

89.    Defendants, as corporations, companies, or individuals, are "persons" within the meaning of the Statute, and as such are prohibited from engaging in deceptive acts and practices.

17

90.   Defendants have employed unconscionable commercial practices or fraud or other unlawful acts in connection with the sale of services or advertising of funeral home services in violation of the Statute, including, but not limited to, making material representations about, or engaging in fraudulent or deceptive conduct concerning, the quality, characteristics, or benefits of their funeral home services.

91.   The following conduct by Defendants constitutes unconscionable commercial practices, deceptions, frauds, false pretenses, false promises, misrepresentations, or the knowing concealment, suppression, or omission of material facts with the intent that decedent (while alive) and decedents' Plaintiffs and members of the general public rely on such concealment, suppression, or omission, in connection with the sale of funeral home services that are unlawful under the act:

(a)   falsely representing in their written brochures, promotional materials, and advertisements, distributed throughout New York, that their treatment of corpses comports with accepted commercial, legal, and ethical standards of the funeral home industry;

(b)   engaging in deceptive acts and practices, including, but not limited to, representing that their services respect the dignity of the corpses entrusted to them and the dignity of those living relatives putting their trust in them;

(c)   representing that their funeral and mortuary services had certain approval, characteristics, affiliation, or status that they do not have;

(d)   knowingly or negligently misrepresenting, concealing, or suppressing the fact that corpses entrusted to their care were not treated with dignity and

18

respect, but instead were harvested for body parts without any or adequate

permission or consent;

(e) unfairly exploiting unwarranted trust in their well-known names and

improperly touting their reputations for quality; and

(f) committing consumer fraud, acting negligently or with reckless disregard

for the rights and reasonable expectations of the decedents' Plaintiffs.

92. Plaintiffs allege that all Defendants had an agreement, engaged in a common

undertaking, and acted in concert to bring about Plaintiffs' harm caused by the violations of the

New York Consumer Protection Statute.

93. As a direct and proximate result of the conduct of Defendants as stated above,

Plaintiffs were caused, or shall in the future be caused, to suffer severe pain and suffering, severe

emotional distress and harm, financial or economic loss, including, but not limited to, present

and future lost wages, and other damages.

94. Plaintiffs explicitly waive recovery of any penalty or minimum measure of

recovery created or imposed by N.Y. Gen. Bus. Law § 349(h).

95. Wherefore, Plaintiffs demand judgment against Defendants for compensatory and

punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as

the court deems proper.

## COUNT VII – RESPONDEAT SUPERIOR

96. Plaintiffs incorporate the previous paragraphs by reference as though fully set

forth herein.

97. At all relevant times, the individual Defendants were employees, agents, or

servants of the business entity Defendants.

98.    The business entity or corporate Defendants are responsible or vicariously liable for the negligence, acts, and omissions of their agents, employees, and servants based on the theory of respondeat superior.

99.    Plaintiffs allege that all Defendants had an agreement, engaged in a common undertaking, and acted in concert to bring about Plaintiffs' harm caused by the individual Defendants.

100.    As a direct and proximate result of the acts and omissions of Defendants as stated above, Plaintiffs were caused, or shall in the future be caused, to suffer severe pain and suffering, severe emotional distress and harm, financial or economic loss, including, but not limited to, present and future lost wages, and other damages.

101..    Wherefore, Plaintiffs demand judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the court deems proper.

## COUNT VIII -- PUNITIVE DAMAGES

102.    Plaintiffs incorporate the previous paragraphs by reference as though fully set forth herein.

103.    Plaintiffs are entitled to punitive damages because the Defendants' conduct was reckless and demonstrated willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

104.    Plaintiffs allege that all Defendants had an agreement, engaged in a common undertaking, and acted in concert to bring about Plaintiffs' harm caused by the willful

20

misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

105.    As a direct and proximate result of the acts and omissions of Defendants as stated above, Plaintiffs were caused, or shall in the future be caused, to suffer severe pain and suffering, severe emotional distress and harm, financial or economic loss, including, but not limited to, present and future lost wages, and other damages.

106.    Wherefore, Plaintiffs demand judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the court deems proper.

## COUNT IX – JOHN DOE DEFENDANTS

107.    Plaintiffs incorporate the previous paragraphs by reference as though fully set forth herein.

108.    Plaintiffs allege than an insufficient amount of time has passed within which to determine the identity of any other individuals or business entities that may be responsible for causing the injuries suffered by Plaintiffs.

109.    For the purposes of this Complaint, these individuals or business entities have been nominated as John Doe Corporations 1-10 and John Doe Individuals 1-10.

110.    Plaintiff, pursuant to the Rules of the Court for the State of New York reserves the right to amend the Complaint to add additional Defendants when and if their identities become known.

111.    Wherefore, Plaintiffs demand judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the court deems proper.

## COUNT X – JOINT AND SEVERAL LIABILITY

112.   Plaintiffs incorporate the previous paragraphs by reference as though fully set forth herein.

113.   Wherefore, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory and punitive damages; together with interest, costs of suit, attorneys' fees, and all such other relief as the court deems proper.

