# Exhibit S

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

------------------------------------------------------------X

Ronald Aberbach,

**VERIFIED COMPLAINT**

Index No.: 16150106

Plaintiff,

-against-

Biomedical Tissue Services, Ltd., Regeneration
Technologies, Inc., Spinal Graft Technologies, LLC,
Medtronic, Inc., Medtronic Sofamor Danek, Inc.,
Medtronic Sofamor Danek USA, Inc., Michael
Mastromarino, Lee Crucetta, Michael Aldorasi, Daniel
George and Son Funeral Home, Joseph Nicelli, English
Brothers Funeral Home, Inc.

Defendants.

------------------------------------------------------------X

Plaintiff Ronald Aberbach, through his attorneys, Bartels and Feureisen, LLP,

complaining of the defendants, alleges:

<u>NATURE OF THE ACTION</u>

1    Plaintiff Ronald Aberbach ("Aberbach") sues in tort, the culpable party

defendants described below who were responsible for plaintiff Aberbach receiving in a

May 2005 spinal fusion surgery – human tissue potentially contaminated with the HIV

virus, Hepatitis, Syphilis, and other viral infections.

2.    The named defendants each had separate and discrete roles in harvesting

the potentially contaminated human tissue and/or distributing it through the chain of

commerce until it was eventually, permanently, implanted into plaintiff Aberbach's

spinal column.

1

3.    The chain of events, as more fully described below, involves: (a) the illicit and improper removal of potentially contaminated human tissue by various funeral homes in conjunction with defendant Biomedical Tissue Services, Ltd. ("BTS) and its principal Michael Mastromarino ("Mastromarino") and his assistants/employees Lee Crucetta ("Crucetta") and Michael Adlorasi ("Aldorasi"); (b) the sale of this potentially contaminated human tissue by BTS to defendants Medtronic Inc. ("Medtronic") and its subsidiaries, including Spinal Graft Technologies, LLC ("SGT"); (c) the packaging of the potentially contaminated human tissue by defendant Regeneration Technologies, Inc. ("RTI") pursuant to a contractual relationship with Medtronic and its subsidiaries including SGT; and (d) sale of the potentially contaminated tissue by RTI to North Shore Long Island Hospital ("North Shore") where it was utilized in plaintiff Aberbach's fusion surgery.

## PARTIES

4.    Plaintiff Ronald Aberbach is and was at all relevant times herein stated a citizen and resident of the County of Westchester, State of New York.

5.    Defendant Biomedical Tissue Services, Ltd. ("BTS") is a New Jersey corporation, with its principal place of business located at 2125 Center Avenue, Suite 300, Fort Lee, New Jersey 07024. At all times relevant, defendant BTS was registered with the Food and Drug Administration ("FDA") as a tissue retrieval agency.

6.    At all times mentioned herein defendant BTS conducted business in the State of New York.

7    At all times mentioned herein defendant BTS conducted or regularly did/transacted business in the State of New York.

2

8.     At all times mentioned herein defendant BTS received substantial revenue from goods used or consumed, or services rendered, in the State of New York.

9.     As set forth in detail below, defendant BTS committed tortuous act[s] within the State of New York.

10.     Defendant Regeneration Technologies, Inc. ("RTI") is a Delaware corporation with its principal place of business located at 11621 Research Circle, Post Office Box 2650, Alachua, Florida 32615.   Defendant RTI purchases, processes, distributes, markets and resells processed allograft tissue, including tissue recovered by defendants BTS.   Defendant RTI is licensed by the FDA and is accredited by the American Association of Tissue Banks ("AATB").

11.     At all times mentioned herein defendant RTI conducted business in the State of New York.

12.     At all times mentioned herein defendant RTI conducted or regularly did/transacted business in the State of New York.

13.     At all times mentioned herein defendant RTI received substantial revenue from goods used or consumed, or services rendered, in the State of New York.

14.     As set forth in detail below, defendant RTI committed tortuous act[s] within the State of New York.

15.     Defendant SpinalGraft Technologies, LLC ("SGT") is a Tennessee corporation, and a subsidiary of Medtronic, Inc. with its principal place of business located at 4340 Swinnea Road, Suite 39, Memphis, Tennessee 38118.   SGT, at all times relevant, distributed and sold allograft tissue recovered by BTS and obtained through defendant RTI to physicians and hospitals across the United States.

3

16.    At all times mentioned herein defendant SGT conducted business in the State of New York.

17.    At all times mentioned herein defendant SGT conducted or regularly did/transacted business in the State of New York.

18.    At all times mentioned herein defendant SGT received substantial revenue from goods used or consumed, or services rendered, in the State of New York.

19.    As set forth in detail below, defendant SGT committed tortuous act[s] within the State of New York.

20.    Defendant Medtronic, Inc. ("Medtronic") is a Minnesota corporation with its world headquarters located at 710 Medtronic Parkway, Minneapolis, Minnesota 55432-5604.    Medtronic is a distribution partner of defendant Regeneration Technologies, Inc.'s allograft products throughout the United States, including tissue recovered by BTS.

