# Exhibit 5

May 21 03 02:31p     NETWORK ADJUSTER             7205299345            p.2

Specialty National Insurance Company

Home Office:
One Kemper Drive
Long Grove, IL 60049

Administrative Office:
7501 E. McCormick Parkway, 200 North
Scottsdale, AZ 85258



A KEMPER COMPANY

## COMMON POLICY DECLARATIONS

Policy No.       3XZ17069401
Replacement No.  3XZ17069400

**NAMED INSURED AND MAILING ADDRESS:**
ENGLISH BROTHERS FUNERAL HOME INC.

2201 AVENUE Z
BROOKLYN NY 11235

**AGENT NAME AND ADDRESS:**
THE WHITMORE GROUP LTD.
370 OLD COUNTRY ROAD, SUITE 200
GARDEN CITY NY 11530-9004

AGENT NO.:  430156

**POLICY PERIOD:**  From   08/01/2002   To   08/01/2003
at 12:01 a.m. Standard Time at your mailing address shown above.

**BUSINESS DESCRIPTION:**   FUNERAL HOME

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide insurance as stated in this policy.

This policy consists of the following coverage parts for which a premium is indicated. This premium may be subject adjustment.

|  | PREMIUM |
|---|---|
| Commercial Auto Coverage Part | $ NOT COVERED |
| Commercial Crime Coverage Part | $ NOT COVERED |
| Commercial General Liability Coverage Part | $ NOT COVERED |
| Commercial Inland Marine Coverage Part | $ NOT COVERED |
| Commercial Property Coverage Part | $ NOT COVERED |
| Businessowners Policy | $ 2,931.00 |
|  | $ |
|  | $ |
|  | $ |
| TOTAL PREMIUM | $ 2,931.00 |
| TAX | 17.56 |
| TOTAL | 2,948.56 |

**FORMS APPLICABLE TO ALL COVERAGE PARTS:**
See Attached Schedule Of Forms And Endorsements.

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE P/
DECLARATIONS, COVERAGE PART COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, ISSU
TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

COUNTERSIGNED  _09/26/2002_           by  _____
                    DATE                        AUTHORIZED REPRESENTATIVE

ZC 25202a (7/00)     Includes copyrighted material of Insurance Services Office., with its permission.
                     Copyright, Insurance Services Office, Inc., 1998
                     Claim Copy

# DEATH CARE SERVICES
## BUSINESSOWNERS SUPPLEMENTAL DECLARATIONS

These Supplemental Declarations form a part of policy number  3XZ17069401

**FORM OF BUSINESS**
☐ Individual  ☐ Partnership  ☐ Joint Venture  ☐ Limited Liability Company
☒ Organization, including a Corporation (but not including a Partnership, Joint Venture, or Limited Liability Company)

**DESCRIBED PREMISES**

| Prem.# | Bldg.# | Location |
|--------|--------|----------|
| 1 | 1 | 2201 AVENUE Z BROOKLYN NY 11235 |
|   |   |   |
|   |   |   |

| Prem.# | Bldg.# | Mortgageholder Name and Address |
|--------|--------|-------------------------------|
|   |   |   |
|   |   |   |

**PROPERTY COVERAGE**   ☐ Standard Form   ☒ Special Form

**LIMITS OF INSURANCE**

| | Prem. No. 1 | Bldg. No. 1 | Prem. No. | Bldg. No. | Prem. No. | Bldg. No. | Prem. No. | Bldg. No. |
|---|---|---|---|---|---|---|---|---|
| **BUILDINGS** | $ N/A | | $ | | $ | | $ | |
| Actual Cash Value – Buildings Option (Y/N) | N | | | | | | | |
| Automatic Increase – Building Limit | % | | % | | % | | % | |
| **BUSINESS PERSONAL PROPERTY** | $ 117,360 | | $ | | $ | | $ | |
| Equipment Breakdown | 117,360 | | | | | | | |
| **BUSINESS INCOME/EXTRA EXPENSE** | $ 396,000 | | $ | | $ | | $ | |
| | Prem. No. | Bldg. No. | Prem. No. | Bldg. No. | Prem. No. | Bldg. No. | Prem. No. | Bldg. No. |
| | | | | | | | | |
| **BUILDINGS** | $ | | $ | | $ | | $ | |
| Actual Cash Value – Buildings Option (Y/N) | | | | | | | | |
| Automatic Increase – Building Limit | % | | % | | % | | % | |
| **BUSINESS PERSONAL PROPERTY** | $ | | $ | | $ | | $ | |
| Equipment Breakdown | | | | | | | | |
| **BUSINESS INCOME/EXTRA EXPENSE** | $ | | $ | | $ | | $ | |

