# Exhibit 4

# NETWORK ADJUSTERS, INC.

• CLAIMS ADMINISTRATORS • ADJUSTERS • INVESTIGATORS

15245 Highgrove Road – Alpharetta, Ga. 30004
Phone (770) 733-1113
E-MAIL: lshort@networkadjusters.com

July 31, 2006

## Certified Return Receipt Requested

Mr. Frank Restivo
English Brothers Funeral Home
2201 Avenue Z
Brooklyn, New York 11235

Re: **Zeltins v. Biomedical Tissue Services, Inc., et al.**
    **Claim No.: 169-070023**

Dear Mr. Restivo:

Network Adjusters, Inc. is a third party administrator for Specialty National Insurance Company ("Specialty National"). Specialty National has received notice of the above referenced lawsuit filed in the New York Supreme Court, County of Kings, indicating that coverage is sought by English Brothers Funeral Home ("English Brothers") under Specialty National Policy No. 3XZ17069401 issued to English Brothers for the policy period of August 1, 2002 to August 1, 2003. This letter will serve to advise you of the coverage issues raised by this lawsuit, and Specialty National's reservation of rights with regard thereto. These issues are addressed below.

The facts alleged in the Complaint, as we understand them, are as follows:

Plaintiffs Dainis Zeltins and Josephine Olive bring their Class Action Complaint on behalf of themselves and other similarly situated individuals against the Defendants who were involved in a scheme in which they illegally obtained human body parts from the corpses of Plaintiffs' next-of-kin or loved ones while the corpses were under the care of either the individual Defendants or the various funeral home Defendants.

Plaintiff Zeltin's brother, Richard Zeltins, died on April 19, 2003. Decedent's body was entrusted to the care of David George & Son Funeral Home. Neither Richard Zeltins nor any member of his family consented to the harvesting of tissue from Zeltin's corpse by any Defendant. In late 2005, a New York City detective came to Dainis Zeltin's home with a purported release allowing for the harvesting of tissue from the corpse of Richard Zeltins. Dainis Zeltins informed the detective that no one had signed any release.

Plaintiff Josephine Olivo's husband, Anthony Olive, died on April 10, 2003. Decedent's body was entrusted to the care of English Brothers Funeral Home. Neither Anthony Olivo nor any member of his family consented orally or in writing to the harvesting of tissue from Olive's corpse by any Defendant. In September 2005, two New York City detectives came to Mrs. Olivo's home with a purported release allowing for the harvesting of tissue from the corpse of Anthony Olivo. Mrs. Olive informed the detectives that no one had signed any release.

Plaintiffs allege that beginning in or around 2000, former New Jersey dentist and oral surgeon, Michael Mastromarino ("Mastromarino")m entered into a partnership with Joseph Nicelli ("Nicelli"), an embalmer, to open Biomedical Tissue Services ("BTS") for the purpose of harvesting human tissue, bone and organs from human corpses for resale to commercial human tissue, bone and organ processors and resellers. Plaintiffs allege that shortly after opening their business, Mastromarino and Nicelli began harvesting tissue and bones from human bodies, including bodies of Plaintiffs' next-of-kin, that were improperly obtained from various funeral homes.

Plaintiffs allege that to circumvent obtaining releases from the families of the dissected corpses, BTS, Mastromarino and Nicelli, with the aid of the Defendant funeral homes, secretly dissected the bodies without the knowledge of family members and prepared them for burial or cremation.

Certain funeral homes, including English Brothers, allowed Mastromarino and Nicelli to harvest body parts from corpses under the funeral home's care and with the knowledge of the funeral home and its officers.

There are questions of law or fact common to the Class which predominate over any questions affecting only individual members, including the following:

    a.    Whether Defendants removed body parts from Plaintiffs' next-of-kin's or loved one's corpse without proper consent or authorization;

    b.    Whether Defendants engaged in deceptive acts and practices, including, but not limited to, hiding from Plaintiffs the fact that body parts had been harvested from their next-of-kin or loved ones; and

    c.    Whether Defendants represented that they would honor the wishes of the decedents or their next-of-kin and loved ones.

Count I alleges Negligent Infliction of Emotional Distress. Defendants' acts and omissions demonstrated negligence which caused Plaintiffs severe emotional distress.

Count II alleges Intentional Infliction of Emotional Distress. Defendants' acts and omissions were extreme, outrageous and unnecessarily reckless, in a deliberate intent to cause Plaintiffs significant emotional distress.

Count III alleges Negligence.

Count IV alleges Intentional Misrepresentation. Defendants made numerous false, misleading and fraudulent representations to Plaintiffs and Plaintiffs' decedents leading them to believe that Defendants would treat the corpses of the Plaintiffs' decedents with care; to not falsify records and information concerning Plaintiffs' decedents; to follow acceptable and ethical funeral home and tissue/bone procurement standards of conduct; and secure authorized consents from decedents or decedents' next-of-kin before removing any body parts from the decedents.

