# Exhibit 7



## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Specialty National Insurance Company, | ) | Case No. CV 7507 |
| Plaintiff, | ) | |
| v. | ) | |
| English Brothers Funeral Home, | ) | **COMPLAINT FOR** |
| Defendant. | ) | **DECLARATORY JUDGMENT** |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Specialty National Insurance Company ("Specialty National" or "SNIC"), by and through its undersigned counsel, brings this Complaint for Declaratory Judgment pursuant to 28 U.S.C.A. § 1332, and in support thereof states as follows:

### NATURE OF DISPUTE

1.      This is an insurance coverage action involving numerous lawsuits brought against English Brothers Funeral Home ("English Brothers"), a funeral home in Brooklyn, New York, which allegedly provided corpses to third parties for the harvesting of body parts without the consent of the decedents' family members. Many of the lawsuits allege that body parts harvested from corpses at the English Brothers Funeral Home were used during surgical procedures performed on plaintiffs who are still living today. Specialty National issued a general liability policy to English Brothers and seeks a declaration in this cause that it owes no coverage for the lawsuits based, in part, on the allegations brought against English Brothers of intentional, malicious, fraudulent and unlawful conduct.

AUG 2 4 2007
U.S.D.C. S.D.N.Y.
CASHIERS

## THE PARTIES

2.      Plaintiff Specialty National is a corporation organized and existing under the laws of the State of Illinois and has its principal place of business in Long Grove, Illinois.

3.      Upon information and belief, Defendant English Brothers Funeral Home is a funeral home existing under the laws of the State of New York and has its principal place of business in Brooklyn, New York.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this matter pursuant to 28 U.S.C.A. § 1332 based upon diversity of citizenship between plaintiff and defendant.

5.      The matter in controversy in this cause exceeds $75,000.

6.      Venue is proper in this matter because events giving rise to the allegations asserted by the claimants referenced herein occurred in this judicial district and the defendant is subject to the personal jurisdiction of this Court.  28 U.S.C.A. § 1391.

## THE POLICY

7.      Specialty National issued Policy No. 3XZ17069401 to English Brothers Funeral Home, Inc. for the policy period August 1, 2002 to August 1, 2003 with separate coverages for Business Liability and Death Care Services Professional Liability (the "Policy").  A true and correct copy of the Policy is attached hereto and incorporated by reference herein as Exhibit A.

## THE UNDERLYING LAWSUITS

### Enright v. English Brothers Funeral Home, et al.

8.      A complaint was filed in the Supreme Court of the State of New York, County of Kings, in an action styled *Joe Enright v. English Brothers Funeral Home, Inc., et al.* (the "Enright Complaint").  A true and correct copy of the Enright Complaint is attached hereto as

Exhibit B. The Enright Complaint alleges that plaintiff's wife died on July 30, 2003 and that he contracted with English Brothers to provide funeral services for his wife.

9.      The Enright Complaint alleges a number of facts that are common to all of the lawsuits discussed herein, including the following: English Brothers entered into a contract with Biomedical Tissue Services ("Biomedical") for the harvesting of corpses at the English Brothers funeral home.   Michael Mastromarino ("Mastromarino") allegedly owns Biomedical, which harvested human tissue, bone and organs from human corpses for resale to commercial human tissue, bone, and organ processors and resellers.  Joseph Nicelli ("Nicelli") allegedly performed embalming services for English Brothers and/or Biomedical.   English Brothers allegedly provided corpses to Biomedical, and forged documents in order to allow Biomedical to harvest the corpses.   To circumvent obtaining releases from the families of decedents, Biomedical allegedly secretly dissected the bodies and prepared them for burial without the knowledge of family members.  English Brothers and Biomedical allegedly altered medical records, death certificates, and the identities of corpses to conceal the lifestyle and medical or disease histories of the corpses.  Thus, the harvested bone and tissue allegedly came from persons who potentially suffered from chronic infectious diseases such as syphilis, AIDS or hepatitis, and/or who died from these diseases.

10.      The Enright Complaint alleges, in part, that plaintiff's injuries were caused by the intentional, malicious and fraudulent unlawful acts of the defendants, including English Brothers; breach of contract by failing to render the services called for and desecrating the decedent's remains; that the defendants' actions were extreme, outrageous and reckless in a deliberate intent to cause plaintiff significant emotional distress; unjust enrichment; and misrepresentation.

