UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
═══════════════════════════════════════

SPECIALTY NATIONAL INSURANCE CO.,

              Plaintiff,

v.

ENGLISH BROTHERS FUNERAL HOME,

              Defendant.

═══════════════════════════════════════

No. 1:07-cv-07507 (SHS)

**ELECTRONICALLY
FILED**

**MEMORANDUM OF LAW IN OPPOSITION TO SPECIALTY NATIONAL
INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND IN
SUPPORT OF ENGLISH BROS.' FUNERAL HOME'S CROSS-MOTION FOR
SUMMARY JUDGMENT**

# TABLE OF CONTENTS

Page

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     1

FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     3

    1.    The Criminal Scheme Orchestrated by
             Michael Mastromarino . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     3

    2.    The Underlying Civil Actions. . . . . . . . . . . . . . . . . . . . . . . . . .     3

    3.    English Bros. as a Target in the Underlying Civil Actions. . . .     4

    4.    English Bros.' Insurance Coverage, Including the
             Specialty National Policies at Issue. . . . . . . . . . . . . . . . . . . . . .     4

    5.    This Action. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     7

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     7

    1.    New York's Broad Duty to Defend . . . . . . . . . . . . . . . . . . . . . .     7

    2.    Each of the Complaints in the Underlying Actions
             Triggers the Duty to Defend . . . . . . . . . . . . . . . . . . . . . . . . . . .     9

    3.    Each of Specialty National's Arguments Is Invalid with
             Respect to the Duty to Defend. . . . . . . . . . . . . . . . . . . . . . . . . .     16

          a.    Specialty National's Brief Misrepresents the Nature
                 of the Claims Against English Bros . . . . . . . . . . . . . . .     16

          b.    Specialty National's Claim that the Underlying
                 Complaints Do Not Allege an Occurrence Is Both
                 Incorrect and Immaterial . . . . . . . . . . . . . . . . . . . . . . .     17

          c.    Specialty National's Argument that the Underlying
                 Complaints Do Not Allege "Bodily Injury" Ignores
                 New York Law and Its Own Policy Language . . . . . . .     18

          d.    Specialty National's Argument Regarding the Policy
                 Period Ignores Its Own Policy Language . . . . . . . . . . .     19

e.   In Addressing the Policies' Professional Liability Coverage, Specialty National Ignores the Language of Both the Policies and the Underlying Complaints. . 19

f.   Specialty National's Reliance on the "Professional Services" Exclusion Is Baseless. . . . . . . . . . . . . . . . . 21

4.   English Bros. Is Entitled to an Award of Attorneys' Fees as a Matter of Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## INTRODUCTION

This is an insurance coverage dispute that, as its backdrop, involves a sordid scheme to fraudulently obtain body parts from human cadavers and sell them to companies that distribute human tissue for medical use. Accounts of the scheme have received widespread media coverage, and several of the principal actors have recently been convicted and face long prison sentences for their roles in the scheme. Numerous civil lawsuits have been commenced in connection with the scheme. However, as unusual as its backdrop may be, this case is a simple liability insurance coverage dispute that raises no unique or novel factual or legal issues whatsoever. The question here is whether the insurance company must defend its insured in the underlying civil lawsuits. It requires the Court only to apply the policy language at issue to the language of the complaints in the underlying civil lawsuits.

Defendant Frank Restivo Funeral Home, Inc. d/b/a English Bros. Funeral Home (named in the caption as English Brothers Funeral Home) ("English Bros.") is a funeral home in Brooklyn operated by Frank Restivo. English Bros. has been targeted as a defendant in some (by no means all) of the underlying civil actions, along with, *inter alia*, the individual participants in the criminal scheme, other funeral homes, and the biomedical companies that distributed human tissue obtained through the scheme. English Bros. has been targeted as a defendant in the civil actions because, at one point in time, English Bros. leased space to a company owned by one of the individuals who has been indicted in connection with the scheme. Mr. Restivo, however, has never been arrested, charged, or indicted in connection with the scheme.

The underlying lawsuits in which English Bros. has been named as a defendant undeniably contain a host of claims for intentional and fraudulent conduct in connection with the body parts trafficking scheme. All of the complaints, however, also contain negligence-based causes of action that could, if proven, apply to English Bros. in connection with English Bros.' custody and control of bodies in its care. Plaintiff Specialty National Insurance Company ("Specialty National") is one of English Bros.' liability insurers for the period at issue. Specialty National has brought this action seeking a declaration that it has no duty to defend or indemnify English Bros. in connection with the civil lawsuits. In taking this position, Specialty National totally disregards the negligence-based claims in the underlying lawsuits, the language of its policies, and New York law regarding its duty to defend English Bros.

