IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Specialty National Insurance Company, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:07-cv-07507 (SHS) |
| | ) | |
| English Brothers Funeral Home, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF SPECIALTY NATIONAL INSURANCE COMPANY'S
JOINT OPPOSITION TO DEFEDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT AND
<u>REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

**Page**

I. SPECIALTY NATIONAL DOES NOT MISREPRESENT THE NATURE OF THE CLAIMS BROUGHT AGAINST ENGLISH BROTHERS ...................................................2

II. EVEN IF A COMPLAINT CONTAINS ALLEGATIONS OF NEGLIGENCE, NO DUTY TO DEFEND IS TRIGGERED IF THE COMPLAINT IS PREMISED ON INTENTIONAL KNOWING CONDUCT ........................................................................................4

III. WHETHER AN "OCCURRENCE" IS ALLEGED BY THE UNDERLYING SUITS IS MATERIAL TO WHETHER COVERAGE IS TRIGGERED ...................................................6

IV. NO "BODILY INJURY" IS ALLEGED UNDER THE BUSINESS OWNERS LIABILITY COVERAGE FORM ............................................................................... 8

V. NO "BODILY INJURY" TOOK PLACE DURING THE POLICY PERIOD UNDER THE BUSINESS OWNERS LIABILITY COVERAGE FORM ..................................................9

VI. ENGLISH BROTHERS DOES NOT CHALLENGE THE ARGUMENT THAT AN EXPECTED/INTENDED EXCLUSION PRECLUDES COVERAGE UNDER THE BUSINESS OWNERS LIABILITY COVERAGE FORM........................................ 10

VII. NO COVERAGE IS AFFORDED UNDER THE DEATH CARE SERVICES COVERAGE PART BECAUSE NO "PROFESSIONAL INCIDENT" IS ALLEGED .................................................................................................11

VIII. CONCLUSION .............................................................................................12

# **TABLE OF AUTHORITIES**

**Cases**

*Acorn Ponds, Inc. v. Hartford Ins. Co.*,
105 A.D.2d 723, 481 N.Y.S.2d 392, (2d Dept. 1984) ...................................................................... 10

*Allstate Ins. Co. v. Mugavero*,
79 N.Y.2d 153, 589 N.E.2d 365 (N.Y. Ct. App. 1992) .................................................................. 5, 7, 8

*Atlantic Mut. Ins. Co. v. Terk Technologies Corp.*,
309 A.D.2d 22, 763 N.Y.S.2d 56 (1st Dept. 2003) ............................................................ 3, 5, 6, 7, 8

*Bingham v. Atlantic Mut. Ins. Co.*,
215 A.D.2d 315, 626 N.Y.S2d 807 (1st Dept. 1995) ........................................................................ 5

*Commercial Union Assurance Co., PLC v. Oak Park Marina, Inc.*,
198 F.3d 55, 60 (2d Cir. 1999) ....................................................................................................... 10

*Contracting Plumbers' Cooperative Restoration Corp. v. Hartford Accident andIndemnity Co.*,
59 A.D.2d 921, 399 N.Y.S.2d 255, (2d Dept. 1977) ......................................................................... 5

*County of Columbia v. Continental Ins. Co.*,
189 A.D.2d 391, 595 N.Y.S.2d 988, (3d Dept. 1993) ............................................................... 5, 6, 7

*First Investors Corp. v. Liberty Mut. Ins. Co.*,
152 F.3d 162 (2d Cir. 1998) ........................................................................................................ 8, 9

*Gibbs v. CNA Ins. Cos.*,
263 A.D.2d 836, 693 N.Y.S.2d 720 (3d Dept. 1999) ..................................................................... 5, 8

*HPF, L.L.C. v. General Star Indem. Co.*,
338 Ill. App. 3d 912, 918 (Ill. App. Ct. 2003) ................................................................................... 9

