UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
===============================================

SPECIALTY NATIONAL INSURANCE CO.,

   Plaintiff,

v.

ENGLISH BROTHERS FUNERAL HOME,

   Defendant.

-----------------------------------------------

No. 1:07-cv-07507 (SHS)

**ELECTRONICALLY FILED**


**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ENGLISH BROS.' FUNERAL HOME'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Defendant Frank Restivo Funeral Home, Inc. d/b/a English Bros. Funeral Home (named in the caption as English Brothers Funeral Home) ("English Bros.") submits this reply memorandum of law in further support of its motion for summary judgment declaring that plaintiff Specialty National Insurance Company ("Specialty National") must defend Engish Bros. in the underlying actions at issue. Having already set forth sufficient proof that Specialty National must defend English Bros. in the underlying actions, English Bros. limits its arguments in this brief to only those points in Specialty National's opposition/reply papers that require further response.

1. **Specialty National's Opinion on the "True Nature" of the Allegations Against English Bros. Is Irrelevant, and Specialty National Is Not Entitled to Ignore the Multitude of Different Claims and Defendants Implicated by the Underlying Complaints**

Specialty National continues to ask the Court to ignore the negligence-based claims asserted against English Bros. in determining the duty to the defend because, according to Specialty National, "it is clear that the factual basis for each and every allegation against English Brothers is intentional conduct." Specialty Nat. Opp. at 2-4 (emphasis in original). English Bros. simply cannot understand how Specialty National continues to make such a claim when the underlying complaints expressly allege claims premised on English Bros.' alleged negligent handling, *etc.*, of bodies and records in its possession. Specialty National refuses to acknowledge that the underlying actions involve multiple defendants who may have engaged in entirely different types and levels of allegedly tortious conduct. Instead, Specialty National asks the Court to paint all of the underlying defendants with the same brush. This case can be decided based on the self-evident answer to one question: is it possible for English Bros. to be held liable in the underlying actions for its allegedly negligent handling of bodies and/or documents

without also being held liable for fraud and other intentional conduct? The answer is "yes." Therefore, Specialty National must defend English Bros.

Specialty National's reliance on Atlantic Mut. Ins. Co. v. Terk Technologies Corp., 309 A.D.2d 22, 763 N.Y.S.2d 56 (1st Dept. 2003), is misplaced. In Terk, the court found there was no duty to defend the insured because the Lanham Act claims alleged against it were intentional in nature, regardless of the fact that the underlying complaint also asserted claims for unintentional violations. First, although Terk has not been expressly overruled, the court's analysis of the duty to defend is inconsistent and irreconcilable with the New York Court of Appeals' more recent analysis in Auto. Ins. Co. of Hartford v. Cook, 7 N.Y.3d 131, 137, 818 N.Y.S.2d 176 (2006). Cook makes clear that a court cannot simply ignore claims that fall within coverage of a policy (*e.g.*, negligence claims) because it believes the covered claims are inconsistent with the other claims in the complaint. Cook unequivocally confirms what all general liability policies in New York require: "the insurer must come forward to defend its insured no matter how groundless, false or baseless the suit may be." Cook, 7 N.Y.3d at 137 (citation omitted).

Second, even if Terk were premised on a correct legal analysis, it is easily distinguishable from this case. In Terk, the claims based on both intentional and unintentional acts were directed to the same conduct by the same insured. See Terk, 309 A.D.2d at 32 ("[I]t is impossible to envision how Terk could have unknowingly, and unintentionally, approached a local manufacturer to produce a cheaper, low-quality knock-off of the CD 25 . . ."). The same is true with all of the other cases relied on by

Specialty National.[1] Here, the underlying actions involve a multitude of defendants and a multitude of allegations of tortious conduct. A single defendant in the underlying actions (*e.g.*, English Bros.) might be found liable for negligent acts (*e.g.*, handling and custody of bodies and records), whereas another defendant (*e.g.*, Michael Mastromarino) may be found liable only for intentionally tortious conduct. As noted above, Specialty National entirely ignores this, and instead asks the Court to decide this case based on Specialty National's sheer speculation regarding what it believes to be the "true nature" of the underlying complaints. Specialty Nat. Opp. at 3.

## 2. All of the Underlying Actions Allege Covered "Bodily Injury"

Specialty National argues that the "Business Owners Liability Coverage" form in its policies does not include "mental anguish" in the definition of "bodily injury." See Specialty Nat. Opp. at 8-9. In its original brief, English Bros. has already noted that the policies' "Death Care Services Professional Liability Coverage" expressly covers "mental anguish." See English Bros. Memo. at 18-19. And, English Bros. has already noted that under New York law, emotional distress constitutes "bodily injury" for liability insurance purposes as a matter of law. Id.

---

[1] In addition to Terk, Specialty National cites Allstate Ins. Co. v. Mugavero, 79 N.Y.2d 153, 581 N.Y.S.2d 142 (1992); Gibbs v. CNA Ins. Co., 263 A.D.2d 836, 693 N.Y.S.2d 807 (3d Dept. 1999); Bingham v. Atlantic Mut. Ins. Co., 215 A.D.2d 315, 626 N.Y.S.2d 807 (1st Dept. 1995); New York Cas. Co. v. Ward, 139 A.D.2d 922, 527 N.Y.S.2d 913 (1988); Home Ins. Co. v. Lapi, 192 A.D.2d 927, 596 N.Y.S.2d 885 (3d Dept. 1993); and Swan Consultants, Inc. v. Travelers Property Cas. Co., 360 F. Supp.2d 582 (S.D.N.Y. 2005). None of these pre-Cook cases apply here (assuming they remain good law in the first place). In each and every one of these cases, the court rejects negligence causes of action as a basis for a duty to defend because they were premised on the exact same intentional conduct alleged elsewhere in the complaints. Here, the negligence causes of action alleged against English Bros. are premised wholly or in part on conduct independent of the allegedly intentional conduct of other defendants, *e.g.*, the individual participants in the scheme who have been criminally prosecuted. Specialty National also cites Contracting Plumbers' Cooperative Restoration Corp. v. Hartford Accident and Indem. Co., 59 A.D.2d 921, 399 N.Y.S.2d 255 (2d Dept. 1977). That case does not address the duty to defend claims of intentional versus negligent conduct at all, and instead addresses whether there was a duty to defend a complaint that made allegations that both the insured and the insurer knew were not true. Contracting Plumbers' has no application to the issues in this case. In any event, the case is most certainly not good law, as it is clearly inconsistent with the Court of Appeals' interpretation of the duty to defend in Cook and other cases.