JURY TRIAL DEMANDED.

Yours, etc.,

BY:  Sanford A. Rubenstein, Esq.
RUBENSTEIN & RYNECKI
Attorneys for Plaintiffs
16 Court Street, Suite 1717
Brooklyn, New York  11241
(718) 522-1020

AND

MOTLEY RICE LLC
Attorneys for Plaintiff
28 Bridgeside Boulevard (29464)
Post Office Box 1792
Mount Pleasant, South Carolina 29465
Telephone:  (843) 216-9000
Facsimile:  (843) 216-9450
BY:  Ronald L. Motley, Esquire
Kevin R. Dean, Esquire
Kimberly D. Barone, Esquire

Dated: Brooklyn, New York
       March _11_, 2006

22

## ATTORNEY'S VERIFICATION

STATE OF NEW YORK )
COUNTY OF KINGS      )

   SANFORD A. RUBENSTEIN, being duly sworn, deposes and says:

   That deponent is the attorney for the plaintiffs in the action within; that deponent has read the foregoing Summons and Complaint and knows the contents thereof; that the same is true to deponent's knowledge based upon the file maintained by Rubenstein & Rynecki except as to the matters therein stated to be alleged upon information and belief, and as to those matters deponent believes it to be true and the reason that this verification is not made by plaintiff, Josephine Olivo and is made by deponent is that plaintiff Josephine Olivo is not presently in the county where the attorneys for the plaintiffs have their office.

   Deponent further says that the source of deponent's information and the grounds of deponent's belief as to all matter not stated upon deponent's knowledge are from investigations made on behalf of said plaintiffs.

Dated:  Brooklyn, New York
    March 16, 2006



             SANFORD A. RUBENSTEIN, ESQ.

JUN-08-2006  17:20                                              P.27

## INDIVIDUAL VERIFICATION

STATE OF NEW YORK  )
                   ) SS:
COUNTY OF KINGS    )

      Dainis Zeltins being duly sworn, deposes and says, that deponent is the

plaintiff in the within action; that deponent has read the foregoing COMPLAINT and

knows the contents hereof; that the same is true to deponent's own knowledge, except as

to the matters therein stated to be alleged upon information and belief, and that as to

those matters deponant believes them to be true.

                                      _____
                                        Dainis Zeltins

Sworn to before me this
17 day of March, 2006

_____
NOTARY PUBLIC

KATHERINE D. STEPHENSON
Commissioner of Deeds, City of NY
No. 2-11844
Qualified in Kings County
Commission Expires July 22, 06

JUN-08-2006  17:21                                                    P.28

======== NOTICE OF ENTRY ========

PLEASE take notice that the within is a (*certified*)
true copy of a
duly entered in the office of the clerk of the within
named court on

Dated,

Yours, etc.
**RUBENSTEIN & RYNECKI ESQS.**
*Attorneys for*

*Office and Post Office Address*
**16 COURT ST.**
**BROOKLYN, N.Y. 11241**

To

Attorney(s) for

======== NOTICE OF SETTLEMENT ========

PLEASE take notice that an order

of which the within is a true copy will be presented
for settlement to the Hon.

one of the judges of the within named Court, at,

on
at                      M.
Dated,

Yours, etc.
**RUBENSTEIN & RYNECKI ESQS.**
*Attorneys for*

*Office and Post Office Address*
**16 COURT ST.**
**BROOKLYN, N.Y. 11241**

To

Attorney(s) for

---

Index No.                          Year

SUPREME COURT OF THE STATE OF N
COUNTY OF KINGS

Danis Zeltins and Josephine Olive,
On Behalf of Themselves and All Other
Similarly Situated,
                                    Plaintiff(s),

          -against-

Biomedical Tissue Services, Ltd.; Mic
Mastromarino; Joseph Nicelli; Lee Cru
LMC Tissue Recovery Services; Christo
Aldorasi; MCM Tissue Recovery Service
Chris Aldorasi Funeral Service; Danie
& Son Funeral Home, Inc., Daniel Geor
Funeral Home of Brooklyn LLC; Daniel
English Brothers Funeral Home; James
~~Frank Hestrier; Frank Hestrier Funeral~~
~~Home Mortuary~~ Services, Inc.; Timothy
John Doe Corporations 1-10 and John D
individuals 1-10,
                                    Defendant(s)

*Print name beneath*

SUMMONS AND COMPLAINT
**RUBENSTEIN & RYNECKI ESQS.**
*Attorneys for*

*Office and Post Office Address, Telephone*
**16 COURT ST.**
**BROOKLYN, N.Y. 11241**
**(718) 522-1020**

To

Attorney(s) for

Service of a copy of the within
                              is hereby admitted.
Dated,

Attorney(s) for              :

1996 - BlumbergExcelsior Inc., NYC 10013

TOTAL P.28