21.    Defendant Medtronic Sofamor Danek, Inc. ("Medtronic Danek") is an Indiana corporation with its principal place of business located at 1800 Pyramid Place, Memphis, Tennessee 38132.  Medtronic Danek's products and services are geared toward advancing the field of spinal and cranial surgery.  Medtronic Danek is a subsidiary of Medtronic, Inc. which distributed and resold allograft tissue recovered by BTS.

22.    At all times mentioned herein defendant Medtronic Danek conducted business in the State of New York.

23.    At all times mentioned herein defendant Medtronic Danek conducted or regularly did/transacted business in the State of New York.

4

24.    At all times mentioned herein defendant Medtronic Danek received substantial revenue from goods used or consumed, or services rendered, in the State of New York.

25.    As set forth in detail below, defendant Medtronic Danek committed tortuous act[s] within the State of New York.

26.    Defendant Medtronic Sofamor Danek, USA, Inc. ("Medtronic Danek USA") is a Tennessee corporation with its principal place of business located at 1800 Pyramid Place, Memphis, Tennessee 38132. Medtronic Danek USA is a subsidiary of Medtronic, Inc. which distributed and resold allograft tissue recovered by BTS.

27.    At all times mentioned herein defendant Medtronic Danek USA conducted business in the State of New York.

28.    At all times mentioned herein defendant Medtronic Danek USA conducted or regularly did/transacted business in the State of New York.

29.    At all times mentioned herein defendant Medtronic Danek USA received substantial revenue from goods used or consumed, or services rendered, in the State of New York.

30.    As set forth in detail below, defendant Medtronic Danek USA committed tortuous act[s] within the State of New York.

31.    Defendant Michael Mastromarino ("Mastromarino") was at all material times an officer of BTS. On information and belief, defendant Mastromarino resides in New Jersey.

32.    On information and belief, defendant Lee Crucetta ("Crucetta") was at all material times an employee of BTS and resides in New Jersey.

5

33.    On information and belief, defendant Michael Aldorasi ("Aldorasi") was at all material times an employee of BTS and resides in New Jersey.

34.    On information and belief, defendant Daniel George & Son Funeral Home, LLC ("Daniel Funeral") is a limited liability company organized pursuant to the laws of the State of New York.

35.    On information and belief, defendant Joseph Nicelli ("Nicelli") was at all material times the principal owner and chief executive of defendant Daniel Funeral.

36.    On information and belief, defendant English Brothers Funeral Home, Inc. ("English Brothers") is a corporation organized pursuant to the laws of the State of New York and has its principal place of business in Brooklyn, New York.

37    Defendants John Does 1 – 10, said names being fictitious, are entities or persons involved in the distribution of human body parts.

## COMMON FACTUAL ALLEGATIONS

38.    An allograft is human tissue that is recovered from cadavers and (normally) processed before being transplanted into another (usually living) person.

39.    The most common type of allograft is bone, though tendons, skin, heart valves and corneas are other common types of human tissue allografts.

40.    As with any surgical procedure, the implantation of human tissue allografts may be associated with complications, including infections at the surgical site. Although rare, some of these infections are associated with bacterial contamination of the implanted allografts, a complication that can result in serious morbidity and death.

41.    Upon information and belief, prior to May 2005, defendants BTS and Mastromarino entered into an illicitly – designed and organized commercial enterprise

6

with various funeral homes to harvest and extract from corpses, various human bone, skin, tendons, and other human tissue.

42. Upon information and belief, the various human bone, skin, tendons, and other human tissue illicitly extracted by defendant BTS was never properly screened, tested, processed, or evaluated for certain infections diseases such as HIV, hepatitis, syphilis, and other viral infections.

43. Under federal rules and regulations, defendant BTS was under a duty and legal obligation to screen such extracted human bone, skin, tendons, and other human tissue for such infectious diseases and to insure said extractions met federal regulatory donor eligibility requirements.

44. With full knowledge of such federal rules and regulations, defendants BTS, RTI, SGT, Medtronic, Medtronic Danek, Medtronic Danek USA proceeded to distribute, sell, and supply such extracted human bone, skin, tendons, and other human tissue to tissue processors throughout the United States.

45. Upon information and belief, defendants BTS, RTI, SGT, Medtronic, Medtronic Danek, Medtronic Danek USA proceeded to distribute, sell, and supply such extracted human bone, skin, tendons, and other human tissue to various tissue processors from early 2003 through 2005.

46. Clinical studies indicate that the risk for transmission infection from an organ of an HIV-infected donor is nearly 100%. Fresh-frozen, unprocessed bone also appears to carry a high risk to transmission, particularly if marrow elements and adherent tissue are not removed.

7

47.    Upon information and belief, prior to May 2005, defendants BTS, RTI, SGT, Medtronic, Medtronic Danek, Medtronic Danek USA distributed, sold and supplied extracted human bone, skin, tendons, and other human tissue to RTI and that such extracted materials were never properly screened or tested for infectious diseases as required by the FDA.