**PROPERTY COVERAGE DEDUCTIBLE**

The Deductible is: $ 500        Exceptions:
The Optional Coverage/Exterior Building Glass Deductible is:  $

BOP 120a (7/01)                    Page 1 of 2
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1997

COVERAGE LIMITS OF INSURANCE – If an "X" is shown in a box below, the Limits of Insurance for that coverage are increased to the amounts shown.

| | LIMITS OF INSURANCE | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Prem. No. | Bldg. No. | Prem. No. | Bldg. No. | Prem. No. | Bldg. No. | Prem. No. | Bldg. No. |
| ☐ Accounts Receivable | $ | | $ | | $ | | $ | |
| ☐ Valuable Papers and Records | $ | | $ | | $ | | $ | |
| ☐ Forgery and Alteration | $ Any Loss | | | | | | | |

The Property Coverage Deductible applies to the above Coverage Extensions

| Additional Coverages – Exterior Building Glass – Tenants Exterior Building Glass |
|---|
| Location:                                  Limit of Insurance: $ |

OPTIONAL COVERAGES – Applicable only if an "X" is shown in the boxes below and only for the Premises/Buildings shown:

| | LIMITS OF INSURANCE | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Prem. No. | Bldg. No. | Prem. No. | Bldg. No. | Prem. No. | Bldg. No. | Prem. No. | Bldg. No. |
| | 001 | 001 | | | | | | |
| ☒ Exterior Glass | 50FT. PREMIUM $90 | | | | | | | |
| ☐ Basement/ground floor level | | | | | | | | |
| ☐ All Floors | | | | | | | | |
| ☐ Burglary & Robbery (Standard Form only) or | $ 10,000 Inside | | $ Inside | | $ Inside | | $ Inside | |
| ☒ Money & Securities (Special Form only) | $ 2,000 Outside | | $ Outside | | $ Outside | | $ Outside | |
| ☒ Outdoor Signs | $ 10,000 Per Occurrence | | | | | | | |
| ☐ Employee Dishonesty | $ Per Occurrence | | | | | | | |
| ☐ Other (Specify) | | | | | | | | |

BUSINESS LIABILITY AND MEDICAL EXPENSES COVERAGE

| | LIMITS OF INSURANCE | |
|---|---|---|
| Liability and Medical Expenses | $ 1,000,000 | Any One Occurrence, Person or Organization |
| | $ 10,000 | Any One Person Medical Expense |
| Fire Legal Liability | $ 50,000 | Any One Fire or Explosion |
| Aggregate Limits | Per Aggregate Limits Clause | |

OPTIONAL LIABILITY COVERAGES – Applicable only if an "X" is shown in the boxes below:

| | LIMITS OF INSURANCE | |
|---|---|---|
| ☒ Death Care Services Professional Liability | $ 1,000,000 | Each Professional Incident |
| | $ 2,000,000 | Aggregate |
| | $ 1,000 | Deductible Each Professional Incident |
| ☐ Garagekeepers Coverage | Per Garagekeepers Coverage Endorsement | |
| ☐ Employers Liability – Stop Gap | Per Employers Liability Insurance Stop Gap Coverage Endorsement | |

FORMS AND ENDORSEMENTS (other than applicable forms and endorsements shown elsewhere in the policy) applying to and made a part of this policy at time of issue:
See Attached Schedule Of Forms And Endorsements.

BOP 120a (7/01)                    Page 2 of 2

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1997

# DEATH CARE SERVICES PROFESSIONAL LIABILITY COVERAGE

*Various provisions in this policy restrict coverage.*
*Read the entire policy carefully to determine rights, duties and what is and is not covered.*

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under SECTION II – WHO IS AN INSURED.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – DEFINITIONS.