Count V alleges Negligent Misrepresentation.

Count VI alleges Violation of the New York Consumer Protection Statute. Defendants have employed unconscionable commercial practices or fraud or other unlawful acts in connection with the sale of services or advertising of funeral home services in violation of the Statute, including, but not limited to, making material representations about, or engaging in fraudulent or deceptive conduct concerning the quality of their funeral home services.

Count VII alleges Respondeat Superior. The corporate Defendants are responsible or vicariously liable for the acts of their agents, employees and servants based on the theory of respondeat superior.

Count VIII alleges Punitive Damages.

Count IX seeks damages against "John Doe" Defendants who may be responsible for causing the injuries suffered by Plaintiffs.

Count X alleges Joint and Several Liability.

Specialty National issued Policy No. 3XZ17069401 to English Brothers Funeral Home, Inc. for the policy period August 1, 2002 to August 1, 2003 with Business Liability limits of $1 million for Any One Occurrence, and Death Care Services Professional Liability limits of $1 million for Each Professional Incident and $2 million in the Aggregate (the "Policy"). The Policy has a $1,000 deductible applicable to Death Care Services Professional Liability.

The Business Owners Liability Coverage form provides, in relevant part, as follows:

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", property damage", "personal injury" and "or advertising injury" to which this insurance applies. . . .

b. This insurance applies:

   (1) To "bodily injury" and "property damage" only if:

       (a) The "bodily injury" or "property damage" is caused by an

        "occurrence" that takes place in the "coverage territory"; and

    (b)    The "bodily injury" or "property damage" occurs during the policy period.

The Policy defines "Bodily Injury" as "bodily injury, sickness or disease sustained by any person, including death resulting from any of these at any time." Certain of the allegations asserted in the Complaint may not allege Bodily Injury.

"Occurrence" is defined by the Policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The Complaint may not allege an Occurrence.

The Business Owners Coverage Part provides no coverage for "Bodily injury", "property damage", "personal injury", "advertising injury" due to rendering or failure to render any professional service.

The Business Owners Coverage Part provides no coverage for "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

The Insuring Agreement found in the Death Care Services coverage part provides, in relevant part, as follows:

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of a "professional incident" to which this insurance applies . . . This insurance applies to a "professional incident" only if it takes place:

    (1)    In the "coverage territory"; and

    (2)    During the policy period.

. . .

b. Damages because of a "professional incident" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "professional incident."

"Professional Incident" is defined as follows:

applies to a "professional incident" only if it takes place:

    (1)    In the "coverage territory"; and

    (2)    During the policy period.

We will have the right and duty to defend any "suit" seeking those damages.

Subject to this reservation of rights, Specialty National will agree to provide a defense for English Brothers in this matter. Network Adjusters has retained Michael Pressman to represent English Brothers in this lawsuit, and Michael Pressman will contact you in the near future to discuss English Brothers' defense. Specialty National reserves the right to withdraw its defense should any defense or applicable law so warrant. We strongly advise that you put all applicable carriers on notice of this matter.

The Specialty National Policy may be excess of other insurance. Please provide us copies of any and all insurance policies that may potentially provide coverage for the allegations asserted in the Complaint. In addition, you should notify any other primary insurer and any excess or umbrella insurer of this claim as soon as possible, if you have not already done so. Please inform us immediately of the name of the claims representative who is handling this claim for any other insurer.

The total amount of damages sought by the plaintiff may exceed the Specialty National policy limits. Accordingly, the potential exists for a judgment that exceeds the available policy limits. Specialty National will not be responsible for any judgment in excess of the available limits.

As a result of the policy provisions discussed herein, which may be applicable to these claims, as well as any other provisions not specifically mentioned herein which may become applicable as our investigation continues, Specialty National hereby asserts its full and complete reservation of rights concerning this matter. Nothing contained herein, nor any further actions taken by Specialty National, should be construed as a waiver of any rights or defenses, whether or not stated herein, which Specialty National may possess under its policies and applicable law. It should be understood that any actions taken by Specialty National, its agents, representatives or attorneys, do not constitute and are not intended as a waiver of any rights or defenses available to Specialty National whether or not stated herein, that may be available now or at any point in time. Please be advised that as we continue to investigate and monitor this matter we are always willing to engage in any discussions which you might care to initiate relative to this matter.

Of course, if you have any further information relevant to this coverage determination, please forward such information to my attention immediately and we will consider it. Also if you believe we have misapprehended any fact or misinterpreted the terms and conditions of the Specialty National Policy, please do not hesitate to outline your concerns in writing to my attention as soon as possible. If you have any questions regarding Specialty National's position,

please do not hesitate to contact me.


Sincerely,



Leon Short
General Adjuster
Network Adjusters, Inc.

Cc: Law Firm of Mike Pressman
125 Maiden Lane
New York, NY 10038



NETWORK ADJUSTERS, INC
400 SOUTH FIDDLER'S GREEN CIRCLE, SUITE 1950
ENGLEWOOD, CO 80111