## Bruno v. English Brothers Funeral Home, et al.

11.    A complaint was filed in the Supreme Court of the State of New York, County of Kings, in an action styled *Vito Bruno, as administrator of the Estate of Michael Bruno, and Vito Bruno, individually v. English Brothers Funeral Home, et al.*, Index No. 31715/2005 (the "Bruno Complaint"). A true and correct copy of the Bruno Complaint is attached hereto as Exhibit C. The Bruno Complaint alleges that on May 22, 2003, Biomedical performed harvesting procedures on the decedent, Michael Bruno, at the English Brothers funeral home. The harvesting procedure was allegedly performed without the authorization of the decedent's family. English Brothers allegedly forged documents in order to allow Biomedical to harvest the corpse. The Bruno Complaint alleges that English Brothers caused emotional trauma to the decedent's family, and that the actions of English Brothers were malicious, willful and grossly negligent, entitling plaintiffs to an award of punitive damages. The Bruno Complaint also alleges breach of contract by failing to perform the proper burial services as contracted for the decedent.

12.    English Brothers tendered the Bruno Complaint to Specialty National for defense and indemnity. Specialty National is providing a defense to English Brothers in the Bruno lawsuit pursuant to a reservation of rights.

## Kogut v. English Brothers Funeral Home, et al.

13.    A complaint was filed in the Supreme Court of the State of New York, County of Kings, in an action styled *Mattie Kogut, as Administratrix of the Estate of Danette Kogut, and Mattie Kogut, individually v. English Brothers Funeral Home, et al.*, Index No. 33691/2005 (the "Kogut Complaint"). A true and correct copy of the Kogut Complaint is attached hereto as Exhibit D. The Kogut Complaint alleges that on February 21, 2003, Biomedical allegedly

performed harvesting procedures on the decedent, Danette Kogut, at the English Brothers funeral home.  The harvesting was allegedly performed on the decedent without the authorization of the decedent's family.  English Brothers allegedly forged documents in order to allow Biomedical to harvest the corpse.  Count I alleges negligence. Count II alleges breach of contract by not performing the proper burial services as contracted for the decedent.  Count III alleges that the actions of the defendants were malicious, willful and grossly negligent, entitling plaintiffs to an award of punitive damages.

14.    English Brothers tendered the Kogut Complaint to Specialty National for defense and indemnity.  Specialty National is providing a defense to English Brothers in the Kogut lawsuit pursuant to a reservation of rights.

### Jackson v. Biomedical Tissue Services, et al.

15.    A complaint was filed in the United States District Court for the District of New Jersey in an action styled *Ned Jackson v. Biomedical Tissue Services Ltd., et al.*, Civil Action No. 06-1323 (the "Jackson Complaint").  A true and correct copy of the Jackson Complaint is attached hereto as Exhibit E.  The Jackson Complaint alleges that on August 12, 2003, plaintiff underwent a fusion at L5-S1 with performed by Dr. Michael Longley. In late 2005, Dr. Longley advised Plaintiff that the bone and tissue used in his surgery was processed by Medtronic Sofamor Danek ("Medtronic"), which distributed tissue, bone and organs that it allegedly acquired from Biomedical.  Medtronic issued a recall for that specific lot of tissue due to questions about the adequacy of donor documentation.  In December 2005, Plaintiff's blood tests showed evidence of exposure to hepatitis B and C.

16.    The Jackson Complaint alleges violations of the New Jersey Products Liability Act; negligence; negligent and intentional misrepresentation; violations of the New Jersey

5

Consumer Fraud Act; breach of express warranty; and infliction of emotional distress.   The Jackson Complaint seeks an award of punitive damages, and damages for the future medical monitoring of plaintiff.