At this time when English Bros. most needs its insurance protection, when the survival of its business depends on its entitlement to insurance, Specialty National wants this Court to place its imprimatur on Specialty National's deliberate decision to walk away from English Bros. As set forth below, there is not a single factual or legal basis for Specialty National to seek to withdraw its defense of English Bros. It is clear that Specialty National's conduct has been motivated by the "macabre" nature of the underlying claims (as Specialty National describes it) and the negative publicity generated by the claims – regardless of whether any of those claims have any *bona fide* connection to English Bros. Specialty National's arguments for why it does not owe a defense to English Bros. are so patently without merit as to render its motion frivolous. With respect to this action, what is shocking is not the backdrop of the underlying claims,

but that Specialty National has the audacity to ask this Court to allow Specialty National to simply ignore its indisputable legal obligations to its insured.

## FACTS

### 1.    The Criminal Scheme Orchestrated by Michael Mastromarino

Michael Mastromarino was the apparent ringleader in a scheme to improperly obtain human tissue and bone from corpses to sell to legitimate companies in the business of distributing such materials for medical use. Mastromarino orchestrated the scheme through his company Biomedical Tissue Services. In March 2008, Mastromarino pled guilty in connection with the scheme and was sentenced to 18 to 54 years in prison in New York. See Delahunt Aff. Ex. 1.[1] Three of Mastromarino's associates also have been, or will be, criminally prosecuted in connection with the scheme. Christopher Aldorasi pled guilty in connection with the scheme and faces imprisonment in New York. Lee Cruceta was found guilty after trial in Brooklyn and faces imprisonment. Joseph Nicelli's trial has been delayed to due his health. See Delahunt Aff. Ex. 2.

### 2.    The Underlying Civil Actions

In addition to the criminal proceedings, the actions of Mastromarino and his associates have led to numerous civil lawsuits. As far as English Bros. understands, the civil lawsuits can be divided into two main types. In "donor" cases, the plaintiffs are family members of decedents whose bodies were allegedly tampered with without the knowledge or consent of the decedents and their families. In "implant" cases, the plaintiffs are living persons who, in connection with medical procedures, received tissue or other body parts from cadavers used in the scheme. The "implant" plaintiffs generally

---

[1]    Although it is the defendant here, English Bros. uses numbers rather than letters to identify its exhibits in order to more easily distinguish them from the exhibits attached to Specialty National's motion, which are identified by letter.

claim that they were implanted with (or may have been implanted with) unsafe body parts that were distributed in the course of scheme.

### 3.    English Bros. as a Target in the Underlying Civil Actions

English Bros. has been named as a defendant in several of the lawsuits against Mastromarino, Biomedical Tissue Services, and the other various defendants with some alleged connection to Mastromarino's scheme. English Bros. has been targeted as a defendant because some of the decedents in the "donor" cases were prepared for burial or cremation at English Bros., and because a company owned by an embalmer named Joseph Nicelli (an alleged Mastromarino associate) at one time leased space from English Bros. Mr. Restivo has not been arrested, charged, or indicted in connection with any criminal charge in connection with Mastromarino's scheme – a point to which Specialty National devotes all of one footnote (see Specialty Nat. Memo at 2, n. 1). See Restivo Aff. at ¶¶ 1-5.

### 4.    English Bros.' Insurance Coverage, Including the Specialty National Policies at Issue

For the periods potentially implicated by the civil "donor" and "implant" lawsuits, English Bros. has nine liability insurance policies. Four of the policies are excess/umbrella policies. The remaining five policies are primary insurance policies. For the period August 1, 2001 to August 1, 2003, English Bros. is insured under two primary liability policies issued by Specialty National. For the period August 1, 2003 to August 1, 2006, English Bros. is insured under three primary liability policies issued by Westport Insurance Corporation ("Westport"). See Restivo Aff. at ¶ 6. Both Westport and Specialty National have acknowledged a duty to defend English Bros. in connection with the civil actions, and both have retained defense counsel for English Bros. under

various reservations of rights. See Restivo Aff. at ¶¶ 7-8; Delahunt Aff. Ex. 3; Ex. 4.[2]

The difference between the two insurers is that Westport has not disputed its ongoing

obligation to defend English Bros. See Restivo Aff. at ¶ 7. Specialty National, in

contrast, has brought this action seeking a declaration that it does not have an obligation

to defend English Bros., and will, if this Court permits, withdraw its defense of English

Bros.