*Miccio v. National Surety Corp.*,
180 A.D.2d 937, 566 N.Y.S.2d 760, 762 (3d Dept. 1991) .............................................................. 10

*Miller v. O'Bryan*,
498 F. Supp. 2d 548 (D.N.Y. 2007) ................................................................................................ 12

*New York Cas. Ins. Co v. Ward*,
139 A.D.2d 922, 527 N.Y.S.2d 913 (1988) .................................................................................. 5, 8

*Home Ins. Co. v. Lapi*,
192 A.D.2d 927, 596 N.Y.S.2d 885 (3d Dept. 1993) ....................................................................... 5

*Swan v. Travelers Property Cas. Co.*,
360 F. Supp. 2d 582, 589 (S.D.N.Y. 2005). ......................................................................8, 11

*Village of Sylvan Beach v. Travelers Indem. Co.*,
55 F.3d 114, 115-116 (2d Cir. 1995)..................................................................................12

Plaintiff, Specialty National Insurance Company ("Specialty National" or "Specialty"), by and through its undersigned counsel, and for its Joint Opposition to Defendant English Brothers Funeral Home's ("English Brothers") Cross-Motion for Summary Judgment and Reply in Support of Specialty's Motion for Summary Judgment states as follows:

## I. SPECIALTY NATIONAL DOES NOT MISREPRESENT THE NATURE OF THE CLAIMS BROUGHT AGAINST ENGLISH BROTHERS

In its Response Brief,[1] English Brothers asserts that Specialty National has misrepresented the nature of the claims brought against English Brothers. This is incorrect, as the Underlying Suits[2] make very clear that the nature of the allegations alleged in each and every lawsuit brought against English Brothers is an intentional illegal scheme to harvest body parts where English Brothers was a party. Indeed, English Brothers itself admits exactly what the underlying lawsuits are all about: a fraudulent scheme to harvest body parts from the deceased whose family members entrusted their loves ones to the care and custody of English Brothers. For example, English Brothers admits that the allegations in the underlying lawsuits lay out "a sordid scheme to fraudulently obtain body parts from human cadavers and sell them to companies that distribute human tissue for medical use." See Response Brief, p. 1. English Brothers further admits that many of the people who were involved in this scheme have been criminally convicted and will face significant jail time for their actions. Id.[3] These allegations,

---

[1] The opposition papers filed by English Brothers in response to Specialty National's Motion for Summary Judgment will be referred to as the "Response Brief."

[2] The "Underlying Suits" refers to the lawsuits brought against English Brothers that are summarized in Specialty's Motion for Summary Judgment. Copies of the Underlying Suits are attached as Exhibits C through S to Specialty's Motion for Summary Judgment.

[3] According to the Underlying Suits, Michael Mastomarino ("Mastromarino") and Joseph Nicelli ("Nicelli") formed Biomedical Tissue Services, Ltd. ("BTS") for the purpose of harvesting human tissue, bone, and organs from human corpses for resale to commercial tissue, bone and organ processors. Mastromarino, Nicellli and Lee Crucetta ("Crucetta") (who was associated with BTS as the lead "cutter" of body parts) were indicted for their involvement with the harvesting, and the reselling of same. Mastromarino has pled guilty to all counts and faces up to 54 years in

2

coupled with the fact that the key allegations directed against English Brothers is that it forged documents that allowed the harvesting of the decedents' remains (including consent forms and medical records), clearly show that the crux of the Underlying Suits is intentional, fraudulent conduct.

Despite such admissions, English Brothers argues that coverage is afforded for these lawsuits given that the plaintiffs include allegations of negligence against English Brothers. No matter how the counts or allegations in a lawsuit are styled, however, it is clear that the factual basis for each and every allegation against English Brothers is <u>intentional</u> conduct. Examining the true nature of the allegations (and not how they may or may not be styled) provides the basis for determining an insurer's duty to defend. *Atlantic Mut. Ins. Co. v. Terk Technologies Corp.*, 309 A.D.2d 22, 32, 763 N.Y.S.2d 56, 64 (1st Dept. 2003).