In its reply, Specialty National offers no argument in response to these points. Instead, Specialty National only speculates that in the underlying "donor" cases, "plaintiffs' damages sought in these suits are economic in nature." Specialty Nat. Opp. at 8-9. Based on this theory, Specialty National cites authority for the proposition "that emotional harm arising out of economic losses does not constitute 'bodily injury' under New York law." Id. at 9. This is a blatant "straw man" argument. Each and every one of the plaintiffs in the "donor" cases alleges his or her own emotional distress arising from the treatment of a loved one's body, not emotional distress arising from economic losses. See Ex. C (Enright) at ¶¶ 45, 51, 55, 59, 65, 69, 73, 80; Ex. D (Bruno) at ¶ 53; Ex. E (Kogut) at ¶ 53; Ex. G (Zeltins and Olivio) at ¶¶ 53, 58, 66, 78, 85, 93, 100, 105.

Specialty National also conclusively states that the "implant" cases do not allege bodily injury because the plaintiffs seek medical monitoring. See Specialty Nat. Opp. at 9. Specialty National's argument is specious, since the claims for medical monitoring are just one of several different types of claims alleged in the complaints. As such, whether claims for medical monitoring constitute bodily injury is immaterial. The material point is that each of the plaintiffs in the "implant" cases alleges both physical injury and emotional distress arising from implantation of potentially harmful body parts. See Ex. F (Jackson) at ¶¶ 54, 60, 66, 76, 85, 95, 99, 103, 107, 112; Ex. S (Aberbach) at ¶¶ 68, 71, 73, 108, 140; Ex. H (Lokenvitz) at ¶¶ 53, 59, 65, 75, 87, 91, 95, 99, 104.[2] Specialty National's assertion that "there is no allegation in [the implant] cases that the plaintiffs have suffered any actual physical injury" (Specialty Nat. Opp. at 9) blatantly disregards the plain language of the complaints at issue.

---

[2] The other "implant" complaints contain the same allegations of damages set forth in the Lokenvitz complaint (Exhibit H). See Ex. I (Collins); Ex J. (Ricklefs); Ex. K (Wood); Ex. L (Frerichs); Ex. M (Oberender-Doolittle); Ex. N (Eyberg); Ex. O (Pierce); Ex. P (Landtiser); Ex. Q (Kane); Ex R (Andreasen).

3.  **The "Expected/Intended" Exclusion Does Not Apply, and Specialty National Is Precluded from Raising the Exclusion Regardless**

Specialty National argues that English Bros. "does not challenge" Specialty National's position that the policies' exclusion for expected or intended harm applies with respect to "Businessowners Liability Coverage." See Specialty Nat. at 10-11. This assertion is a complete misrepresentation. English Bros.' original brief expressly addresses the issue. See English Bros. Memo. at 17-18 and n. 8.

Furthermore, Specialty National is absolutely precluded from relying on *any* exclusions in its policies. Pursuant to Insurance Law § 3420(d), Specialty National was obligated to issue a timely disclaimer based on any exclusions. "[T]imeliness of an insurer's disclaimer is measured from the point in time when the insurer first learns of the grounds for disclaimer of liability or denial of coverage." First Financial Ins. Co. v. Jetco Contracting Corp., 1 N.Y.3d 64, 68-69, 769 N.Y.S.2d 459 (2003). Furthermore, Specialty National has the burden of proving its delay in disclaiming was justified, and, "an insurer's explanation is insufficient as a matter of law when the basis for denying coverage was or should have been readily apparent before the onset of the delay." Id. Specialty National was placed on notice of the claims at issue no later than March 2006. See Delahunt Aff. Ex. 3. Specialty National has never issued a disclaimer against English Bros. – and even if its complaint in this action is taken to constitute its disclaimer, its disclaimer was not issued, at the earliest, until August 24, 2007. See Delahunt Aff. Ex. 7. Specialty National takes the position that the applicability of the exclusion can be determined on the face of the underlying complaints alone. It was therefore able and required to issue its disclaimer in or around March 2006. Its

unexplained, unexcused, and unjustifiable delay precludes its from raising the expected/intended exclusion, or any other exclusions in its policies.

## CONCLUSION

For all the reasons set forth above and elsewhere, English Bros. requests that Specialty National's motion for summary judgment be denied in its entirety, and that English Bros.' cross-motion for summary judgment and attorneys' fees be granted.

Dated: July 17, 2008               Respectfully submitted,

KENNEY SHELTON LIPTAK NOWAK LLP


By:             /s/
       Timothy E. Delahunt (TD-2791)

510 Rand Building
14 Lafayette Square
Buffalo, New York 14203
Tel.: (716) 853-3801
Fax: (716) 853-0265
E-Mail: tedelahunt@kslnlaw.com

*Attorneys for defendant English Bros. Funeral Home*

6