48.    Upon information and belief, prior to May 2005, defendants BTS, RTI, SGT, Medtronic, Medtronic Danek, Medtronic Danek USA upon receipt of said human bone, skin, tendons and other human tissue from defendants BTS, RTI, SGT, Medtronic, Medtronic Danek, Medtronic Danek USA  then processed said extractions for purposes of medical grafts, allografts, bone implants, bone paste, dental implants, orthopedic and other medical surgical reconstructive procedures.

49.    Prior to May 2005 and upon information and belief, BTS, RTI, SGT, Medtronic, Medtronic Danek, Medtronic Danek USA failed to properly screen, test, process, or evaluate such extractions for certain infectious diseases such as HIV, hepatitis, syphilis, and other viral infections.

50.    Despite this and upon information and belief, defendants BTS, RTI, SGT, Medtronic, Medtronic Danek, Medtronic Danek USA continued to process said extractions received from defendants BTS, RTI, SGT, Medtronic, Medtronic Danek, Medtronic Danek USA including but not limited to human bone, for the purpose of creating allograft which was later sent to various health care providers, including plaintiff's health care provider.

51.    On October 26, 2005 the Federal Food and Drug Administration ("FDA") commenced an investigation into human tissue recovered by defendant BTS and sent to

tissue processors such as, RTI, SGT, Medtronic, Medtronic Danek, Medtronic Danek USA. As the FDA stated, "because of the potential lack of proper screening of the tissue donors, some recipients of the tissues may be at increased risk of infections that could potentially be transmitted through tissues".

52.    As a result of the FDA's investigation, defendants RTI, SGT, Medtronic, Medtronic Danek, Medtronic Danek USA were required to recall all unused tissue remaining in inventory and to promptly notify implanting physicians, including plaintiff's physician, of the risk of infectious disease among patients that may have received such products.

53.    The FDA found BTS's actions constituted serious deficiencies in the operations of BTS and serious non-compliance with my regulations under 21 CFR Part 1271, designed to protect against the risk of communicable disease transmission, including but not limited to:

a.    The failure to create and maintain accurate records;

b.    The failure to implement standard operating procedures for all steps in determining donor eligibility;

c.    The failure to recover HCT/Ps in a manner that does not cause contamination or cross-contamination during recovery; and

d.    The failure to adequately control environmental conditions.

54    The nature of these violations was so serious and widespread that the FDA deemed it to be a danger to public health, prompting the FDA's unprecedented action of issuing its order to BTS to cease and desist operations.

9

55.    Defendant BTS, at all times relevant, independently and in conjunction with others, acted in violation of internal standard operating procedures, industry standards and 21 CFR Part 1271.

56.    Defendant RTI maintained its own standard operating procedures put in place for patient safety, based upon industry standards, and state and federal regulations. Defendant RTI's standards required it to:

Screen for patient safety by conducting medical/social history evaluations for every donor, including a family/next of kin interview; medical record evaluation/hospital record review, behavioral/lifestyle risk assessment; medical examiner/coroner's report (autopsy report, when available); and laboratory, pathology and radiology reports. RTIs medical director, a licensed physician, was required to approve each done record;

Conduct an exhaustive panel of serological and microbiological testing under stringent criteria in order to release the donor tissue to the processing stage;

Process the tissue through a sterilizing process before being packaged;

57.    In placing its allograft tissue products into the stream of commerce, defendant RTI expressly and impliedly represented that its production met all requirements of its standards of procedure, AATB certification and federal regulations.

58.    Defendant RTI, at all times relevant, independently and in conjunction with others, acted in violation of its standard operating procedures, industry standards, AATB guidelines and 21 CFR Part 1271.

59.    In conjunction with its public health crisis, the FDA ordered a recall of products produced by tissue processors which were customers of BTS, including defendants RTI, SGT, Medtronic, Medtronic Danek, and Medtronic Danek USA.

60.     The FDA and the Center for Disease Control (CDC) thereafter made recommendations that recipients of the BTS tissue undergo appropriate infectious disease testing , including but not limited to screening for HIV-1 and 2; Hepatitis B, Hepatitis C, and syphilis.

61.     Defendants BTS, Mastromarino, Crucetta, Aldorasi, English Funeral, Daniel Funeral and Nicelli are now the subject of a 122-count criminal indictment in the New York Supreme Court for Kings County for their roles in an alleged criminal enterprise, which indictment was handed down on or about February 23, 2006 after an investigation stemming back to at least 2004.    The indictment alleges, inter alia, enterprise corruption, body stealing, opening graves, unlawful dissection of a human body, forgery, falsifying business records, grand larceny and reckless endangerment. BTS's operations were suspended by the FDA on or about February 3, 2006.

### FACTUAL ALLEGATIONS REGARDING PLAINTIFF

62.     On May 19, 2005 plaintiff underwent a surgical procedure in his neck and spine to remedy disc-related problems and severe neck pain. The plaintiff's surgery was performed by Sebastian Lattuga, MD at Long Island Jewish Hospital Medical Center – Franklin Division. The surgical procedure consisted of fusing various rods and discs to plaintiff's spine and included the use of bone and bone paste to adhere such spinal hardware to his spine and facilitate bone growth.