## SECTION I – COVERAGE

### DEATH CARE SERVICES PROFESSIONAL LIABILITY

1. **Insuring Agreement.**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of a "professional incident" to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS. This insurance applies to a "professional incident" only if it takes place:

      (1) In the "coverage territory"; and

      (2) During the policy period.

      We will have the right and duty to defend any "suit" seeking those damages. But:

      (1) The amount we will pay for damages is limited as described in SECTION III – LIMITS OF INSURANCE;

      (2) We may investigate and settle any claim or "suit" at our discretion; and

      (3) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements.

   b. Damages because of a "professional incident" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "professional incident."

2. **Exclusions.**

   This insurance does not apply to:

   a. Any claim in connection with which an insured has knowingly:

      (1) Violated any law or ordinance; or

      (2) Committed any criminal act.

   This exclusion does not apply to an act:

   (1) Done in good faith; or

   (2) When requested by a public official who appears to have authority to require or permit such act.

   b. Liability assumed by the insured under any contract or agreement.

   c. Any claim in connection with an "auto," arising out of its:

      (1) Ownership;

      (2) Maintenance or use; or

      (3) Loading or unloading.

   This exclusion does not apply to an incident resulting:

   (1) In injury to, or destruction of, such property that is the subject of paragraph c. of "professional incident" (SECTION V – DEFINITIONS); or

   (2) Solely in mental anguish, without bodily injury, sickness or disease.

   d. (1) Bodily injury, sickness, disease, death or mental anguish to; or

      (2) Injury to, or destruction of, the property of:

      any of your employees, partners, stockholders or officers arising out of and in the course of their duties as such.

   e. Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

### SUPPLEMENTARY PAYMENTS

We will pay, with respect to any claim or "suit" we defend:

1. All expenses we incur.

2. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

3. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $100 a day because of time off from work.
4. All costs taxed against the insured in the "suit."
5. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.
6. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.
7. Expenses incurred by the insured for first aid to others at the time of a "professional incident" to which this insurance applies.

These payments will not reduce the limits of insurance.

## SECTION II - WHO IS AN INSURED

1. If you are designated in the Declarations as:
   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.
   b. A partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.
   c. An organization other than a partnership or joint venture, you are an insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.
2. Your employees, other than your executive officers, are also insureds, but only for acts within the scope of their employment by you.
3. Any organization you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or majority interest, will be deemed to be a Named Insured if there is no other similar insurance available to that organization.

However:
   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization, or the end of the policy period, whichever is earlier; and
   b. Coverage does not apply to a "professional incident" that occurred before you acquired or formed the organization.
4. Persons or organizations included under paragraphs 1., 2. and 3. of this Section are insureds only with respect to claims arising out of a "professional incident."

No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:
   a. Insureds;
   b. Claims made or "suits" brought; or
   c. Persons or organizations making claims or bringing "suits."
2. The limit of insurance shown in the Declarations for each "professional incident" is the most we will pay for all damages incurred as the result of any one "professional incident."
3. The Aggregate limit shown in the Declarations is, subject to paragraph 2. of this Section, the total limit of our liability for all damages.

The limits of this Coverage Part apply separately to each consecutive annual period; and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - DEATH CARE SERVICES PROFESSIONAL LIABILITY CONDITIONS

The following conditions apply in addition to the applicable Businessowners Common Policy Conditions:

1. Bankruptcy.

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. Duties In the Event of Incident, Professional Incident, Claim or Suit.
   a. You must see to it that we are notified promptly of an incident or "professional incident" which may result in a claim. Notice should include:

   (1) How, when and where the incident or "professional incident" took place; and

   (2) The names and addresses of any injured persons, witnesses or persons who may provide us with additional information.

  b. If a claim is made or "suit" is brought against any insured, you must see to it that we receive prompt written notice of the claim or "suit."

  c. You and any other involved insured must:

   (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   (2) Authorize us to obtain records and other information;

   (3) Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and

   (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of a "professional incident" to which this insurance may also apply.

  d. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. Legal Action Against Us

   No person or organization has a right under this Coverage Part:

   a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an "agreed settlement" or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance.

4. Other Insurance

   If other valid and collectible insurance is available to the insured for a loss we cover under this Coverage Part, our obligations are limited as follows:

   a. This Insurance is Primary.