### Zeltins v. Biomedical Tissue Services, et al.

17.     A class action complaint was filed in the Supreme Court of the State of New York, County of Kings in an action styled *Dainis Zeltins v. Biomedical Tissue Services Ltd., et al.*, (the "Zeltins Complaint").   A true and correct copy of the Zeltins Complaint is attached hereto as Exhibit F.   Plaintiffs Dainis Zeltins and Josephine Olive brought their Class Action Complaint on behalf of themselves and other similarly situated individuals against the defendants who were involved in a scheme in which they illegally obtained human body parts from the corpses of plaintiffs' next-of-kin or loved ones while the corpses were under the care of either the individual defendants or the funeral home defendants (including English Brothers).   Plaintiff Dainis Zeltin's brother died on April 19, 2003.   Decedent's body was entrusted to the care of David George & Son Funeral Home.   Neither Richard Zeltins nor any member of his family consented to the harvesting of tissue from Zeltin's corpse.   Plaintiff Josephine Olivo's husband died on April 10, 2003.   Decedent's body was entrusted to the care of English Brothers funeral home.   Neither Anthony Olivo nor any member of his family consented to the harvesting of tissue from Olive's corpse.

18.     The Zeltins Complaint alleges, in part, negligent infliction of emotional distress; intentional infliction of emotional distress; intentional misrepresentation; negligent misrepresentation; and violations of the New York Consumer Protection statute.   Plaintiffs seek an award of punitive damages.

6

## Lokenvitz v. Biomedical Tissue Services, et al.

19.     A complaint was filed in the United States District Court for the Northern District of Iowa, Eastern Division, in an action styled *Jeffrey Lokenvitz v. Biomedical Tissue Services Ltd., et al.* (the "Lokenvitz Complaint").    A true and correct copy of the Lokenvitz Complaint is attached hereto as Exhibit G.  The complaint alleges that in February 2005, plaintiff underwent back surgery at the University of Iowa Hospitals & Clinics.  In November 2005, plaintiff was informed that the tissue used in his surgery was obtained through Biomedical and that a recall was issued for some of the bone and tissue products distributed by Biomedical.

20.     The Lokenvitz Complaint alleges, in part, that the product implanted in plaintiff during his surgery was not merchantable or reasonably suited for its intended use; defendants negligently procured, harvested, sold or failed to warn of the dangers associated with the donor tissue or bone product; negligent misrepresentation; intentional misrepresentation; breach of express warranty; intentional infliction of emotional distress; and negligent infliction of emotional distress.  The Lokenvitz Complaint seeks an award of punitive damages, and damages for the future medical monitoring of plaintiff.

## Collins v. Biomedical Tissue Services, et al.

21.     A complaint was filed in the United States District Court for the Northern District of Iowa, Central Division, in an action styled *Brian Collins v. Biomedical Tissue Services Ltd., et al.* (the "Collins Complaint").  A true and correct copy of the Collins Complaint is attached hereto as Exhibit H. The Collins Complaint alleges that on September 4, 2005 plaintiff underwent back surgery at the St. Mary's Duluth Clinic in Duluth, Minnesota.  In November

2005, Collins was informed that the tissue used in his surgery was obtained through Biomedical and that a recall was issued for the bone and tissue products that were distributed by Biomedical.

22.    The Collins Complaint alleges, in part, that the product implanted in plaintiff during his surgery was not merchantable or reasonably suited for its intended use; defendants negligently procured, harvested, sold or failed to warn of the dangers associated with the donor tissue or bone product; negligent misrepresentation; intentional misrepresentation; breach of express warranty; intentional infliction of emotional distress; and negligent infliction of emotional distress.    The Collins Complaint seeks an award of punitive damages, and damages for the future medical monitoring of plaintiff.

**Ricklefs v. Biomedical Tissue Services, et al.**

23.    A complaint was filed in the United States District Court for the Northern District of Iowa, Central Division, in an action styled *Jodi Ricklefs v. Biomedical Tissue Services Ltd., et al.* (the "Ricklefs Complaint").  A true and correct copy of the Ricklefs Complaint is attached hereto as Exhibit I.  The Ricklefs Complaint alleges that on November 10, 2004 plaintiff Ricklefs underwent neck surgery at the Mercy Medical Center in Mason City, Iowa.   In March 2006, plaintiff Ricklefs was informed that the tissue used in her surgery was obtained through Medtronic and that a recall was issued for some of the bone and tissue products that had been distributed by Medtronic.