Thus, the two policies at issue in this action are the two primary policies issued by

Specialty National to English Bros. The first policy was issued under policy number

3XZ17069400 for the period August 1, 2001 to August 1, 2002 ("the 2001-2002

policy").[3]  The second policy was issued under policy number 3XZ17069401 for the

period August 1, 2002 to August 1, 2003 ("the 2002-2003 policy"). See Delahunt Aff.

Ex. 5. For purposes of this case, the relevant language of the two policies is identical.

Both policies are specialized products specifically tailored to provide liability protection

to funeral homes. Both policies contain a "Death Care Services Professional Liability

Coverage" form. The form provides unique protections for funeral home businesses not

found in the standard form commercial general liability policy. The form states, in

relevant part:

DEATH    CARE    SERVICES    PROFESSIONAL
LIABILITY

1.    Insuring Agreement

---

[2]    These are the only reservation of rights letters from Specialty National in English Bros.'
possession. If other reservation of rights letters have been issued, they are in the possession of Specialty
National. See Restivo Aff. at ¶ 8.

[3]    English Bros. is not in possession of a copy of this policy. However, the 2002-2003 policy
attached to Specialty National's motion is a renewal of the 2001-2002 policy. English Bros. therefore
assumes that the coverages of the two policies are identical for purposes of this motion. See Restivo Aff. at
¶ 9.

a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of a "professional incident" to which this insurance applies . . .

We will have the right and duty to defend any "suit" seeking those damages . . .

See Delahunt Aff. Ex. 5.

The form defines "professional incident," in relevant part, as:

a.   Any professional malpractice, error or mistake which:

(1)   Causes:

(a)   Bodily injury, sickness, disease, death or mental anguish, including resulting loss of services; or

(b)   Injury to, or destruction of property of others which is not in the insured's case, custody or control, including loss of use; and which

(2)   Arises out of, with respect to a "deceased human body":

(a)   Embalming;

(b)   Handling or disposition;

(c)   Care, custody or control;

(d)   Burial disinterment or removal;

(e)   A memorial service conducted by the insured, whether or not a body is present; or

(F)   Injury to, or destruction of such body; or interference with the right of burial.

       b.     Any performance or nonperformance of an "insured contract," but only with respect to resulting mental anguish.

Id.

**5.      This Action**

Specialty National commenced this action on August 24, 2007 in order to obtain a declaration that it has no duty to defend English Bros. in any of the underlying actions, and that it may seek to immediately withdraw its defense of English Bros. See Delahunt Aff. Ex. 7. On December 11, 2007, English Bros. filed its answer and a counterclaim for bad faith against Specialty National.[4] See Delahunt Aff. Ex. 8. Discovery with respect to the duty to defend issue is complete, and both parties now seek summary judgment.

## ARGUMENT

**1.      New York's Broad Duty to Defend**

As recognized by the Second Circuit Court of Appeals, "[t]he 'exceedingly broad' contours of an insurer's duty to defend have been articulated clearly and repeatedly by the New York Court of Appeals." Century 21, Inc. v. Diamond State Ins. Co., 442 F.3d 79, 82 (2d Cir. 2006).

> It is well settled that an insurance company's duty to defend is broader than its duty to indemnify. Indeed, the duty to defend is "exceedingly broad" and an insurer will be called upon to provide a defense whenever the allegations of the complaint "suggest a reasonable possibility of coverage." "If, liberally construed, the claim is within the embrace of the policy, the insurer must come forward to defend its insured no matter how groundless, false or baseless the suit may be." The duty remains "even though facts outside the four corners of the pleadings indicate that the claim may be meritless or not covered."

---

[4]    English Bros. does not seek summary judgment on its counterclaim. Should English Bros. prevail on summary judgment with respect to the duty to defend issue, it will agree to dismiss the bad faith claim without prejudice.

Auto. Ins. Co. of Hartford v. Cook, 7 N.Y.3d 131, 137, 818 N.Y.S.2d 176 (2006) (citations omitted).

"[A] defense obligation may be avoided only where there is 'no possible factual or legal basis' on which an insurer's duty to indemnify under any provision of the policy could be held to attach." Century 21, 442 F.3d at 82-83, citing Servidone Constr. Corp. v. Security Ins. Co. of Hartford, 64 N.Y.2d 419, 424, 488 N.Y.S.2d 139 (1985).