In order to accept English Brothers' position (and create coverage under the Specialty National policy) this Court would have to find that it is possible for English Brothers to have "negligently" forged documents that allowed the harvesting of the decedents' remains;[4] "negligently" handed over bodies to BTS knowing that BTS would be harvesting the bodies' organs illegally; "negligently" forged and altered medical records and death certificates to hide the fact that certain decedents who died of AIDS, cancer or syphilis did not have these conditions; and "negligently" desecrated the decedents' remains. Indeed, in order for English Brothers to succeed in this case, this Court would have to ignore the true nature of the allegations

---

prison. Crucetta pled guilty to conspiracy, taking part in a corrupt organization, abuse of a corpse, and 244 counts of theft and forgery.

[4] It is, of course, impossible to "negligently" forge a document. Black's Law Dictionary defines "forgery" as "1. The act of fraudulently making a false document or altering a real one to be used as if genuine. . . . 2. A false or altered document made to look genuine by someone with <u>intent to deceive</u>." Black's Law Dictionary 677 (8th ed. 2004) (emphasis added); *see also Bobb v. United States AG*, 458 F.3d 213, 219 (3d Cir. 2006) ("forgery requires an intent to defraud").

against English Brothers which involve a macabre scheme of intentionally harvesting body parts from cadavers located on a premises owned by English Brothers.

At the heart of English Brothers' case is that they simply did not know that illegal body harvesting was taking place at their funeral home.[5] To support its position, English Brothers now asserts that it leased space to Regional Funeral Service, which was supposedly owned by Joseph Nicelli, who has been indicted in connection with the illegal scheme.[6] Ignored by English Brothers is the fact that not only do the plaintiffs allege that illegal activity was taking place on their premises, but it is that English Brothers allegedly supplied the forged documents that were needed for the illegal scheme to have taken place at all. Without the forged consent forms and altered death certificates, the harvesting could have never taken place. That is the nature of the allegations brought against English Brothers. Because the factual basis for the allegations against English Brothers is intentional conduct, the Specialty National Policy provides no coverage for the Underlying Suits as a matter of law. Accordingly, English Brothers' Cross-Motion for Summary Judgment should be denied, and summary judgment should be entered in Specialty National's favor.

## II.    EVEN IF A COMPLAINT CONTAINS ALLEGATIONS OF NEGLIGENCE, NO DUTY TO DEFEND IS TRIGGERED IF THE COMPLAINT IS PREMISED ON INTENTIONAL KNOWING CONDUCT

As set forth in Specialty National's Motion for Summary Judgment, the Specialty National Policy only provides coverage for "accidents" and not intentional acts. See Exhibit T.[7] Thus, in order to trigger coverage under the Policy, the allegations of wrongdoing cannot be

---

[5] It is extraordinarily difficult to comprehend how owners of a funeral home would have no idea that illegal body harvesting was going on in the basement of their funeral home when the funeral home was alleged to have provided forged consent forms to the company that was doing the harvesting.

[6] Being filed contemporaneously with this Opposition Brief is Specialty's Motion to Strike the Affidavit of Frank Restivo, which asserts that the space was leased to Regional Funeral Service.

[7] Hereinafter, all references to "Exhibits" refer to the exhibits attached to Specialty's Motion for Summary Judgment.