63.     Plaintiff's physician on May 19, 2005 utilized, employed, and incorporated extracted bone and bone paste and other tissues distributed in the chain of commerce by defendants English, Daniel Brothers, BTS, RTI, SGT, Medtronic, Medtronic Danek, and Medtronic Danek USA.

11

64.     By letter dated December 8, 2005, plaintiff Aberbach was notified that federal authorities were advising hospitals and physicians who had purchased human tissue from defendant RTI to receive testing for HIV-1, HIV-2, Syphilis and Hepatitis.

65.     In December 2005 plaintiff was contacted by his surgeon Dr. Lattuga and North Shore Hospital, and informed that the FDA had issued a recall to one of the products utilized in his May 19, 2005 spinal surgery.   Upon his physicians request, plaintiff was required to meet with him to discuss the recall.

66.     Plaintiff's surgeon later confirmed that he had been the recipient of potentially contaminated processed human tissue and bone paste distributed, supplied, and provided by defendants.

67     Plaintiff Aberbach was required to undergo additional testing for infectious diseases such as HIV, hepatitis, syphilis, and other viral infections.   Plaintiff will still require additional testing, monitoring, and medical treatment as a result of defendant's wrongful conduct.

68.     As a result of defendant's wrongful conduct, plaintiff Aberbach has suffered severe emotional distress and physical harm.

## AS AND FOR A FIRST CAUSE OF ACTION
### (BATTERY)

69.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1-48 as if fully set forth herein.

70.     Defendants intentionally, willfully, recklessly, and negligently put plaintiff Aberbach in reasonable fear of a harmful or offensive contact with his body and the defendants intended to cause a harmful or offensive contact with the plaintiff Aberbach

12

which directly and/or indirectly resulted in a harmful and offensive contact with his body as set forth under applicable New York law, and the Restatement (Second) of Torts.

71.     Plaintiff Aberbach has in the past been required and may in the future continue to be required to submit to intrusive medical examinations, he sustained other injuries to his internal system, he sustained other psychological injuries, the full extent of which have yet to be determined, he has in the past required and may in the future continue to require medicines, medical care and treatment, he has in the past and may in the future continue to be compelled to extend monies and incur obligations for such medical care and treatment, he has in the past suffered and may in the future continue to be disabled from performing his usual duties, occupations and avocations, all to his great detriment and loss, and he has suffered a breach of his right to essential human dignity as a result of the failure of defendants to conduct such tissue extracting and distributing procedures in accordance with standards governing the proper standard of care.

72.     As a direct and proximate result of defendants' actions, as set forth above, plaintiff has in the past been and may in the future continue to be compelled to expend monies and incur obligations for her medical care and treatment; plaintiff has also incurred and may hereafter continue to incur other financial expenses or losses which do or may exceed amounts which plaintiff may otherwise be entitled to recover.

73.     Plaintiff Aberbach has sustained and makes claims for pain and suffering, loss of physical function, permanent physical, mental, dignitary and psychological injuries, humiliation and embarrassment, loss of life's pleasures, loss of earning capacity, and any and all damages to which he is or may be entitled under the law of New York.

<u>AS AND FOR A SECOND CAUSE OF ACTION</u>
(NEGLIGENCE)

13

Negligence on the Part of the Defendants English Brothers Funeral Home Inc.,
Daniel George & Son Funeral Home, LLC, John Does – 10 and Nicelli

74.    Plaintiff repeats and realleges the allegations of paragraphs 1–53 as if fully set forth herein.

75.    Defendants English Brothers, Daniel Funeral and Nicelli directly and/or indirectly, individually and collectively, negligently and illegally harvested human cadaver/donor tissue for transplantation.

76.    At all times material hereto, defendants Daniel Funeral, English Brothers, and Nicelli had a duty to plaintiff Aberbach to exercise reasonable care in the harvesting, sanitation of the human tissue which would be sold to BTS and transplanted to him and other surgical patients.

77    These named defendants breached that duty and were therefore negligent in their actions, misrepresentations and omission toward plaintiff Aberbach in the following ways, inter alia: (a) causing, allowing and permitting bodies, skeletons, skin, tissue and bones to be removed without the authorization and/or consent of the diseased donors families; (b) causing allowing and permitting the unauthorized removal of body parts, tissue and/or bones; (c) failing to impose safeguards established by Federal, State and Local laws to prevent the unauthorized removal of human tissue from cadavers entrusted to defendants.

78.    Accordingly, defendants Daniel Funeral, English Brothers and Nicelli are liable to plaintiff Aberbach for their negligence.

79.    No acts of negligence on the part of the plaintiff Aberbach contributed to this occurrence.

14

80      As a result of their negligence, plaintiff Aberbach has sustained damages in a sum which exceeds the jurisdictional limits of all lower courts.