      Our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in b. below.

   b. Method of Sharing

      If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

      If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

   Any Other Insurance provision in the Businessowners Common Policy Conditions does not apply to this coverage part.

5. Premium Audit.

   a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

   b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured.

   c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

6. Representations.

   By accepting this policy, you agree:

   a. The following are duly qualified and licensed (where required by law), in your business as a mortician, funeral director or owner or operator of a cemetery or mausoleum in the towns, cities or states in which you are authorized to do business, as shown in the Declarations:

      (1) You if you are designated in the Declarations as an individual; and

      (2) A partner or executive officer, if you are designated in the Declarations as, respectively, a partnership or a corporation.

   b. With respect to Representation a. (2), such partner or executive officer will supervise the

embalming, care and handling of all "deceased human bodies";

c. The statements in the Declarations are accurate and complete;

d. These statements are based upon representations you made to us; and

e. We have issued this policy in reliance upon your representations.

7. Separation Of Insureds.

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

8. Transfer Of Rights Of Recovery Against Others To Us.

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9. Your Consent To Claim Settlement.

a. We will not settle any claim without the written consent of the first Named Insured.

b. The following applies if the first Named Insured refuses to consent to any settlement that we recommend; and elects to contest the claim or continue any legal proceeding in connection with such claim:

(1) Our liability for the claim will not be more than the amount for which the claim could have been so settled, subject to the Limits of Insurance of this Coverage Part; plus

(2) The costs and expenses incurred with our consent up to the date of such refusal.

## SECTION V - DEFINITIONS

1. "Agreed settlement" means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

2. "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment.

3. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada; or

b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above.

4. "Deceased human body" includes:

a. Its ashes after legal cremation; or

b. Any part severed from a human body.

5. "Insured contract" means a contract which is:

a. Usual to the insured's business as a mortician, funeral director, or owner or operator of a cemetery or mausoleum;

b. In connection with a "deceased human body"; and

c. Providing for:

(1) Embalming;

(2) Handling or disposition;

(3) Care, custody or control;

(4) Burial, disinterment or removal;

(5) Conducting a memorial service; or

(6) Transportation of a body by others.

An "insured contract" does not include any promise or agreement to pay for mental anguish.

6. "Professional incident" means:

a. Any professional malpractice, error or mistake which:

(1) Causes:

(a) Bodily injury, sickness, disease, death or mental anguish, including resulting loss of services; or

(b) Injury to, or destruction of property of others which is not in the insured's care, custody or control, including resulting loss of use; and which

(2) Arises out of, with respect to a "deceased human body":

(a) Embalming;

(b) Handling or disposition;

(c) Care, custody or control;

(d) Burial, disinterment or removal;

(e) A memorial service conducted by the insured, whether or not a body is present; or

(f) Injury to, or destruction of such body; or interference with the right of burial.

b. Any performance or nonperformance of an "insured contract," but only with respect to resulting mental anguish;

c. Injury to, or destruction of, property to be used for the care or burial of a "deceased human body":

   (1) Such as urns, caskets (including linings, fittings, and cases), crypts or mausoleums; and

   (2) Which:

      (a) Belong to others;

      (b) Are in the care, custody or control of the insured; and

      (c) Are not rented to the insured; or held by the insured on consignment prior to sale.

7. "Suit" means a civil proceeding in which damages because of a "professional incident" to which this insurance applies are alleged. "Suit" includes an arbitration proceeding alleging such damages to which you must submit or submit with our consent.

THIS COVERAGE PART IS SUBJECT TO THE FOLLOWING NUCLEAR ENERGY LIABILITY EXCLUSION:

The following exclusion applies in addition to those stated elsewhere in this Coverage Part.

1. This insurance does not apply:

   a. Under any Liability coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   b. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   c. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material," if:

      (1) The "nuclear material" a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this exclusion:

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means "source material," "special nuclear material" or "by-product material";

"source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"waste" means any waste material a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"nuclear facility" means:

a. Any "nuclear reactor";

b. Any equipment or device designed or used for 1) separating the isotopes of uranium or

plutonium, 2) processing or utilizing "spent fuel," or 3) handling, processing or packaging "waste";

c. Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

d. Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site of which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"property damage" includes all forms of radioactive contamination of property.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

_____    _____
AUTHORIZED REPRESENTATIVE               DATE