24.    The Ricklefs Complaint alleges, in part, that the product implanted in plaintiff during her surgery was not merchantable or reasonably suited for its intended use; defendants negligently procured, harvested, sold or failed to warn of the dangers associated with the donor tissue or bone product; negligent misrepresentation; intentional misrepresentation; breach of express warranty; intentional infliction of emotional distress; and negligent infliction of

emotional distress.   The Ricklefs Complaint seeks an award of punitive damages, and damages for the future medical monitoring of plaintiff.

### Wood v. Biomedical Tissue Services, et al.

25.    A complaint was filed in the United States District Court for the Northern District of Iowa, Central Division, in an action styled *Marion Wood v. Biomedical Tissue Services Ltd., et al.* (the "Wood Complaint").  A true and correct copy of the Wood Complaint is attached hereto as Exhibit J.   The Wood Complaint alleges that on July 31, 2003, plaintiff Wood underwent back surgery at the Iowa Lutheran Hospital in Des Monies, Iowa.   In April 2006, plaintiff Wood was informed that the tissue used in his surgery was obtained through Biomedical and that a recall was issued for some of the bone and tissue products that had been distributed by Biomedical.

26.    The Wood Complaint alleges, in part, that the product implanted in plaintiff during his surgery was not merchantable or reasonably suited for its intended use;  defendants negligently procured, harvested, sold or failed to warn of the dangers associated with the donor tissue or bone product;  negligent misrepresentation;  intentional misrepresentation;  breach of express warranty;  intentional infliction of emotional distress;  and negligent infliction of emotional distress.  The Wood Complaint seeks an award of punitive damages, and damages for the future medical monitoring of plaintiff.

### Frerichs v. Biomedical Tissue Services, et al.

27.    A complaint was filed in the United States District Court for the Northern District of Iowa, Central Division, in an action styled *Shawn Frerichs v. Biomedical Tissue Services Ltd., et al.* (the "Frerichs Complaint").  A true and correct copy of the Frerichs Complaint is attached hereto as Exhibit K.  The Frerichs Complaint alleges that in the fall of 2005, plaintiff underwent

spinal surgery at the Mercy Medical Center in Mason City, Iowa.   In February 2006, plaintiff was informed that the tissue used in his surgery was obtained through Medtronic and that a recall was issued for some of the bone and tissue products that had been distributed by Medtronic.

28.     The Frerichs Complaint alleges, in part, that the product implanted in plaintiff during his surgery was not merchantable or reasonably suited for its intended use; defendants negligently procured, harvested, sold or failed to warn of the dangers associated with the donor tissue or bone product; negligent misrepresentation; intentional misrepresentation; breach of express warranty; intentional infliction of emotional distress; and negligent infliction of emotional distress.   The Frerichs Complaint seeks an award of punitive damages, and damages for the future medical monitoring of plaintiff.

### Oberender-Doolittle v. Biomedical Tissue Services, et al.

29.     A complaint was filed in the United States District Court for the Northern District of Iowa, Central Division, in an action styled *Kim Oberender-Doolittle v. Biomedical Tissue Services Ltd., et al.* (the "Doolittle Complaint").   A true and correct copy of the Doolittle Complaint is attached hereto as Exhibit L.  The Doolittle Complaint alleges that on August 18, 2005, plaintiff underwent oral surgery in Fort Dodge, Iowa.  Following her surgery, plaintiff Doolittle was informed that the tissue used in her surgery was being recalled.

30.     The Doolittle Complaint alleges, in part, that the product implanted in plaintiff during her surgery was not merchantable or reasonably suited for its intended use; defendants negligently procured, harvested, sold or failed to warn of the dangers associated with the donor tissue or bone product; negligent misrepresentation; intentional misrepresentation; breach of express warranty; intentional infliction of emotional distress; and negligent infliction of

emotional distress.   The Doolittle Complaint seeks an award of punitive damages, and damages for the future medical monitoring of plaintiff.

## Eyberg v. Biomedical Tissue Services, et al.

31.     A complaint was filed in the United States District Court for the Northern District of Iowa, Eastern Division, in an action styled *Brandon Eyberg v. Biomedical Tissue Services Ltd., et al.* (the "Eyberg Complaint").   A true and correct copy of the Eyberg Complaint is attached hereto as Exhibit M.   The Eyberg Complaint alleges that on June 29, 2005, plaintiff underwent spinal surgery at the Mercy Medical Center in Mason City, Iowa.   In March 2006, plaintiff was informed that the tissue used in his surgery was obtained through Medtronic and that a recall was issued for some of the bone and tissue products that had been distributed by Medtronic.