New York views liability insurance policies as providing two distinct benefits. The first is the duty to indemnify. The second is the duty to defend, which the New York Court of Appeals has likened to "litigation insurance." Cook, 7 N.Y.3d at 137. The fact that it is possible, or even likely, that the insurance company will ultimately have no duty to indemnify the insured is immaterial to the scope of the duty to defend. "[A]n insurer may be required to defend under the contract even though it may not be required to pay once the litigation has run its course." Cook, 7 N.Y.3d at 137. "In other words, a separate contractual duty to defend exists, and perdures until it is determined *with certainty* that the policy does not provide coverage." Century 21, 449 F.3d at 83 (emphasis in original; citation omitted).

Furthermore, if only one claim in a complaint triggers a duty to defend, the duty extends to all claims. See Seaboard Sur. Co. v. Gillette Co., 64 N.Y.2d 304, 486 N.Y.S.2d 873 (1984) ("The duty is not contingent on the insurer's ultimate duty to indemnify should the insured be found liable, nor is it material that the complaint against the insured asserts additional claims which fall outside the policy's general coverage or within its exclusory provisions. Rather, the duty of the insurer to defend the insured rests

solely on whether the complaint alleges any facts or grounds which bring the action within the protection purchased.").

Where an insurer attempts to avoid the duty to defend based on an exclusion, it has the burden of proof, and it is a heavy burden. "When an insurer seeks to disclaim coverage on the further basis of an exclusion . . ., the insurer will be required to 'provide a defense unless it can "demonstrate that the allegations of the complaint cast that pleading solely and entirely within the policy exclusions, and, further, that the allegations, in toto, are subject to no other interpretation."'" Cook, 7 N.Y.3d at 137 (citation omitted).

## 2. Each of the Complaints in the Underlying Actions Triggers the Duty to Defend

Specialty National's position that it has no duty to defend English Bros. in the underlying actions is unfathomable. Specialty National's complaint refers to seventeen suits against English Bros.[5] The complaint in each suit obviously contains claims that fall within the scope of the duty to defend.

**Zeltins.** Zeltins is venued in New York Supreme Court, Kings County. See Specialty Nat. Ex. G.[6] English Bros. is one of at least seventeen defendants in the action, along with several other funeral homes. Zeltins is a "donor" case. Count I of the complaint is for negligent infliction of emotional distress. See Specialty Nat. Ex. G at

---

[5]     From English Bros.' records, it appears that Westport, not Specialty National, is defending several of these suits on behalf of English Bros. Regardless, English Bros. addresses all of the suits since Specialty National has a legal duty to defend English Bros. in connection with each of them. If Specialty National and Westport come to some agreement regarding a division of suits for purposes of defending them, the details of such an agreement are of no concern to English Bros. so long as it receives all of the coverage to which it is entitled.

[6]     For the sake of convenience, English Bros. does not separately attach each of the underlying complaints to its motion, and shall instead refer to Specialty National's exhibit references for each complaint.

¶¶ 52-56.  At a minimum, this is a covered claim for purposes of the duty to defend.  In New York, emotional distress constitutes a covered bodily injury for purposes of liability insurance.  See Lavanant v. General Accident Ins. Co., 79 N.Y.2d 623, 584 N.Y.S.2d 744 (1992).  For purposes of the duty to defend, the analysis can stop here.  The presence of one claim for which there is a duty to defend requires Specialty National to defend English Bros. with respect to all claims in the Zeltins complaint.

But further review of the Zeltins complaint shows a multitude of covered claims and allegations for purposes of the duty to defend, reflecting the sheer baselessness of Specialty National's position.  Count III is a negligence claim that alleges, *inter alia*, that defendants "were engaged in some manner in the business of caring for or preparing corpses for burial, interment, or cremation . . ."  See Ex. Specialty Nat. Ex. G at ¶ 63.  It also alleges defendants "negligently and carelessly cared for the corpses of Plaintiffs' decedents . . ."  Id. at ¶ 64.  Of course, English Bros.' business was to care for and preserve the bodies for burial, cremation, *etc*.  Although the Zeltins complaint alleges numerous claims of intentional wrongdoing (not necessarily directed at English Bros.), Specialty National completely ignores the fact that many of the claims against the numerous defendants sound in negligence.  Although English Bros. denies any wrongdoing whatsoever, it is obvious upon one reading of the Zeltins complaint that English Bros. could conceivably be found negligent in caring for bodies in its trust without any concomitant finding of intentional wrongdoing against it.