based on intentional conduct. In order to create coverage under the Policy, English Brothers emphasizes the fact that the underlying lawsuits contain allegations of negligence, and then argues that coverage must automatically be triggered based on these allegations. As it does throughout its Response Brief, English Brothers ignores the fact that intentional fraudulent conduct is at the center of all the allegations found in the underlying lawsuits. (English Brother also ignores the fact that it is impossible to negligently forge documents or negligently alter medical records and death certificates.) In its Response Brief, English Brothers does not take issue with the cases relied upon by Specialty to support its position that New York courts have routinely found that an insurer has no duty to defend its insured even if the underlying complaints contain allegations of negligence when all the factual allegations of the complaints are premised on intentional, knowing conduct. *See Atlantic Mut. Ins. Co. v. Terk Technologies Corp.*, 309 A.D.2d 22, 32, 763 N.Y.S.2d 56, 64 (1st Dept. 2003); *Allstate Ins. Co. v. Mugavero*, 79 N.Y.2d 153, 163, 589 N.E.2d 365, 371 (N.Y. Ct. App. 1992); *Gibbs v. CNA Ins. Cos.*, 263 A.D.2d 836, 693 N.Y.S.2d 720 (3d Dept. 1999); *Bingham v. Atlantic Mut. Ins. Co.*, 215 A.D.2d 315, 316, 626 N.Y.S2d 807, 808 (1st Dept. 1995); *New York Cas. Ins. Co v. Ward*, 139 A.D.2d 922, 527 N.Y.S.2d 913 (1988); *Home Ins. Co. v. Lapi*, 192 A.D.2d 927, 596 N.Y.S.2d 885 (3d Dept. 1993); and *Contracting Plumbers' Cooperative Restoration Corp. v. Hartford Accident and Indemnity Co.*, 59 A.D.2d 921, 399 N.Y.S.2d 255, (2d Dept. 1977). Thus, the manner in which counts of a complaint are styled is irrelevant – it is the factual allegations in a complaint that control the analysis of whether coverage is triggered. *County of Columbia v. Continental Ins. Co.*, 189 A.D.2d 391, 394, 595 N.Y.S.2d 988, 990 (3d Dept. 1993). Thus, even if an allegation of negligence is included in a cause of action that is clearly based on intentional

conduct, that allegation of negligence will not control whether or not coverage is triggered. *See, e.g., Atlantic Mut. Ins. Co. v. Terk Technologies Corp., supra.*

Such is the case here. No matter how the counts or allegations in a lawsuit are styled, it is clear that the factual basis for each and every allegation against English Brothers is <u>intentional</u> conduct. Examining the true nature of the allegations (and not how they may be styled) provides the basis for determining an insurer's duty to defend. *Atlantic Mut. Ins. Co. v. Terk Technologies Corp.*, 309 A.D.2d 22, 32, 763 N.Y.S.2d 56, 64 (1st Dept. 2003).

### III. WHETHER AN "OCCURRENCE" IS ALLEGED BY THE UNDERLYING SUITS IS MATERIAL TO WHETHER COVERAGE IS TRIGGERED

English Brothers alleges that Specialty's argument that the Underlying Suits do not allege an Occurrence is "immaterial." <u>See</u> Response Brief, p. 17. Whether an "Occurrence" is alleged is extremely material to the analysis of whether coverage is triggered under the Business Owners Liability Coverage form of the Policy. The Business Owners Liability Coverage form provides coverage for those sums that an insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" caused by an "occurrence" during the policy period. <u>See</u> Exhibit S.[8] The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* The allegations brought against English Brothers clearly do not constitute an "accident" because they are based on intentional and reckless conduct, fraud and malice.

In its Response Brief, English Brothers does not take issue with any of the cases relied upon by Specialty in its Motion, including *County of Columbia v. Continental Ins. Co.*, 189 A.D.2d 391, 394, 595 N.Y.S.2d 988, 990 (3d Dept. 1993), which held that in determining an insurer's coverage obligations, courts must look at the factual allegations in the underlying

---

[8] A copy of the Specialty National Policy is attached as Exhibit S to Specialty's Motion for Summary Judgment.

complaints and not to accept at face value the plaintiffs' legal characterization of the causes of action. As the court noted in *County of Columbia*:

> As arbiters of the law, it is [the court's] privilege to determine the nature of the claim alleged in the compliant, based upon the facts alleged and not the conclusions which the pleader draws therefrom. . . . Notably, we need give no consideration to the fact that, after stating the essential factual underlying factual allegations, the complaint is divided into separate causes of action . . . the issue is not whether a nuisance or trespass claim may possibly fit within the policies' personal injury coverage, but whether the facts alleged in HKS' complaint do.