**AS AND FOR A THIRD CAUSE OF ACTION**
**(NEGLIGENCE)**

Negligence on the Part of Defendants BTS and Mastromarino, Crucetta and Aldorasi

81.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1-60 as if fully set forth herein.

82.     Defendants BTS and Mastromarino, Crucetta and Aldorasi directly and/or indirectly, individually and collectively had a duty to create, manufacture, assemble, designate, test, label, supply, sterilize, package, distribute, promote, market, advertise, warrant and/or sell in the State of New York, human cadaver/donor tissue for transplantation in accordance with applicable Federal and State law.

83.     At all times material hereto, these named defendants breached their duty to plaintiff Aberbach to exercise reasonable care in the harvesting, sanitation, sterilization, creation, manufacture, assembly, design, testing, labeling, supplying, packaging, distribution, promotion, marketing, advertising, warning and/or sale of the human cadaver/donor tissue for transplantation. Defendants BTS, Mastromarino, Crucetta and Aldorasi: a) failed to screen donors; b) failed to take a comprehensive medical and social history of donors including cause of death; c) failed to conduct sampling of the human cadaver tissue; d) failed to conduct DNA analysis; e) failed to conduct Polymerase Chain Reaction and HIV antibody testing; f) failed to conduct a review of donor suitability records before releasing the human cadaver tissue; g) failed to conduct serological testing for infectious disease on all donor tissue prior to distribution of the tissue by an approved

15

laboratory; h) failed to adhere to the guidelines of the Uniform Anatomical Gift Act and the American Association of Tissue Banks; and i) engaged in widespread forgery of documents..

84.     Plaintiff Aberbach was a foreseeable surgical patient who would be the recipient of the potentially contaminated human tissue.

85.     Accordingly, defendants BTS, Mastromarino, Crucetta and Aldorasi are liable to plaintiff Aberbach for their negligence.

86.     No acts of negligence on the part of the plaintiff Aberbach contributed to this occurrence.

87.     As a result of their negligence, plaintiff Aberbach has sustained damages in a sum which exceeds the jurisdictional limits of all lower courts.

### AS AND FOR A FOURTH CAUSE OF ACTION
### (NEGLIGENCE)

Negligence on the Part of SGT, RTI, Medtronic, Medtronic Danek, Medtronic Danek USA

88.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-67 as if fully set forth herein.

89.     Defendants SGT, RTI, Medtronic, Medtronic Danek and Medtronic Danek USA had a duty to assure that it purchased human allograft tissue from a legitimate source -- an entity which is an accredited member of the AATB – and which complies with existing Federal and State laws.

90.     Defendant's SGT, RTI and Medtronic breached their duty by purchasing tissue from an illegitimate source to wit, defendant BTS.

16

91.    Defendants SGT, RTI, Medtronic, Medtronic Danek and Medtronic Danek USA had a duty to conduct stringent blood tests; review medical records, histories and coroner analysis reports, conduct lifestyle screening to determine donor behavior and lifestyle risks; and to interview donor's next of kin and/or other family members to confirm the overall health, lifestyle, and consent of the donor.

92.    Defendants SGT, RTI, Medtronic, Medtronic Danek and Medtronic Danek USA breached their duty to inter alia conduct blood testing, review medical records, conduct screenings and investigate donors of human tissue - and were therefore negligent in their actions, misrepresentations and omission toward plaintiff Aberbach.

93.    Accordingly, defendants SGT, RTI and Medtronics are liable to plaintiff Aberbach for their negligence.

94.    No acts of negligence on the part of plaintiff Aberbach contributed to this occurrence.

95.    As a result of these named defendants negligence, plaintiff Aberbach has sustained damages in a sum which exceeds the jurisdictional limits of all lower courts.

<u>AS AND FOR A FIFTH CAUSE OF ACTION</u>
(RECKLESS INFLICTION OF EMOTIONAL DISTRESS)

<u>Reckless Infliction of Emotional Distress on the Part of Defendants BTS and Mastomarino, Crucetta and Aldorasi</u>

96.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1-75 as if fully set forth herein.

97.    Defendants BTS, Mastomarino, Crucetta and Aldorasi, displayed extreme and outrageous conduct by failing to extract, handle, test and examine the human tissue which defendant BTS sold in the manner required by both the FDA and applicable New

17

York Health and Criminal laws. By doing so, they acted in a deliberate disregard of a high probability that emotional distress would result from plaintiff Aberbach learning that the human tissue he received was not harvested and tested under the proper guidelines and that as a result he could be at substantial risk of contracting AIDS, Hepatitis, Syphilis and other serious diseases.

98.    As a direct result of defendants BTS, Mastromarino, Crucetta and Aldorasi's outrageous conduct, plaintiff has sustained damages in a sum which exceeds the jurisdictional limits of all lower courts.

### AS AND FOR A SIXTH CAUSE OF ACTION
### (RECKLESS INFLICTION OF EMOTIONAL DISTRESS)

Reckless Infliction of Emotional Distress on the Part of Defendants Daniel Funeral Home, English Brothers, Nicelli and John Does 1-10

99.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1-78 as if fully set forth herein.