32.     The Eyberg Complaint alleges, in part, that the product implanted in plaintiff during his surgery was not merchantable or reasonably suited for its intended use; defendants negligently procured, harvested, sold or failed to warn of the dangers associated with the donor tissue or bone product; negligent misrepresentation; intentional misrepresentation; breach of express warranty; intentional infliction of emotional distress; and negligent infliction of emotional distress.   The Eyberg Complaint seeks an award of punitive damages, and damages for the future medical monitoring of plaintiff.

## Pierce v. Biomedical Tissue Services, et al.

33.     A complaint was filed in the United States District Court for the Northern District of Iowa, Eastern Division, in an action styled *Stephen Pierce v. Biomedical Tissue Services Ltd., et al.* (the "Pierce Complaint").   A true and correct copy of the Pierce Complaint is attached hereto as Exhibit N.   The Pierce Complaint alleges that in the fall of 2005, plaintiff underwent

abdominal surgery at the University of Iowa Hospitals in Iowa City, Iowa. In November 2005, plaintiff was informed that the tissue used in his surgery was obtained through Biomedical and that a recall was issued for some of the bone and tissue products that had been distributed by Biomedical.

34.    The Pierce Complaint alleges, in part, that the product implanted in plaintiff during his surgery was not merchantable or reasonably suited for its intended use; defendants negligently procured, harvested, sold or failed to warn of the dangers associated with the donor tissue or bone product; negligent misrepresentation; intentional misrepresentation; breach of express warranty; intentional infliction of emotional distress; and negligent infliction of emotional distress. The Pierce Complaint seeks an award of punitive damages, and damages for the future medical monitoring of plaintiff.

## Landtiser v. Biomedical Tissue Services, et al.

35.    A complaint was filed in the United States District Court for the Northern District of Iowa, Davenport Division, in an action styled *Douglas Landtiser v. Biomedical Tissue Services Ltd., et al.* (the "Landtiser Complaint"). A true and correct copy of the Landtiser Complaint is attached hereto as Exhibit O. The Landtiser Complaint alleges that on October 12, 2005, plaintiff underwent spinal surgery at the Mercy Medical Center in Cedar Rapids, Iowa. In November 2005, plaintiff was informed that the tissue used in his surgery was obtained through Regeneration and that a recall was issued for some of the bone and tissue products that had been distributed by Regeneration.

36.    The Landtiser Complaint alleges, in part, that the product implanted in plaintiff during his surgery was not merchantable or reasonably suited for its intended use; defendants negligently procured, harvested, sold or failed to warn of the dangers associated with the donor

tissue or bone product; negligent misrepresentation; intentional misrepresentation; breach of express warranty; intentional infliction of emotional distress; and negligent infliction of emotional distress. The Landtiser Complaint seeks an award of punitive damages, and damages for the future medical monitoring of plaintiff.

### Kane v. Biomedical Tissue Services, et al.

37.    A complaint was filed in the United States District Court for the Northern District of Iowa, Central Division, in an action styled *Darcy Kane v. Biomedical Tissue Services Ltd., et al.* (the "Kane Complaint"). A true and correct copy of the Kane Complaint is attached hereto as Exhibit P. The Kane Complaint alleges that on March 2, 2005, plaintiff underwent back surgery at the Mercy Medical Center in Cedar Rapids, Iowa. In November 2005, plaintiff was informed that the tissue used in her surgery was obtained through Spinal Graft and that a recall was issued for some of the bone and tissue products that had been distributed by Spinal Graft.

38.    The Kane Complaint alleges, in part, that the product implanted in plaintiff during her surgery was not merchantable or reasonably suited for its intended use; defendants negligently procured, harvested, sold or failed to warn of the dangers associated with the donor tissue or bone product; negligent misrepresentation; intentional misrepresentation; breach of express warranty; intentional infliction of emotional distress; and negligent infliction of emotional distress. The Kane Complaint seeks an award of punitive damages, and damages for the future medical monitoring of plaintiff.