**Olivio**.  The Olivio suit is based on the same complaint as Zeltins (the action was nominally filed as a class action).  See Ex. Specialty Nat. Ex. G.  Specialty National

therefore has a duty to defend English Bros. in connection with <u>Olivio</u> for all of the same reasons it has such a duty in connection with <u>Zeltins</u>.

**<u>Bruno</u>**. <u>Bruno</u> is venued in New York Supreme Court, Kings County. See Specialty Nat. Ex. D. <u>Bruno</u> is a "donor" case in which English Bros. is one of at least four defendants. The <u>Bruno</u> complaint expressly alleges negligence against defendants. Among other claims, the complaint specifically alleges negligence in connection with defendants' "ownership, operation, management, maintenance, control, supervision and inspection" of English Bros. funeral home. <u>Id</u>. at ¶ 51. The allegations include negligently "failing to take suitable and proper precautions for the care of decedent's body; in failing to perform the proper burial, as contracted for, and in being otherwise negligent and careless." <u>Id</u>. Clearly, it is conceivably possible based on the allegations of the <u>Bruno</u> complaint that English Bros. could be held liable for negligently operating its funeral home without a concomitant finding of intentional wrongdoing (even if other defendants may be found to have committed intentional torts). Also, the complaint alleges emotional distress (<u>id</u>. at ¶¶ 51, 53), which, as noted above, is a covered bodily injury under the policy. See <u>Lavanant</u>, *supra*, 79 N.Y.2d 623 (1992).

**<u>Kogut</u>**. <u>Kogut</u> is another action venued in Supreme Court, Kings County. See Specialty Nat. Ex. E. The complaint was drafted by the same law firm that drafted the <u>Bruno</u> complaint, and the allegations and claims in <u>Kogut</u> are essentially identical to those in <u>Bruno</u>. Specialty National therefore has a duty to defend English Bros. in <u>Kogut</u> for all the same reasons it has such a duty in <u>Bruno</u>.

**<u>Enright</u>**. <u>Enright</u> is another action venued in Supreme Court, Kings County. See Specialty Nat. Ex. C. <u>Enright</u> is an "donor" case. English Bros. is one of at least four

defendants.    The Enright complaint alleges defendants negligently caused plaintiff to suffer emotional distress.  Id. at ¶¶ 57-60.  Accordingly, for the same reasons set forth with respect to the other actions described above, Specialty National is obligated to defend English Bros. in Enright.

**Jackson**.  Jackson was originally brought in the United States District Court for the District of New Jersey.[7]  See Specialty Nat. Ex. F.  English Bros. is one of at least eight defendants.  Jackson is an "implant" case.  Among other claims and allegations that fall within the duty to defend, the Jackson complaint expressly pleads a claim for negligence (id. at ¶¶ 56-61), negligent misrepresentation (id. at ¶¶ 62-67), and negligent infliction of emotional distress (id. at ¶¶ 105-108).  As with the other suits described above, the presence of these claims triggers Specialty National's duty to defend English Bros.

**Lokenvitz**.  Lokenvitz was originally brought in the United States District Court for the Northern District of Iowa.  See Specialty Nat. Ex. H.  Lokenvitz is an "implant" case.  English Bros. is one of at least eight defendants.  Among other claims and allegations that fall within the duty to defend, the Lokenvitz complaint expressly pleads a cause of action for negligence, negligent misrepresentation, and negligent infliction of emotional distress.  Id. at ¶¶ 55-66, 97-100.  As with the other suits described above, the presence of these claims triggers Specialty National's duty to defend English Bros.  The complaints in the **Collins**, **Ricklefs**, **Wood**, **Frerichs**, **Oberender-Doolittle**, **Eyberg**, **Pierce**, **Landtiser**, **Kane**, and **Andreasen** actions were drafted by the same law firm

---

[7]       It is believed that all federal cases involving Mastromarino's alleged wrongdoings in connection with tissue harvesting (including all of those cases naming English Bros. as an additional defendant) have been consolidated in the United States District Court for the District of New Jersey by the Judicial Panel on Multidistrict Litigation.  See In re Human Tissue Products Liability Litigation, 435 F. Supp. 2d 1352 (M.D.L. 2006).

representing the plaintiff in Lokenvitz, and are materially the same for purposes of this action. See Specialty Nat. Ex. I; Ex. J; Ex. K; Ex. L; Ex. M; Ex. N; Ex. O; Ex. P; Ex. Q; Ex R. Specialty National thus has an obligation to defend English Bros. in each of those actions.