*Id.*, *see also Allstate Ins. Co. v. Mugavero*, 79 N.Y.2d 153, 162, 589 N.E.2d 365, 370 (N.Y. Ct. App. 1992).

This Court should follow the same analysis as the court did in *County of Columbia*: in determining Specialty's coverage obligations, the court must not accept at face value the plaintiffs' legal characterization of the causes of action, but instead examine what really is at issue: a fraudulent scheme to harvest body parts from the deceased whose family members entrusted their loves ones to the care and custody of English Brothers.

English Brothers' Response Brief also does not take issue with the holdings in *Atlantic Mut. Ins. Co. v. Terk Technologies Corp.*, 309 A.D.2d 22, 32, 763 N.Y.S.2d 56, 64 (1st Dept. 2003) ("notwithstanding the fact that a violation of the Lanham Act can be unintentional, and that the complaint in the federal action asserts that Terk acted with 'reckless disregard,' we can discern no justification from the factual allegations set forth in the complaint to impose a duty to defend Terk upon Atlantic . . . since all of the factual allegations of the complaint are premised on intentional, 'knowing' conduct . . ."); *Allstate Ins. Co. v. Mugavero*, 79 N.Y.2d 153, 163, 589 N.E.2d 365, 371 (N.Y. Ct. App. 1992) (summary judgment granted to insurer in sexual molestation case even though negligence and intentional acts alleged because no "explanation of how the intrinsically intentionally acts of assault, sodomy and sexual abuse could be negligently

performed"); *Gibbs v. CNA Ins. Cos.*, 263 A.D.2d 836, 693 N.Y.S.2d 720 (3d Dept. 1999) (summary judgment granted to insurer in sexual molestation case despite fact that the sole allegations left in underlying trial were premised upon acts constituting negligence, because the harm was inherent in the nature of the insured's acts and whatever injuries resulted were as a matter of law intentionally caused); *New York Cas. Ins. Co v. Ward*, 139 A.D.2d 922, 527 N.Y.S.2d 913 (1988) (summary judgment grated to insurer where the insured committed assault notwithstanding conclusory assertions of negligence).

As in *Terk Technologies*, *Mugavero*, *Gibbs* and *Ward*, the inclusion of allegations of negligence against English Brothers does not take away from the fact that the crux of the cases against English Brothers is intentional and willful conduct. Because no "accident" is alleged by the plaintiffs in the Underlying Suits, no "Occurrence" is alleged under the Business Owners Liability Coverage form as a matter of law. *First Investors Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 166 (2d Cir. 1998); *Swan v. Travelers Property Cas. Co.*, 360 F. Supp. 2d 582, 589 (S.D.N.Y. 2005).

## IV. NO "BODILY INJURY" IS ALLEGED UNDER THE BUSINESS OWNERS LIABILITY COVERAGE FORM

The Business Owners Liability Coverage form defines "Bodily Injury" as "bodily injury, sickness or disease sustained by any person, including death resulting from any of these at any time." See Exhibit S. Contrary to what English Brothers argues in its Response Brief, "Bodily Injury" does not include "mental anguish" under the Business Owners Liability Coverage form.