100.    Defendants Daniel Funeral Home, English Brothers, Nicelli and John Does 1-10 exhibited extreme and outrageous conduct by inter alia forging documents in order to substantiate legal authorization to harvest human tissue, improperly removing human tissue and body parts without the authorization or consent of the decedents families, failing to implement proper safeguards to prevent this outrageous conduct. By doing so, they acted in a deliberate disregard of a high probability that plaintiff Aberbach would suffer emotional distress upon learning that the tissue he received was not harvested and tested under the proper guidelines and that as a result he could be at substantial risk of contracting AIDS, Hepatitis, Syphilis, and other serious diseases.

18

101.    By reason of the above named defendants extreme and outrageous conduct, plaintiff Aberbach has sustained damages in a sum which exceeds the jurisdictional limits of all lower courts.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)

Negligent Infliction of Emotional Harm on the Part of Defendants BTS and Mastromarino, Crucetta and Aldorasi

102.    Plaintiff repeats and realleges each and every allegation in paragraphs 1-81 as if fully set forth herein.

103.    Plaintiff Aberbach suffered sever emotional distress, which was the direct and proximate result of defendants BTS, Mastromarino, Crucetta and Aldorasi's negligent conduct described in detail above in harvesting, extracting, processing, testing developing, inspecting, producing, packaging, labeling, advertising, marketing, promoting, distributing, and/or selling various human tissue related products and/or services. The defendant's negligent conduct put plaintiff Aberbach at substantial risk of contracting AIDS, Hepatitis, Syphilis and other serious diseases.

## AS AND FOR A EIGHTH CAUSE OF ACTION
### (NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)

Negligent Infliction of Emotional Harm on the Part of Defendants Daniel Funeral Home, English Brothers, Nicelli and John Does 1-10

104.    Plaintiff repeats and realleges each and every allegation of paragraphs 1-83 as if fully set forth herein.

105    Plaintiff Aberbach suffered severe emotional distress, which was the direct and proximate result of defendants Daniel Funeral Home, English Brothers, Nicelli and John Does 1-10 negligent conduct forging documents in order to substantiate legal

authorization to harvest proper tissue, improperly removing human tissue and body parts without the authorization or consent of the decedents families – and failing to implement proper safeguards to prevent this outrageous conduct. The defendant's negligent conduct put plaintiff Aberbach at substantial risk of contracting AIDS, Hepatitis, Syphilis, and other serious diseases.

AS AND FOR A NINTH CAUSE OF ACTION
(NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)

Negligent Infliction of Emotional Harm on the Part of SGT, RTI, Medtronic, Medtronic Danek, Medtronic Danek USA

106.    Plaintiff repeats and realleges each and every allegation of paragraphs 1-85 as if fully set forth herein.

107.    Defendants SGT, RTI, Medtronic, Medtronic Danek, Medtronic Danek USA were negligent in choosing defendant BTS to receive potentially contaminated human tissue from the defendant BTS since defendant BTS was not an accredited member of the AATB and failed to comply with all Federal and State requirements as detailed above. Defendant SGT, RTI, Medtronic, Medtronic Danek, Medtronic Danek USA were also negligent in continuing to receive human tissue from defendant BTS in light of defendant Mastromarino's background including loss of his medical license and BTS' criminal investigation.

108.    Plaintiff Aberbach suffered severe emotional distress, which was the direct and proximate result of defendants SGT, RTI, Medtronic, Medtronic Danek, Medronic Danek USA's negligent conduct in inter alia failing to assess the source of the human tissue, and failing to test for relevant communicable diseases in accordance with the applicable Federal and State standards.

20

## AS AND FOR A TENTH CAUSE OF ACTION
### (BREACH OF EXPRESS WARRANTY)

**Breach of Express Warranties on the Part of Defendant BTS and Mastromarino, Crucetta and Aldorasi**

109.    Plaintiff repeats and realleges each and every allegation of paragraphs 1-88 as if fully set forth herein.

110.    At all times herein mentioned, defendants BTS, Mastromarino, Crucetta and Aldorasi expressly warranted to plaintiff Aberbach, by and through statements made by defendants BTS, and Mastromarino both orally and in publications, inserts and other written materials intended for physicians, medical patients and the general public that the human tissue/allograft product was properly tested, screened, safe, effective, fit and proper for its intended use.

111.    In utilizing the aforementioned allograft tissue, plaintiff Aberbach relied on the skill, judgment, representations and foregoing express warranties of defendants BTS, Mastromarino, Crucetta and Aldorasi.    However, these warranties and representations were false in that the human tissue was not safe and was unfit for the use for which it was intended.

112.    As a result of the foregoing breach of express warranties by defendants BTS, Mastromarino, Crucetta and Aldorasi, plaintiff Aberbach has suffered damages in a sum which exceed the jurisdictional limits of all lower courts.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION
### (BREACH OF EXPRESS WARRANTY)

**Breach of Express Warranties by Defendant SGT, RTI, Medtronic, Medtronic Danek, Medtronic Danek USA**

113.    Plaintiff repeats and realleges each and every allegations of paragraph 1-92 as is fully set forth herein.

114.    In placing its allograft tissue products into the stream of commerce, defendants SGT, RTI, Medtronic, Medtronic Danek, Medtronic Danek USA expressly and impliedly represented that its production met all Federal and State requirements and had AATB certification.