### Andreasen v. Biomedical Tissue Services, et al.

39.    A complaint was filed in the United States District Court for the Northern District of Iowa, Central Division, in an action styled *Malinda Andreasen v. Biomedical Tissue Services Ltd., et al.* (the "Andreasen Complaint"). A true and correct copy of the Andreasen Complaint is

attached hereto as Exhibit Q. The Andreasen Complaint alleges that on January 20, 2005, plaintiff underwent spinal surgery at the Mercy Medical Center in Mason City, Iowa. In February 2006, plaintiff was informed that the tissue used in her surgery was obtained through Medtronic and that a recall was issued for some of the bone and tissue products that had been distributed by Medtronic.

40.    The Andreasen Complaint alleges, in part, that the product implanted in plaintiff during her surgery was not merchantable or reasonably suited for its intended use; defendants negligently procured, harvested, sold or failed to warn of the dangers associated with the donor tissue or bone product; negligent misrepresentation; intentional misrepresentation; breach of express warranty; intentional infliction of emotional distress; and negligent infliction of emotional distress. The Andreasen Complaint seeks an award of punitive damages, and damages for the future medical monitoring of plaintiff.

### Aberbach v. Biomedical Tissue Services, et al.

41.    A complaint was filed in the Supreme Court of the State of New York, County of Kings, in an action styled *Ronald Aberbach v. Biomedical Tissue Services Ltd., et al.* (the "Aberbach Complaint"). A true and correct copy of the Aberbach Complaint is attached hereto as Exhibit R. The Aberbach Complaint alleges that on May 19, 2005, plaintiff underwent a surgical procedure in his neck and spine where bone and other tissue harvested from corpses obtained through English Brothers, Biomedical, Medtronic and/or Daniel Brothers Funeral Home. In December 2005, plaintiff was advised that he had received potentially contaminated bone and tissue during his procedure.

14

42.     The Aberbach Complaint alleges, in part, severe emotional distress; battery; breach of express warranty; negligence; and strict products liability. The Aberbach Complaint seeks an award of punitive damages.

43.     Hereinafter, all of the above-referenced lawsuits will be collectively be referred to as the "Complaints" or "Underlying Suits".

### COUNT I

**Declaratory Judgment**

**No Occurrence (Business Owners Liability)**

44.     Specialty National hereby incorporates by reference, as if set forth fully herein, Paragraphs 1 - 43 of this Complaint.

45.     The Business Owners Liability Coverage form of the Policy provides, in relevant part, as follows:

    a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", property damage", "personal injury" and "or advertising injury" to which this insurance applies. . . .

    b.     This insurance applies:

        (1)     To "bodily injury" and "property damage" only if:

            (a)     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

            (b)     The "bodily injury" or "property damage" occurs during the policy period.

46.     "Occurrence" is defined by the Policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

47.     No "Occurrence" is alleged by the plaintiffs in the Underlying Suits given that the gravamen of all of the allegations against English Brothers is intentional conduct, *i.e.*,

15

intentionally forging documents; intentionally altering medical records and death certificates; intentionally allowing the harvesting of body parts from corpses; and intentionally desecrating decedents' remains. Because no "accident" is alleged by plaintiffs, no "Occurrence" is alleged under the Business Owners Liability Coverage form of the Policy.

## COUNT II

### Declaratory Judgment

### No Bodily Injury (Business Owners Liability)

48.    Specialty National hereby incorporates by reference, as if set forth fully herein, Paragraphs 1 - 47 of this Complaint.

49.    The Policy defines "Bodily Injury" as "bodily injury, sickness or disease sustained by any person, including death resulting from any of these at any time."

50.    The harvesting of a body part from a corpse without the consent of the decedents' family, as alleged in the Bruno, Kogut, Enright and Zeltins Complaints, does not constitute "Bodily Injury" as defined by the Policy.

51.    Because the harvesting of a body part from a corpse without the consent of the decedents' family does not constitute Bodily Injury, the Business Owners Liability coverage part provides no coverage for the Bruno, Kogut, Enright and Zeltins Complaints.

52.    No Bodily Injury is alleged by the plaintiffs in the Jackson, Lokenvitz, Collins, Ricklefs, Wood, Frerichs, Doolittle, Eyberg, Pierce, Landtiser, Kane, Andreasen and Aberbach Complaints.