Finally, the **Aberbach** action is venued in Supreme Court, Kings County. See Specialty Nat. Ex. S. English Bros. is one of at least twelve defendants. Aberbach is an "implant" case. Among other claims and allegations that fall within the duty to defend, the Aberbach complaint expressly pleads a cause of action for negligence and negligent infliction of emotional distress against English Bros. Id. at ¶¶ 74-80, 104-105. The negligence cause of action specifically alleges, *inter alia*, that English Bros. negligently "fail[ed] to impose safeguards established by Federal, State and Local laws to prevent the unauthorized removal of cadavers entrusted to defendants." Id. at ¶ 77. As with the other suits described above, the presence of these claims triggers Specialty National's duty to defend English Bros.

Of course, it is true that all of the underlying complaints allege causes of action for intentional wrongs in addition to the various negligence claims. But the presence of causes of action that, if prevailed upon, would not likely trigger the duty to indemnify is simply immaterial for purposes of the duty to defend if the complaints also allege claims premised on claims for which there might be a duty to indemnify, *i.e.*, negligence claims. Furthermore, each of the underlying actions names multiple defendants but does not necessarily distinguish which claims will actually be directed against which defendants. For example, given the criminal convictions of Mastromarino, Cruceta, and Aldorasi, and the nature of those crimes, it seems obvious that the most serious allegations and claims

will be pursued against those defendants.  However, with respect to the funeral home defendants (including English Bros.) and the medical company defendants, it would appear likely that the claims most likely to be actually pursued at trial are the negligence claims.  But it is unnecessary to even draw this distinction since the duty to defend analysis stops as soon as one claim within the duty to defend is located – regardless of its legal or factual merits.

Specialty National's position that it owes no defense to English Bros. is not only inconsistent with the law, it is inconsistent with the very nature of its policies.  As noted above, the English Bros. policies were issued as a part of "program" under which Specialty National underwrote policies specifically drafted for and marketed to funeral homes.  The policies contain specially drafted language that provides funeral homes with coverage that is simultaneously specialized and broad.  As set forth above, the policies define "professional incident" as:

  a.    Any professional malpractice, error or mistake which:

    (1)    Causes:

      (a)    Bodily injury, sickness, disease, death or mental anguish, including resulting loss of services; or

      (b)    Injury to, or destruction of property of others which is not in the insured's case, custody or control, including loss of use; and which

    (2)    Arises out of, with respect to a "deceased human body":

      (a)    Embalming;

      (b)    Handling or disposition;

(c)    Care, custody or control;

(d)    Burial disinterment or removal;

(e)    A memorial service conducted by the insured, whether or not a body is present; or

(F)    Injury to, or destruction of such body; or interference with the right of burial.

See Delahunt Aff. Ex. 5.

English Bros. has been targeted as a defendant in the underlying actions based on allegations that English Bros. negligently allowed Mastromarino and others to illegally remove and sell body parts from bodies entrusted to English Bros.  The policy language quoted above expressly includes liability arising out of "embalming," "handling or disposition," and/or "care, custody, or control" of bodies in English Bros.' care.  These are the very activities for which English Bros. is being targeted as a defendant in the underlying actions (of course, English Bros. denies any and all wrongdoing in connection with the underlying actions).  Specialty National's position in this case requires the Court to flat-out ignore Specialty National's own insuring language.

As discussed below, Specialty National asserts multiple arguments why it does not owe a defense to English Bros., none of which remotely have legal merit.  It causes one to wonder regarding the real reason Specialty National is attempting to withdraw its defense of English Bros.  Perhaps Specialty National wishes to avoid paying defense counsel in light of the fact that English Bros. has been named as a defendant in multiple suits.  Perhaps Specialty National figured that English Bros., a small, family business with few assets, would not be able to oppose Specialty National's coverage action.

Perhaps most likely, Specialty National did not want to have anything to do with the claims against English Bros. given the horrendous conduct of Mastromarino and his associates, and given the publicity the case against them has generated. Of course, none of these reasons is legitimate, and all would, if true, reflect bad faith on the part of Specialty National. But perhaps the most distressing aspect of Specialty National's conduct is that it marketed and sold its specialty policies to English Bros., yet, when English Bros.' need for its insurance is at its peak, when claims against it threaten its existence, Specialty National is seeking to walk away. It is an insurance company's prerogative to do so when there are valid legal and factual reasons to support it. It is simply wrong where, as here, the duty to defend cannot reasonably be disputed.