English Brothers does not take issue with Specialty's argument that, in the lawsuits where the plaintiff family member have allegedly suffered damages due to body parts being harvested from their loved ones, no Bodily Injury is alleged because the plaintiffs' damages sought in these

8

suits are economic in nature, *i.e.*, the damages arise from English Brothers' alleged breach of contract in allowing their relatives' bodies to be harvested without their consent. Moreover, any claims for emotional distress alleged by these plaintiffs would also not constitute Bodily Injury given that emotional harm arising out of economic losses does not constitute "bodily injury" under New York law. *First Investors Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162 (2d Cir. 1998).[9]

English Brothers also does not take issue with Specialty's argument that there is no "Bodily Injury" alleged in the lawsuits brought by plaintiffs who received allegedly contaminated body parts during surgical procedures because there is no allegation in those cases that the plaintiffs have suffered any actual physical injury. Rather, these plaintiffs seek damages for medical monitoring to determine if they are will ever be injured by the allegedly contaminated organs. Accordingly, these cases also fail to allege "Bodily Injury" under the Policy. *HPF, L.L.C. v. General Star Indem. Co.*, 338 Ill. App. 3d 912, 918 (Ill. App. Ct. 2003) (establishment of medical monitoring fund does not constitute "Bodily Injury" as there is no allegation of any actual bodily injury being sustained).

## V.   NO "BODILY INJURY" TOOK PLACE DURING THE POLICY PERIOD UNDER THE BUSINESS OWNERS LIABILITY COVERAGE FORM

English Brothers' Response Brief provides no response to Specialty's argument that, if "Bodily Injury" were alleged under the Business Owners Liability Coverage form, no "Bodily Injury" occurred during the policy period. Instead, English Brothers' argument on this issue focuses on the Death Care Services coverage part which has nothing to do with Specialty's

---

[9] The court in *First Investors Corp. v. Liberty Mut. Ins. Co.* expressly distinguishes the holding in *Lavanant v. General Accident Ins. Co. of America*, 79 N.Y.2d 623, 584 N.Y.S.2d 744, 595 N.E.2d 819 (1992).

9

position that no Bodily Injury occurred during the policy period under the Business Owners Liability Coverage form.[10]

English Brothers takes no issue with Specialty's argument that the claims brought by the plaintiffs who received allegedly contaminated body parts or tissue during surgery did not ripen until those plaintiffs were informed of the illegal harvesting or recall of tissue, all of which occurred subsequent to the expiration of the policy period. Thus, no "Bodily Injury" could have occurred during the policy period. *See Commercial Union Assurance Co., PLC v. Oak Park Marina, Inc.*, 198 F.3d 55, 60 (2d Cir. 1999) (holding that under New York law, there was no coverage for a claim alleging emotional distress because claim did not ripen until after the policy period when plaintiff became aware of the wrongful act); *Miccio v. National Surety Corp.*, 180 A.D.2d 937, 566 N.Y.S.2d 760, 762 (3d Dept. 1991) (affirming that there was no coverage for bodily injury which occurred after the policy period); and *Acorn Ponds, Inc. v. Hartford Ins. Co.*, 105 A.D.2d 723, 724, 481 N.Y.S.2d 392, 393-94 (2d Dept. 1984) (same).

## VI. ENGLISH BROTHERS DOES NOT CHALLENGE THE ARGUMENT THAT AN EXPECTED/INTENDED EXCLUSION PRECLUDES COVERAGE UNDER THE BUSINESS OWNERS LIABILITY COVERAGE FORM

The Business Owners Liability Coverage form provides no coverage for:

> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

See Exhibit S.

Even if Bodily Injury were alleged by the Underlying Suits, this exclusion would preclude coverage for those claims. English Brothers takes no issue with this argument. For the

---

[10] For "Bodily Injury" to be covered under the Death Care Services Coverage part, it must also occur during the policy period. See Exhibit S.

same reasons that there is no "Occurrence" under the Policy, the expected/intended exclusion bars coverage. *Swan v. Travelers Property Cas. Co.*, 360 F. Supp. 2d 582, 590 (S.D.N.Y. 2005) (expected/intended exclusion bars coverage where underlying complaint alleges only intentional acts).[11]

## VII. NO COVERAGE IS AFFORDED UNDER THE DEATH CARE SERVICES COVERAGE PART BECAUSE NO "PROFESSIONAL INCIDENT" IS ALLEGED