115.    In receiving the implantation of allograft tissue, plaintiff Aberbach relied on the skill, judgment, representations and foregoing express warranties of defendants SGT, RTI, Medtronic, Medtronic Danek, Medtronic Danek USA.  However, these said warranties and representations were false in that the aforementioned product was not safe and was unfit for the use for which it was intended.

116.    As a result of the breach of express warranties on the part of the named defendants, plaintiff Aberbach has sustained damages in a sum which exceeds the jurisdictional limits of all lower courts.

## AS AND FOR A TWELFTH CAUSE OF ACTION
### (BREACH OF IMPLIED WARRANTY)

Breach of Implied Warranty on the Part of BTS, Mastromarino, Crucetta and Aldorasi

117.    Plaintiff repeats and realleges each and every allegations of paragraph 1-96 as is fully set forth herein.

118.    Prior to the time of the implantation of the allograft tissue, defendants BTS, Mastromarino, Crucetta and Aldorasi implicitly warranted to plaintiff Aberbach, and to his agents and physicians, that the human tissue was of merchantable quality, safe and fit for the use for which it was intended.

22

119. As a result of defendants BTS, Mastromarino, Crucetta and Aldorasi implied warranties, plaintiff Aberbach reasonably relied on the skill, judgment and implied warranty of defendant BTS in accepting the human tissue.

120. The allograft tissue that is the subject of this litigation was neither safe for its intended use, nor of merchantable quality, as warranted by defendants BTS, Mastromarino, Crucetta and Aldorasi.

121. As a result of the aforementioned breach of implied warranties by defendants BTS, Mastromarino, Crucetta and Aldorasi plaintiff Aberbach has suffered injuries and damages as alleged herein.

122. The breach of these named defendants implicit warranty was the proximate cause of plaintiff Aberbach's injury.

## AS AND FOR A THIRTEENTH CAUSE OF ACTION
### (BREACH OF IMPLIED WARRANTY)

Breach of Implied Warranty on the Part of Defendant SGT, RTI, Medtronic, Medtronic Danek, Medtronic Danek USA

123. Plaintiff repeats and realleges each and every allegation of paragraph 1-102 as is fully set forth herein.

124. Defendants SGT, RTI, Medtronic, Medtronic Danek, Medtronic Danek USA by placing the human tissue into the stream of commerce, implicitly warranted that the human tissue which would be implanted into plaintiff Aberbach's body was safe, had been tested and was free and clear of all infectious diseases. Plaintiff Aberbach relied on this implicit warranty by defendants SGT, RTI, Medtronic, Medtronic Danek, Medtronic Danek USA in selling the human tissue to North Shore for implantation into plaintiff Aberbach.

23

125. Defendant SGT, Medtronic, Medtronic Danek, Medtronic Danek USA impliedly warranted to defendant RTI that the human tissue they were providing to defendant RTI to package and process for sale to North Shore Hospital was of high quality and had been tested and screened with the applicable health regulations previously mentioned.

126. As a result of defendants SGT, RTI, Medtronic, Medtronic Danek, Medtronic Danek USA's breach of implied warranty to plaintiff Aberbach, he sustained damages in a sum which exceeded the jurisdictional limits of all lower courts.

## AS AND FOR A FOURTEENTH CAUSE OF ACTION
### (STRICT PRODUCTS LIABILITY)

### All Named Defendants

127. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1-106 as if fully set forth herein.

128. Defendants, manufactures and/or distributors, sellers and suppliers of human tissue are strictly liable to plaintiff Aberbach for defects in the human tissue, which defects caused plaintiff to suffer emotional upset, bodily injury and economic loss.

129. The human tissue was not reasonably fit, suitable or safe for its intended purpose as the human tissue was from donors who were not screened and as the human tissue was not properly tested and as the use of human tissue exposed users thereof to a risk of contracting an infectious disease.

130. Defendants failed to comply with the Federal and State screening process and the allograft tissue harvested, manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by defendants were defective, deviated from the

24

product specifications, failed to comply with the industry standards and with federal requirements and posed a serious risk of injury and death.

131.   As a direct and proximate result of the surgical implantation of the defective allograft human tissue that was supplied and introduced into the stream of commerce by defendants, plaintiff Aberbach suffered harm, damages and economic loss and will continue to suffer harm, damages and economic loss in the future.

132.   The foreseeable risks associated with the design or formulation of the allograft tissue included, but are not limited to, the fact that the design or formulation is more dangerous than a reasonably prudent customer - i.e. a surgical patient - would expect when used in an intended or reasonably foreseeable manner.