## COUNT III

### Declaratory Judgment  (In the Alternative)

### No Coverage For Bodily Injury Occurring Outside The Policy Period
### (Business Owners Liability)

53.    Specialty National hereby incorporates by reference, as if set forth fully herein, Paragraphs 1 - 52 of this Complaint.

54.    The Business Owners Liability Coverage form provides coverage for Bodily Injury only if it occurs during the policy period of August 1, 2002 to August 1, 2003.

55.    If Bodily Injury is alleged by the plaintiffs, which SNIC disputes, any such Bodily Injury did not occur during the Specialty National policy period of August 1, 2002 to August 1, 2003.  Accordingly, the Business Owners Liability coverage part provides no coverage for the Underlying Suits.

## COUNT IV

### Declaratory Judgment

### Professional Services Exclusion (Business Owners Liability)

56.    Specialty National hereby incorporates by reference, as if set forth fully herein, Paragraphs 1 - 55 of this Complaint.

57.    The Business Owners Coverage Part also provides no coverage for the following:

"Bodily injury", "property damage", "personal injury", "advertising injury" due to rendering or failure to render any professional service.

58.    The Underlying Suits allege the rendering of a "Professional Service."  Because the Business Owners Liability coverage part provides no coverage for bodily injury, property damage, personal injury, advertising injury due to the rendering or failure to render any

Professional Service, the Business Owners Liability coverage part provides no coverage for the Underlying Suits.

## COUNT V

### Declaratory Judgment

### Expected/Intended Exclusion (Business Owners Liability)

59.     Specialty National hereby incorporates by reference, as if set forth fully herein, Paragraphs 1 - 58 of this Complaint.

60.     The Business Owners Liability coverage part provides no coverage for the following:

> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

61.     The Business Owners Liability coverage part provides no coverage for Bodily Injury or property damage that is expected or intended from the standpoint of the insured.  Any Bodily Injury that was expected or intended by English Brothers is not covered by the Business Owners Liability coverage part of the Policy.

## COUNT VI

### Declaratory Judgment

### No "Professional Incident" (Death Care Services Liability)

62.     Specialty National hereby incorporates by reference, as if set forth fully herein, Paragraphs 1 - 61 of this Complaint.

63.    The Insuring Agreement found in the Death Care Services coverage part provides, in relevant part, as follows:

  a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of a "professional incident" to which this insurance applies . . . This insurance applies to a "professional incident" only if it takes place:

    (1)    In the "coverage territory"; and

    (2)    During the policy period.

    .  .  .

  b.    Damages because of a "professional incident" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "professional incident."

64.    "Professional Incident" is defined by the Policy as follows:

  a.    Any professional malpractice, error or mistake which:

    (1)    Causes:

      (a)    Bodily injury, sickness, disease, death or mental anguish, including resulting loss of services . . .

    (2)    Arises out of, with respect to a "deceased human body":

      (a)    Embalming;
      (b)    Handling or disposition;
      (c)    Care, custody or control;
      (d)    Burial, disinterment or removal;
      (e)    A memorial service conducted by the insured, whether or not a body is present; or
      (f)    Injury to, or destruction of such body; or interference with the right of burial.

65.    The Underlying Suits do not allege any professional malpractice, errors or mistakes. Instead, all of the Complaints allege intentional and deliberate conduct, *i.e.*, intentionally forging documents; intentionally altering medical records and death certificates;

intentionally allowing the harvesting of body parts from corpses; and intentionally desecrating decedents' remains.

66.     Because no "Professional Incident" as defined by the Death Care Services coverage part is alleged by any of the plaintiffs, the Death Care Services coverage part provides no coverage for the Underlying Suits.

## COUNT VII

### Declaratory Judgment

### Violation of Law Exclusion (Death Care Services Liability)

67.     Specialty National hereby incorporates by reference, as if set forth fully herein, Paragraphs 1 - 66 of this Complaint.

68.     The Death Care Services coverage part excludes coverage for the following:

  a.     Any claim in connection with which an insured has knowingly:

  (1)     Violated any law or ordinance; or
  (2)     Committed any criminal act.