**3.    Each of Specialty National's Arguments Is Invalid with Respect to the Duty to Defend**

In its memorandum of law, Specialty National offers several nominal arguments why it does not have a duty to defend English Bros. Simply stated, the arguments offered by Specialty National reflect bad faith towards its insured.

**a.    Specialty National's Brief Misrepresents the Nature of the Claims Against English Bros.**

Specialty National's brief begins by providing ten pages of purported summaries of the complaints in the underlying actions. See Specialty Nat. Memo. at 2-12. The purported summaries are a farce. Each of the summaries notes the intentional torts alleged against all of the defendants in each action, but makes no mention whatsoever of the fact that each and every complaint contains at least one negligence-based cause of action against English Bros. that falls within the duty to defend. Specialty National's tactic has two possible explanations. Either Specialty National does not understand that

16

the law of the duty to defend in New York requires it to consider all claims and allegations in the underlying complaints, or Specialty National is intentionally mischaracterizing the underlying claims for purposes of its motion. But the difference is immaterial. Specialty National cannot disregard the covered claims against English Bros., whether by ignorance or design.

### b.   Specialty National's Claim that the Underlying Complaints Do Not Allege an Occurrence Is Both Incorrect and Immaterial

Specialty National argues there is no duty to defend under the policies' liability coverage because no "occurrence" is alleged in the underlying complaints. See Specialty Nat. Memo. at 14-17. First, this is incorrect as a matter of law. The underlying actions each allege negligence causes of action against English Bros. As such, it remains possible that there could be a duty to indemnify English Bros. if it is held liable for conduct that falls with the policies' definition of "occurrence." However, this cannot be known until the underlying actions are resolved and there are findings of fact to consider. See Spoor-Lasher Co., Inc. v. Aetna Cas. & Sur. Co., 39 N.Y.2d 875, 386 N.Y.S.2d 221 (1976); First State Ins. Co. v. J&S United Amusement Corp., 67 N.Y.2d 1044, 504 N.Y.S.2d 88 (1986). For example, although English Bros. denies all allegations of wrongdoing, it is theoretically possible that English Bros. could be held liable for conduct such as negligently failing to properly secure bodies in its care, or negligently hiring individuals who conspired with Mastromarino, or negligently failing to properly complete and maintain records. All of these types of conduct could fall within the

embrace of the negligence causes of action against English Bros., and all of them could constitute accidental conduct within the scope of the policies' definition of "occurrence."[8]

Second, Specialty National's argument focuses on the "Businessowners Liability Coverage Form" in the policies. See Specialty Nat. Ex. T (BP 00 06 01 97). Specialty National ignores the coverage most directly implicated by the underlying actions, i.e., the policies' "Death Care Services Professional Liability Coverage." See Delahunt Aff. Ex. 5 (BOP 132 (12/00)). This is the coverage that applies to professional liability claims against English Bros. The professional liability coverage is not occurrence-based at all. It instead requires allegations of a "professional incident." As set forth above, each of the underlying complaints allege conduct that clearly falls within the definition of "professional incident."

In short, Specialty National's argument that the underlying actions do not allege an occurrence is doubly baseless. It is incorrect, and it is immaterial.

    **c.**    **Specialty National's Argument that the Underlying Complaints Do Not Allege "Bodily Injury" Ignores New York Law and Its Own Policy Language**

Specialty National argues that none of the underlying actions allege "bodily injury." See Specialty Nat. Memo. at 17-18. In making this argument, Specialty National ignores the fact that each and every plaintiff in the underlying actions alleges emotional distress. In New York, emotional distress falls within the definition of "bodily injury" for purposes of liability coverage. See Lavanant, supra, 79 N.Y.2d 623 (1992). Specialty National fails to cite Lavanant or suggest how it might be distinguishable from this case.

---

[8]    For these same reasons, Specialty National's further argument that there is no duty to defend based on the policies' "expected/intended" exclusion (see Specialty Nat. Memo. at 19-20) is also baseless.

But not only does Specialty National's argument disregard Court of Appeals precedent, it ignores its own policies. The policies' "Death Care Services Professional Liability Coverage" expressly applies to "mental anguish." <u>See</u> Delahunt Aff. Ex. 5 (BOP 132 (12/00)).