The Death Care Service Services Coverage form only provides coverage for those sums "that the insured becomes legally obligated to pay as damages because of a 'professional incident,'" which is defined as follows:

    a.    Any professional malpractice, error or mistake which:

(1)    Causes:

    (a)    Bodily injury, sickness, disease, death or mental anguish, including resulting loss of services; or

    (b)    Injury to, or destruction of property of others which is not in the insured's care, custody or control, including loss of use; and which

(2)    Arises out of, with respect to a "deceased human body":

    (a)    Embalming;

    (b)    Handling or disposition;

    (c)    Care, custody or control;

    (d)    Burial disinterment or removal;

---

[11] A Professional Services exclusion also precludes coverage under the Business Owners Liability Coverage Form. In its Motion for Summary Judgment, Specialty inadvertently stated that the Professional Services exclusion precludes coverage under the Death Care Services Coverage Form, when it intended to state that the Professional Services exclusion precludes coverage under the Business Owners Liability Coverage Form. See Specialty's Motion for Summary Judgment, p. 21.

   (e) A memorial service conducted by the insured, whether or not a body is present; or

   (f) Injury to, or destruction of such body, or interference with the right of burial.

See Exhibit T.

English Brothers' Response Brief argues that coverage is afforded under the Death Care Service Services Coverage form because the Underlying Suits allege that English Brothers was negligent in its "care, custody and control" of the bodies at issue. See Response Brief, p. 20. Missing from English Brothers' analysis is that the Death Care Services Coverage form only provides coverage for professional malpractice, errors or mistakes, which are not alleged by the Underlying Suits. Instead, the factual allegations of the Underlying Suits are premised on intentional, knowing conduct. With regard to the specific allegations made against English Brothers, <u>forging documents</u> that allowed the harvesting of decedents' remains does not constitute an error, mistake or malpractice; nor does <u>forging and altering medical records and death certificates</u> to hide the fact that certain decedents died of such diseases as AIDS, cancer or syphilis constitute an error, mistake or malpractice. No coverage is afforded for the Underlying Suits under the Death Care Services Liability Coverage form because a "Professional Incident" is not alleged. *Village of Sylvan Beach v. Travelers Indem. Co.*, 55 F.3d 114, 115-116 (2d Cir. 1995) (plain and unambiguous policy language will be enforced as written).

## VIII. CONCLUSION

Summary judgment in favor of Specialty National is proper in this case because the record shows that there is no genuine issue as to any material fact concerning Specialty National's duty to defend or indemnify English Brothers with regard to the allegations asserted in the Underlying Suits. *Miller v. O'Bryan*, 498 F. Supp. 2d 548 (D.N.Y. 2007). Accordingly,

for the reasons set forth herein, as well as those set forth in its Motion for Summary Judgment and Memorandum of Law In Support, summary judgment in favor of Specialty National is proper on the issues raised in Specialty's Motion for Summary Judgment. For the same reasons, English Brothers' Cross-Motion for Summary Judgment should be denied.

WHEREFORE, Plaintiff, Specialty National Insurance Company, respectfully requests, for the reasons set forth herein as well as those set forth in its Motion for Summary Judgment and Memorandum of Law In Support, that this Honorable Court issue an order granting Specialty's Motion for Summary Judgment and denying English Brother's Cross-Motion for Summary Judgment, and for any other and further relief that this Court deems just.

Respectfully submitted,

By: _____/s/_____
Eleftherios Kravaris, Esq. (EK 4579)
John H. Somoza, Esq. (JS 1801)
MELITO & ADOLFSEN P.C.
Attorneys for Plaintiff
Specialty National Insurance Company
233 Broadway, 28th Floor
New York, NY 10279
(212) 238-8900
-and-
Robert Brunner, Esq.
BOLLINGER, RUBERRY & GARVEY
Attorneys for Plaintiff
Specialty National Insurance Company
500 West Madison Street
Suite 2300
Chicago, Illinois 60661
(312) 466-8000

67066