133.   As a direct and proximate result of the surgical implantation of the defective allografts that were manufactured, designed, supplied and introduced into the stream of commerce by defendants, plaintiff Aberbach suffered harm, damages and economic loss and will continue to suffer harm, damages and economic loss in the future.

134.   Defendants failed to comply with the screening process, and the allograft human tissue harvested, manufactured, designed, sold, distributed, supplied and/or placed in the scream or commerce by defendants were defective in their manufacture and construction, deviated from the product specifications, failed to comply with industry standards, failed to comply with the federal requirements and posed a serious risk of injury and death.

135.   The foreseeable risks associated with the design or formulation of the allograft tissue include, but are not limited to, the fact that the design or formulation is more dangerous than a reasonably prudent consumer i.e. a surgical patient would expect

25

when used in an intended or reasonably foreseeable manner. Accordingly, defendants failed to warn of any dangers from the foreseeable use of defendant's product.

136. As a direct and proximate result of the surgical implantation of the defective allografts that were manufactured, designed, supplied and introduced into the stream of commerce by defendants, plaintiff Aberbach suffered harm, damages and economic loss and will continue to suffer harm, damages and economic loss in the future.

## AS AND FOR A FIFTEENTH CAUSE OF ACTION
### (PUNITIVE DAMAGES)

### All Named Defendants

137. Plaintiff repeats and realleges each and every allegation as set forth in paragraphs 1-116 as if fully set forth herein.

138. Defendants actions as set forth above were intentional, wanton, willful and outrageous. Defendants were grossly negligent, and acted with reckless disregard of and with deliberate, callous and reckless indifference to the rights, interests, welfare and safety of plaintiff Aberbach.

139. Defendants intentional, wanton, willful and outrageous actions consisted of, but not limited to:

a.    intentionally failing to conform the Federal and State regulatory and statutory guidelines related to the extracting, processing, distributing, testing and safety of human tissue and human tissue related products and/or services, including but not limited to reviewing donor's medical history and other factors, physically assessing the donor and source of tissue, and testing for relevant communicable diseases.

b.    intentionally failing to disclose that various human tissue was subject to an increased risk of infectious disease and other harms.

26

140.   By reason of the wanton, willful and outrageous conduct of defendants, as aforesaid, plaintiff Aberbach was caused to sustain said physical and emotional injuries and harms.

141.   By reason of the wanton, willful and outrageous conduct of defendants, defendants are liable for punitive damages and relief pursuant to applicable New York law and Section 908(1) of the Restatement of Torts.

## CONCLUSION

WHEREFORE, based upon all of the foregoing, plaintiff Ronald Aberbach, demands judgment against the defendants as follows:

1.     On plaintiff's First Cause of Action (Battery) as against all defendants awarding damages in an amount which has not been fully ascertained but which exceeds the jurisdictional limits of all lower courts;

2.     On plaintiff's Second Cause of Action (Negligence) as against defendants English Brothers Funeral Home, Inc., Daniel George & Son Funeral Home, and Joseph Nicelli, awarding damages in an amount which exceeds the jurisdictional limits of all lower courts;

3.     On plaintiff's Third Cause of Action (Negligence) as against defendants Biomedical Tissue Services, Ltd., Michael Mastromarino, Lee Crucetta and Michael Aldorasi awarding damages in an amount which exceeds the jurisdictional limits of all lower courts;

4.     On plaintiff's Fourth Cause of Action (Negligence) as against defendants Spinal Graft Technologies, LLC, Regeneration Technologies, Inc., Medtronic Inc.,

Medtronic Sofamar Danek, Inc., Medtronic Danek USA awarding damages in an amount which exceeds the jurisdictional limits of all lower courts;

5.    On plaintiff's Fifth Cause of Action (Reckless Infliction of Emotional Distress) as against defendants BTS, Mastromarino, Crucetta, Aldorasi, awarding damages in an amount which has not yet been fully ascertained but which exceeds the jurisdictional limits of all lower courts;

6.    On plaintiff's Sixth Cause of Action (Reckless Infliction of Emotional Distress) as against defendants Daniel Funeral, English Brothers, Nicelli awarding damages in an amount which has not yet been fully ascertained but which exceeds the jurisdictional limits of all lower courts;

7.    On plaintiff's Seventh Cause of Action (Negligent Infliction of Emotional Distress) as against defendants BTS, Michael Mastromarino, Lee Crucetta, Michael Aldorasi, awarding damages in an amount which has not yet been fully ascertained but which exceeds the jurisdictional limits of all lower courts;

8.    On plaintiff's Eighth Cause of Action (Negligent Infliction of Emotional Distress) as against defendants Daniel George & Son Funeral Home, English Brothers Funeral Home, Joesph Nicelli, awards damages in an amount which has not yet been fully ascertained but which exceeds the jurisdictional limits of all lower courts;

9.    On plaintiff's Ninth Cause of Action (Negligent Infliction of Emotional Distress) as against defendants SGT, RTI, Medtronic, Medtronic Danek, Medtronic Danek USA, awarding damages in an amount which has not yet been fully ascertained but which exceeds the jurisdictional limits of all lower courts;

28