  This exclusion does not apply to an act:

  (1)     Done in good faith; or

  (2)     When requested by a public official who appears to have authority to require or permit such an act.

69.     The Death Care Services coverage part excludes coverage for any claims in connection with which an insured has knowingly violated any law or ordinance, or has committed any criminal act.

## COUNT VIII

### Declaratory Judgment

### No Coverage For Punitive Damages

70. Specialty National hereby incorporates by reference, as if set forth fully herein, Paragraphs 1 - 69 of this Complaint.

71. The Policy provides that the insurance "should not apply to a claim of, or indemnification for, punitive or exemplary damages, or any damages awarded pursuant to statute in the form of double, treble, or other multiple damages in excess of compensatory damages."

72. The plaintiffs in the Underlying Suits seek punitive damages.  The Policy provides no coverage for punitive damages.

## COUNT IX

### Declaratory Judgment

### Duty to Defend

73. Specialty National hereby incorporates by reference, as if set forth fully herein, Paragraphs 1 - 72 of this Complaint.

74. Specialty National has no duty to defend suits or claims that are not covered by the Policy.

75. As set forth in this Complaint, the Policy provides no coverage for the Underlying Suits under the Business Owners Liability coverage part.

76. As set forth in this Complaint, the Policy provides no coverage for the Underlying Suits under the Death Care Services coverage part.

77.    Because the Policy provides no coverage for the Underlying Suits under the Business Owners Liability or Death Care Services coverage parts, Specialty National has no duty to defend the Underlying Suits.

OTHER COVERAGE DEFENSES

78.    The allegations of this Complaint are based on Specialty National's investigation to date.    Other Policy terms and conditions may ultimately be implicated.    Nothing in this Complaint should be construed as a waiver by Specialty National of any other coverage defenses under the Policy, and Specialty National reserves the right to raise all other Policy terms and conditions as defenses to coverage as appropriate.

**WHEREFORE**, Plaintiff, Specialty National Insurance Company, prays that this Honorable Court enter judgment in Specialty National's favor for the reasons set forth herein, and that the Court makes the following findings of law:

(a)    That no "Occurrence" is alleged by the Underlying Suits under the Business Owners Liability coverage part of the Specialty National Policy;

(b)    That no "Bodily Injury" is alleged by the Underlying Suits;

(c)    That, even if Bodily Injury were alleged by the Underlying Suits, which SNIC disputes, no Bodily Injury occurred during the Specialty National policy period;

(d)    That the Underlying Suits allege the rendering of a Professional Service;

(e)    That the Business Owners Liability coverage part provides no coverage for bodily injury, property damage, personal injury, advertising injury due to the rendering or failure to render any Professional Service;

(f)    That the Business Owners Liability coverage part provides no coverage for the Underlying Suits because the Underlying Suits allege the rendering of a Professional Service;

(g)    That the Business Owners Liability coverage part provides no coverage for Bodily Injury that English Brothers expected or intended;

(h)  That the Death Care Services coverage part provides no coverage for the Underlying Suits because no Professional Incident is alleged by the Complaints;

(i)  That the Death Care Services coverage part excludes coverage for any claims in connection with which an insured has knowingly violated any law or ordinance, or has committed any criminal act;

(j)  That Specialty National has no duty to defend English Brothers regarding the Underlying Suits because the Policy provides no coverage for the allegations made against English Brothers under the Business Owners Liability or Death Care Services coverage parts;

(k)  That the Policy provides no coverage for punitive damages; and

(l)  For any other and further relief that this Honorable Court deems just and proper.

Dated: New York, New York
      August 24, 2007

                    Respectfully submitted,

                    Andrew Fluger, Esq. (AF 4246)
                    John H. Somoza, Esq. (JS 1801)
                    MELITO & ADOLFSEN P.C.
                    Attorneys for Plaintiff
                    Specialty National Insurance Company
                    233 Broadway, 28th Floor
                    New York, NY  10279
                    (212) 238-8900
                    -and-
                    Robert Brunner, Esq.
                    BOLLINGER, RUBERRY & GARVEY
                    Attorneys for Plaintiff
                    Specialty National Insurance Company
                    500 West Madison Street
                    Suite 2300
                    Chicago, Illinois 60661
                    (312) 466-8000

*58076*