###### d.    Specialty National's Argument Regarding the Policy Period Ignores Its Own Policy Language

Specialty National argues that none of underlying actions allege "bodily injury" within the covered policy periods. <u>See</u> Specialty Nat. Memo. at 18-19. The argument has numerous fatal deficiencies. However, it is enough to note that, again, Specialty National entirely ignores the coverage most at issue in this case, the policies' "Death Care Services Professional Liability Coverage." <u>See</u> Delahunt Aff. Ex. 5 (BOP 132 (12/00)). This coverage is not triggered by "bodily injury," but by a "professional incident." So long as the alleged "professional incident" occurred during the policy period, the duty to defend is triggered.

###### e.    In Addressing the Policies' Professional Liability Coverage, Specialty National Ignores the Language of Both the Policies and the Underlying Complaints

When Specialty National does finally address the policies' "Death Care Services Professional Liability Coverage," it devotes less than two pages. <u>See</u> Specialty Nat. at 20-22. Tellingly, Specialty National's brief does not bother to set forth the complete definition of "professional incident." This is because it cannot be reasonably disputed that each of the underlying complaints contains multiple allegations that might fall within the definition of "professional incident." As set forth above, the policies define "professional incident" as:

a.  Any professional malpractice, error or mistake which:

    (1)  Causes:

        (a)  Bodily injury, sickness, disease, death or mental anguish, including resulting loss of services; or

        (b)  Injury to, or destruction of property of others which is not in the insured's case, custody or control, including loss of use; and which

    (2)  Arises out of, with respect to a "deceased human body":

        (a)  Embalming;

        (b)  Handling or disposition;

        (c)  Care, custody or control;

        (d)  Burial disinterment or removal;

        (e)  A memorial service conducted by the insured, whether or not a body is present; or

        (F)  Injury to, or destruction of such body; or interference with the right of burial.

See Delahunt Aff. Ex. 5.

All of the underlying complaints allege that English Bros. was negligent in its care, custody, and control of the bodies at issue. In its brief, Specialty National states that "the lawsuits allege only intentional and willful conduct, as well as malice and fraud." Specialty Nat. Memo. at 21. This is patently false, and it is inconceivable how Specialty National can make such a representation.

**f.    Specialty National's Reliance on the "Professional Services" Exclusion Is Baseless**

Specialty National also argues that the policies' "professional services" exclusion applies to the policies' professional liability coverage.  <u>See</u> Specialty Nat. Memo. at 21-22.  This is another audacious argument.  The "professional services" exclusion is located in and applies to the policies "Businessowners Liability Coverage Form."  <u>See</u> Specialty Nat. Ex. T (BP 00 06 01 97).  The "Death Care Services Professional Liability Coverage" form contains its own exclusions, which obviously do not include a "professional services" exclusion.  The "Exclusions" section of the "Businessowners Liability Coverage Form" expressly states that the listed exclusions are "Applicable To Business Liability Coverage."  <u>Id</u>.  There is no indication or basis to apply the exclusions to any other part of the policy.  Furthermore, the entire premise of the "Death Care Services Professional Liability Coverage" is to insure against liability for "professional malpractice."  Unless English Bros. fails to understand some nuance in the argument, it appears Specialty National's position is that the policies' professional liability coverage is subject to the exclusion for professional services, leaving no coverage at all under the "Death Care Services Professional Liability Coverage" form.

**4.    English Bros. Is Entitled to an Award of Attorneys' Fees as a Matter of Law**

As Specialty National acknowledges, English Bros. is entitled to an award of attorneys' fees if it prevails.  <u>See</u> Specialty Nat. Memo. at 25 (citing <u>Mighty Midgets v. Centennial Ins. Co.</u>, 47 N.Y.2d 12, 416 N.Y.S.2d 559 (1979)).  English Bros. therefore asks the Court to grant it an award of attorneys fees' incurred in this action in securing its right to a defense from Specialty National.  Upon summary judgment in its favor, English

Bros. shall provide all necessary documentation of its legal bills to Specialty National for payment, and/or will proceed as the Court otherwise directs.

## CONCLUSION

For all the reasons set forth above, English Bros. requests that Specialty National's motion for summary judgment be denied in its entirety, and that English Bros.' cross-motion for summary judgment and attorneys' fees be granted.

Dated:  June 6, 2008

<div style="margin-left:auto;">

Respectfully submitted,

KENNEY SHELTON LIPTAK NOWAK LLP


By:                    /s/
         Timothy E. Delahunt (TD-2791)

510 Rand Building
14 Lafayette Square
Buffalo, New York 14203
Tel.:  (716) 853-3801
Fax:  (716) 853-0265
E-Mail:  tedelahunt@kslnlaw.com

*Attorneys for defendant English Bros. Funeral Home*

</div>